**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID B. DOWNS; MARGARET A. DOWNS, H/W | : | |
| Plaintiffs | : | Civil Action No.  18-4529 |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF JENKINGTOWN, SEAN KILKENNY, DEBORA PANCOE, RICHARD BUNKER, GEORGE LOCKE | : | |
| Defendants | : | |

### ORDER

**AND NOW**, this _____ day of _____, 2018, upon consideration of the Motion to Dismiss Plaintiffs' Amended Complaint filed by Defendants, Borough of Jenkintown, Sean Kilkenny, Debora Pancoe, Richard Bunker and George Locke, and any response in opposition thereto, it is **ORDERED** that said Motion to Dismiss is hereby **GRANTED** and **a**ll claims against Defendants are hereby **DISMISSED** with prejudice.

By the Court:

_____

**JAN E. DUBOIS, J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID B. DOWNS; MARGARET A. DOWNS, H/W | : | Civil Action No.  18-4529 |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF JENKINGTOWN, SEAN KILKENNY, DEBORA PANCOE, RICHARD BUNKER, GEORGE LOCKE | : | JURY TRIAL DEMANDED |
| Defendants | : | |

<u>**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT BY DEFENDANTS,**
**BOROUGH OF JENKINTOWN, SEAN KILKENNY, DEBORA PANCOE, RICHARD**
**BUNKER AND GEORGE LOCKE**</u>

Moving Defendants, Borough of Jenkintown, Sean Kilkenny, Debora Pancoe, Richard

Bunker and George Locke, by and through their attorneys, HOLSTEN & ASSOCIATES, and

Suzanne McDonough, Esq., hereby move this Court to dismiss Plaintiffs' Amended Complaint in its

entirety and with prejudice, and in support thereof assert the following:

For the reasons that follow in the Memorandum of Law, attached hereto and incorporated

herein by reference, the moving Defendants respectfully request that the Motion to Dismiss

Plaintiffs' Amended Complaint be granted under Rule 12(b)(6) and the proposed Order entered or

such alternative relief be granted under Rule 12 (e) as the Court deems appropriate.

|  | Respectfully submitted, |
|---|---|
| | **HOLSTEN & ASSOCIATES** |
| **BY:** | __SMM2371_____ |
| | **SUZANNE MCDONOUGH, ESQUIRE** |
| | **Attorney ID No.  29394** |
| | **One Olive Street** |
| | **Media, PA  19063** |
| | **(610) 627-8307** |
| | **Attorney for moving Defendants** Borough of Jenkintown, Sean Kilkenny, Debora Pancoe, Richard Bunker and George Locke |

Dated: December 18, 2018

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID B. DOWNS; MARGARET A. DOWNS, H/W | : : | Civil Action No.  18-4529 |
|     Plaintiffs | : : | |
| v. | : : | |
| BOROUGH OF JENKINGTOWN, SEAN KILKENNY, DEBORA PANCOE, RICHARD BUNKER, GEORGE LOCKE | : : : | JURY TRIAL DEMANDED |
|     Defendants | | |

**DEFENDANTS BOROUGH OF JENKINTOW, SEAN KILKENNY, DEBORA PANCOE, RICHARD BUNKER AND GEORGE LOCKE'S  MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants, Borough of Jenkintown, Sean Kilkenny, Debora Pancoe, Richard Bunker and George Locke, by and through their attorneys, HOLSTEN & ASSOCIATES, hereby file this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Rule 12 (b) (6) and 12 ( e) of the Federal Rules of Civil Procedure, as follows:

## I.     PROCEDURAL AND FACTUAL BACKGROUND

The initial Complaint in this case was filed on October 23, 2018 at Docket #1.  On November 26, 2018, Defendants filed their Motion to Dismiss at Docket #3.  On December 10, 2018, in response to the Motion of Defendants, Plaintiffs filed an Amended Complaint that is now the operative pleading.  The Amended Complaint is attached hereto as Exhibit "A."

Plaintiffs are David B. Downs and Margaret A. Downs, residential property owners in Jenkintown Borough, Pennsylvania.  The Plaintiffs contend that an unsuccessful attempt by the Borough to enforce a Borough Zoning Code against them that prohibited the operation of an impact business in a residential area was in reality actually in retaliation by all Defendants against them  for

the exercise of their federal First Amendment rights borne from a conspiracy of the Defendants, violated their Fourteenth Amendment due process rights and was the product of a conspiracy between the Borough Solicitor and Borough Manager charged with additional state law claims of conspiracy and abuse of process. Named as Defendants are the Borough, its Solicitor, Sean Kilkenny, the President of Council, Debora Pancoe, the Vice President of Council, Richard Bunker and the Borough Manager, George Locke.

Plaintiffs allege in the Amended Complaint that they were targeted by the individual Borough actors in retaliation for their exercise of the Plaintiffs federal First Amendment Rights because Margaret Downs ran for Mayor of the Borough with campaign support from her Plaintiff-husband against an endorsed candidate, that she and her husband otherwise petitioned the Borough on various issues culminating in the individual Defendants' anger against them and which allegedly resulted in a zoning code violation being issued. Relief is demanded against the individual Defendants both in their official and individual capacities and punitive damages are demanded from each of the individual defendants. Plaintiffs assert a municipal liability claim against the Borough on the basis of the alleged acts being those of policymakers.

Historically, Plaintiffs recite that in August of 2016, a non-party, Joseph Glass, rented a property adjacent to Plaintiffs' residence and operated a concrete/cement business from that property. (A. ¶14.) The property was zoned as residential and the Zoning Code of the Borough did not permit such a use. (A.¶ 15.) Plaintiffs and other residents protested the use, and ultimately by September of 2016, a code violation notice was issued to Glass for operating an impact business at the location, and by September 30, 2016, the violation was deemed abated by the Borough Manager Locke. (A.¶ 16,18.) Additional complaints were made by Plaintiffs, and a new citation was issued in November

of 2016 to Glass. (A.¶ 19.)   Plaintiffs allege that thereafter over the next fourteen months, Borough Manager, Locke, would rely on advice provided by Solicitor Kilkenny, Council President Pancoe and Vice Council President Bunker. (A.¶ 17.)   According to Plaintiffs, tensions were high between Glass and Plaintiffs, and Glass was ultimately prosecuted and pled guilty to criminal acts against Plaintiffs. (A.¶20.)

On October 25, 2016, Joseph and Christine Glass made allegedly false allegations against plaintiffs accusing them of operating a landscape business but an investigation by Borough Manager Locke determined the complaints had no merit.  (A.¶ 21)  The second zoning citation issued by the borough against Glass was heard in April of 2017 resulting in his being found guilty by the District Justice of violating the Jenkintown's Zoning Code by operating an impact business on residential property.  (A.¶ 23)

In September of 2017, Plaintiff, Margaret Downs, ran as a write-in candidate for Mayor , and also made Right to Know requests for public records related to Jenkintown's handling of code enforcement and related matters. (A.¶ 24-25.)  Downs had substantial support from residents, but not from the Jenkintown Democratic Party leadership stated to be Defendants, Solicitor Kilkenny, Council President Pancoe and Council Vice President, Bunker. (A.¶ 26)  Plaintiffs claim that the Borough failed to take effective action against Glass and the illegal operation at that property is ongoing. (A.¶22).  In addition to the earlier complaint, apparently there was another complaint during 2017 that the Plaintiffs were operating an impact business, and a Memorandum of Borough Manager Locke dated October 11, 2017 indicated that he made three inspections of the property and found that they were not operating a business.  (A.¶ 34.)

In the Spring of 2017 primary, the Democratic party endorsed Allyson Dobbs, and at the general election on November 7, 2017, Plaintiff was able to garner 35% of the vote. (A. ¶35.) Plaintiffs assert that Kilkenny, Pancoe, Bunker and Locke were angry because Downs ran for Mayor against their endorsed candidate. (A.¶ 28.)   Plaintiffs allege that all Defendants criticized and retaliated against residents who supported Plaintiff and harbored resentment and anger toward her. (A.¶ 29.)  During the election season, Plaintiff alleges that on multiple occasions Defendant Bunker made disparaging comments in a blog site about Ms. Downs for exercising her right to run for the office of Mayor, and he decried that her Right to Know requests resulted in the Borough expending more than $10,000 in order to respond to the requests. (A.¶ 30.)

In October of 2017, the Borough having received complaints again from the Glasses, served property code violation notices upon Plaintiffs citing them for a dead tree on their property that their arborist confirmed in writing to the Borough was healthy, and for having a down spout turned in the wrong direction which Plaintiffs immediately rectified. (A.¶ 32.)   Two weeks after the election, on November 21, 2017, Borough Manager Locke sent a letter to Plaintiff that there had been multiple complaints by the Glasses that Plaintiffs were operating a landscape business out of their home, and a meeting was scheduled at Borough Hall to discuss the allegations to take place on December 7, 2017. (A.¶ 36)  On this date, Solicitor Kilkenny and Locke refused to discuss the merits or learn the truth, but instead Locke was instructed by the Solicitor to hand over a zoning violation notice to Plaintiffs. (A.¶ 38.)   Plaintiffs and their attorneys requested a further meeting but Defendants denied the request.   (A.¶ 41-42)

On or about January 7, 2018, the Borough issued a zoning violation citation to Plaintiffs and a hearing was scheduled for March 26, 2018 before District Justice Elizabeth McHugh, and the

citation was dismissed at the conclusion of the hearing. (A.¶ 43, 45)   That same day, Defendants further conspired to trump up a false code violation and issued a new zoning violation notice again accusing Plaintiffs of operating an impact business.  (A.¶ 46.)    Plaintiffs appealed the zoning violation to the Borough Zoning Board. (A.¶ 47)

Plaintiffs allege that Solicitor Kilkenny abused his authority as a Solicitor and Democratic Party leader to instruct Locke to conspire with the other Defendants to retaliate against Plaintiffs by trumping up false evidence, including suborning perjured testimony from witnesses, and falsely alleging that Plaintiffs were violating the zoning code. (A.¶ 48.)  Plaintiffs' denial of the operation of a business was communicated to all Defendants who knowing that there was no such operation still charged Plaintiffs with violating the Code. (A.¶ 49-50.)    Defendants failed to procure reasonable evidence of the violations of Plaintiffs and did nothing to investigate and obtain evidence because they knew that Plaintiffs did not operate a business from their home. (A.¶ 51.)

Plaintiffs propose that the only purpose of the zoning violation charge was to punish Plaintiffs for exercising their First Amendment Rights to speak out at Council meetings about the zoning violations of Glass, to make Right to Know requests for public information and regarding Ms. Downs rights to campaign and run for political office against the endorsed candidate of the political party in power and against Mr. Downs for supporting her candidacy and campaigning on her behalf. . (A.¶ 52)  After hearings were held by the Zoning Board in May, June and July of 2018 at which Plaintiffs claim trumped-up, weak and frivolous evidence was presented, Plaintiffs successfully defended and received a favorable decision with a vote of the Board 5-0.   (A. ¶53-54)

## II.   LEGAL ARGUMENT

### A.   STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide for the dismissal of an action for failure of the pleading to "… state a claim upon which relief can be granted…" F.R.C.P. 12(b) (6). The purpose of a Motion to Dismiss pursuant to the aforesaid Rule is to test the legal sufficiency of Plaintiff's Complaint. Sturm vs. Clark, 835 F.2d 1009, 1011 (3rd Cir 1987). In determining whether to grant a Motion to Dismiss under this Rule, the court must accept "as true the facts alleged in the Complaint and all reasonable inferences that can be drawn from them." Unger vs. National Residence Matching Program, 928 F.2d 1392, 1394-95 (3rd Cir. 1991).

Dismissal is appropriate on a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) if, reading the Complaint in the light most favorable to the Plaintiff, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the Complaint." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008). It is well settled that a Complaint must be dismissed even if the claim to relief is "conceivable," because a Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

While the Court will accept well-pleaded facts as true for the purpose of the Motion, "a Court need not credit a Complaint's bald assertions or legal conclusions when deciding a Motion to Dismiss." Morse vs. Lower Merion School District, 132 F.3d 902, 906 (3rd Cir. 1987). (citations

omitted). To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.   Accordingly, in ruling upon a Motion under F.R.C.P. 12(b)(6), the Courts consistently reject "legal conclusions", "unsupported conclusions", "unwarranted inferences", "unwarranted deductions", or "sweeping legal conclusions cast in the form of factual allegations."   Id. at 906(n) (8).

### B. ALL OFFICIAL CAPACITY CLAIMS SHOULD BE DISMISSED

Moving individual Defendants seek dismissal of Plaintiffs §1983 official capacity claims against them on the basis that suits against state officers in their official capacity are merely another way of pleading an action against the entity of which an officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is *not* a suit against the official personally, for the real party in interest is the entity." (internal citations omitted)); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").   Therefore, this claim against each individual Defendant should be dismissed.

### C. PLAINTIFFS FAIL TO STATE A CLAIM FOR FIRST AMENDMENT RETALIATION

The Complaint, although not very clear, appears to allege a First Amendment Claim of Retaliation, and Fourteenth Amendment claims for a due process violation based upon selective enforcement.   None of these claims can survive a Motion to Dismiss against any Defendant in this case.

7

1.    Retaliation

Plaintiffs' Complaint fails to sufficiently allege the elements of a First Amendment

retaliation claim.  "[T]o plead a retaliation claim under the First Amendment, a plaintiff must

allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of

ordinary firmness from exercising his constitutional rights, and (3) a causal link between the

constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463

F.3d 285, 296 (3d Cir. 2006).   Here there is an absence of factual allegations that precludes a

conclusion that Plaintiff was engaged in constitutionally protected conduct.  Plaintiffs asserts a

faulty syllogism in asking the Court to conclude that because Margaret Downs ran for Mayor

against an endorsed candidate, this angered the individual Defendants so that a subsequent

zoning code violation issued by the Borough must have resulted from her unsuccessful bid for

Mayor and/or the Plaintiffs raising issues of concern to them with Council and/or making right to

know requests.  What is missing are the facts as to how Plaintiffs get from the Mayoral run and

their complaints about their neighbors and their right to know requests to their conclusion offered

to this Court that the targeted Defendants were responsible for unjustly prosecuting a zoning code

violation against them.  There is no delineation between any of the Defendants as to what each

said or did that could conceivably lead to the conclusory averments.   The Court of Appeals holds

that the causation element for establishing retaliation claims under 1983 are subject to the same

analysis and standards for Title VII retaliation claims.  Brennan v. Norton, 350 3d 399, 421 (3d

Cir. 2003).  Relevant factors would be (1) timing and (2) evidence of ongoing antagonism.

Abramson v. William Patterson Coll., 260 F.3d 265, 288 (3d Cir. 2001)  Here it was well after

the election and after their neighbors once again asserted a complaint against them that the

Borough Zoning Official with advice from the Solicitor issued the violation citation. Plaintiffs were not immune from further zoning infraction enforcement efforts simply because Ms. Downs ran for Mayor. There is no factual basis to suggest any pattern of antagonism, if any otherwise existed, supportive of causation.

"[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss," and courts have rejected "unwarranted inferences" and "unsupported conclusions" in evaluating motions to dismiss. Morse v. Lower Merion School District, 132 F.3d 902, 906 n. 8 (3d Cir.1997) (*quoting* Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1357 (2d ed.1997)). The sweeping allegations against the Council Defendants, Solicitor and Borough Manager are fanciful and provide no factual basis for the conclusion that any of these individuals violated the Plaintiffs' constitutional rights directly or through acquiescence in known constitutional violations.

Without any factual predicate, Plaintiffs simply make wild, scurrilous conclusions against elected and appointed Officials that the individual Defendants committed corrupt acts and used the Borough Zoning Code as a weapon to retaliate against them by falsely accusing them of operating an impact business. Simply alleging that the individual Defendants, Solicitor Kilkenny and President and Vice President of Council, Deborra Pancoe and Richard Bunker, characterized by Plaintiffs as leaders of the democratic party , were angry and that after the election the Borough issued a code violation to them that they successfully defeated at a Zoning Board Hearing is simply insufficient. It is untoward to accuse public officials and public servants of corruption without any factual basis. Each Defendant is entitled to be advised as to what conduct he or she was allegedly involved in that resulted in the deprivation of Plaintiffs' civil rights.

9

Here even in the Amended Complaint there is no delineation as to what any individual Defendant did or when any such action was taken that supports any claims in this case.  Plaintiffs, in paragraph 12 of the Complaint, also suggest that there was a breach of a duty to protect, but do not elaborate to provide a factual basis or to whom such a claim is addressed.

      2.     Selective enforcement

Selective enforcement would be a claim pursuant to the Equal Protection Clause and requires proof that the Borough sought to enforce the law to prevent the exercise of a fundamental right.  Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir. 1993).  Where, as here there is a First Amendment claim, the equal protection claim of selective enforcement would be subsumed by the First Amendment claim because of the stronger guarantee afforded by the First Amendment.  See Hill v. City of Scranton, 411 F.3d 118, 126 (3d Cir. 2005).( there is no need to analyze an equal protection claim where the is a direct First Amendment claim as the First Amendment guarantee is the stronger of the two.)  Even if reviewed separately, there is no support for this claim in the facts alleged by the Plaintiffs.  Although Plaintiffs make veiled references in paragraphs 31 and 33 that the Borough has failed through the years and still fails through the present to enforce the zoning code or selectively enforces it, and that there were property and zoning code violations that were routinely ignored and/or dismissed with enforcement being rare and sporadic.  However, no facts are asserted to support any theory that the Borough's failure in other non-disclosed situations precluded enforcement of the code against them.

Plaintiffs do not suggest that they can produce evidence that similarly situated property owners who do not speak out are not prosecuted for code violations while those that do are so prosecuted. Plaintiffs fully support and demand the action taken by the Borough to enforce the code against their neighbors, the Glasses, but decry the same enforcement effort on the part of the borough based upon the complaint from the Glasses about them. There is too much of a gap between the protective activity, here the election for Mayor in November of 2017, and the citation being issued in January of 2018. The Third Circuit has held that a gap of two months is too long to support an inference of causation. Williams v. Phila., Hous. Auth., 380 F.3d 751, 760 (3d Cir. 2004). The only other motive suggested was Defendant Bunkers displeasure with the financial consequences to the Borough due to responding to the Right to Know requests of the Plaintiffs. This blog referenced was said to be during the election season so that it appears that the Plaintiffs were requesting the code information while the run for public office was taking place. Just as the Plaintiffs had a right to issue statements in conjunction with the campaign, an individual member of Council outside of Council is not restricted from offering his own opinion evidencing frustration as to the cost of fulfilling Right to Know requests of the Plaintiffs. This is certainly not retaliatory conduct. Under the circumstances, and considering the facts offered by Plaintiffs in this case, as opposed to legal conclusions and opinions without a factual predicate, the First Amendment claim must fail as to the Borough and all individually named Defendants.

A.     Solicitor Kilkenny

The Borough Solicitor is sued presumably because of his involvement in providing advice to, or in prosecuting, the zoning code matters. The lawsuit against him appears to be

based solely on an alleged conspiracy with his own clients, Council members and the Borough Manager.  In the Third Circuit, the intracorporate conspiracy doctrine bans claims against attorneys based on conspiracies allegedly formed in the attorney-client context. See Heffernan v. Hunter, 189 F.3d 405, 413 (3d Cir. 1999). When an attorney's alleged conspiratorial conduct occurs within the scope of representation, the conduct cannot be characterized as an actionable conspiracy. See Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313-14 (3d Cir. 2003) (applying intracorporate conspiracy doctrine to affirm dismissal of civil conspiracy claim against attorney acting in scope of representation); Heffernan, 189 F.3d at 413-14 (applying intracorporate conspiracy doctrine to affirm dismissal of § 1985(1) and (2) claims against attorney who acted within the scope of representation).  Therefore, the claims against him should be dismissed with prejudice for this reason as well as for the lack of a factual predicate for such a claim.

   (1)   Absolute/Prosecutorial Immunity

   To the extent that this action is brought against Solicitor Kilkenny in his role as an alleged prosecutor of the code offense against the Plaintiffs, the Solicitor is entitled to absolute immunity. Prosecutors have absolute immunity from civil suits for damages under Section 1983 for initiating and presenting a zoning code enforcement case. Whiteford v. Penn Hills Municipality, 323 F. App'x 163 (3d Cir. 2009); see also Buckley v. Fitzsimmons, 509 U.S. 259, 272-73 113 S. Ct. 2606 (1993). Absolute prosecutorial immunity extends to all prosecutorial functions and activities, i.e., those in which the prosecutor is engaged in typical prosecutorial functions, even if the prosecutor acted willfully, maliciously or in bad faith. Imbler v. Pactman, 424 U.S. 409, 430, 96 S. Ct. 209 (1976) (emphasis added); Light v. Haws, 472 F.3d 74, 77 (3d Cir. 2007), citing Imbler, supra. See also,

Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d. Cir. 1992).

     B.    Council President Pancoe and Vice President Bunker

       As to the individual Council Defendants, as well as the Solicitor, to the extent that any claim remains under the First Amendment, the Court is requested to dismiss the claims as even in this Amended Complaint Plaintiffs are still unable to offer any factual basis for what any individual Defendant is accused of doing that could conceivably result in a First Amendment retaliation claim without making wild suppositions and using conjecture rather than facts. Plaintiffs single out the top two members of the Borough Council, its President and Vice President, and simply by alleging in paragraphs 7 and 8 that they, as well as Solicitor Kilkenny, are "leaders of the democratic party" that this is sufficient to implicate them in this alleged political conspiracy. This is woefully inadequate.

     C. Borough Manager Locke

       There are no facts that the Borough Manager did anything other than take complaints from the Plaintiffs' neighbors and act upon them just as he had taken complaints from Plaintiffs against their neighbor and acted upon those. Essentially Plaintiffs are trying to further their political argument against the Council members by suggesting that Locke was their pawn and did their bidding or that of the Solicitor. There is no factual predicate for such a bizarre conclusion and the fact that the zoning proceedings and district justice hearing ended favorably for the Plaintiffs does not supply the necessary factual basis for the retaliation claim against Borough Manager Locke.

### D.  PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER THE FIRST AMENDMENT CLAIM FOR MUNICIPAL LIABILITY AGAINST THE BOROUGH

Plaintiffs' claim against the Borough are under a respondeat superior theory based upon their unsupportable averments against the President, Vice President of Council and the Solicitor Defendants. (A. ¶43.)   First, it is well established that a municipality cannot be held liable under § 1983 on a respondeat superior theory. Monell v. Department of Social Service, 436 U.S. 658, 691 (1978). Rather, to establish municipal liability under § 1983, a plaintiff must demonstrate (1) a constitutional violation by a municipal actor (2) that was caused by a municipal policy or custom. Id. at 694.  There is no policy that could be attributed to the Borough in this case implicated by this cause of action and Plaintiffs have not alleged sufficient facts of any custom so as to state a cause of action against the Borough.  Therefore, the Borough should be dismissed as a Defendant.

### E. PLAINTIFFS FAIL TO STATE A VIABLE STATE LAW ABUSE OF PROCESS CLAIM AGAINST THE SOLICITOR AND BOROUGH MANAGER

Not only is there  no factual basis within this pleading to suggest who initiated the process it is clear that the Solicitor and Locke are being sued  simply for presenting the Borough's case based upon the neighbors' complaints.  Under such circumstances, Plaintiffs fail to state a viable claim as a matter of law.

To establish a claim for abuse of process, the plaintiff must show "that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was

not designed; and (3) harm has been caused to the plaintiff.   Indeed, under Pennsylvania law "there is no cause of action for abuse of process if a defendant, even with bad intentions, merely carries out the process to its authorized conclusion." Cameron v. Graphic Mgmt. Assocs., Inc., 817 F. Supp. 19, 21 (E.D. Pa. 1992) (citing Shaffer v. Stewart, 473 A.2d 1017 (Pa. Super. 1984)).   The Courts have noted that the essence of an abuse of process claim is that the process is used for a purpose not intended by the law. Rosen v. Tesoro Petroleum Corp. 582 A.2d 27, 32 (1990).

Abuse of process generally pertains to situations involving "extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." Zappala v. Hub Foods, Inc., 683 F.Supp. 127, 129 (W.D. Pa. 1984). This tort requires that there be a "perversion of legal process *after* it has begun in order to achieve a result for which the process was not intended." Al Hamilton Contracting Co. v. Cowder, 644 A.2d 188, 191 (Pa. Super. 1994)(emphasis added). "It is not enough that the process employed was used with a collateral purpose in mind." Hart v. O'Malley, 647 A.2d 542,552 (Pa. Super. 1994).

In this case, the Plaintiffs make this claim on the basis that the process was initiated improperly from the onset as punishment and retaliation, not that the process was perverted after it commenced.   The fact that the Plaintiffs assert that during hearings witnesses offered perjured testimony against them, without detailing what it was and how such relates to the abuse of process or conspiracy claims cannot sustain this type of claim.   The fact that they successfully defended against the charge at the Zoning Board hearing does not suggest, much less provide a basis, for a claim of abuse of process and the hearings are exactly the due process that is required when a zoning code violation results in a charge.   Therefore, this claim must be dismissed as to all Defendants.

15

**F.  PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR STATE LAW CONSPIRACY AGAINST SOLICITOR KILKENNY AND BOROUGH MANAGER LOCKE**

Plaintiffs in Count III assert a state law conspiracy claim against the Solicitor and Borough Manager.  Clearly, there is no factual or legal predicate for the claim that the Solicitor unlawfully conspired with his client, the Borough Manager.

The elements of civil conspiracy are "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. Ct. 2008); Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (citing Strickland v. Univ. of Scranton, 700 A.2d 979, 987-988 (Pa. Super. Ct. 1997)).  A properly plead conspiracy claim "must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 179 (3d Cir. 2010) (citing Beck v. Prupis, 529 U.S. 494, 120 S. Ct. 1608, 146 L. Ed. 2d 561 (2000)).  The elements are woefully missing in this case where do nothing more than recite the elements for establishing the existence of a conspiracy.  Formulaic recitations of the elements of a cause of action do not suffice to satisfy the pleading requirements of Fed. R. Civ. P. 12(b)(6). Twombly, 550 U.S. at 555. See also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

16

### G.     PUNITIVE DAMAGES

Punitive damages are not available against municipal Defendants sued in their official capacities as a matter of law. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 2761, 69 L.Ed.2d 616, 634 (1981). (Punitive damages are not recoverable against municipalities in Section 1983 action.) Further, there is no factual predicate for a claim for punitive damages against any individual Defendant in their private capacity but rather only salacious, unsupportable conclusions that read more like campaign rhetoric and not based on facts that could not support such claims under the circumstances of this case.

### H.     QUALIFIED IMMUNTIY

This case does not demonstrate that any of the individual Defendants committed a constitutional violation and to the extent that any mistakes were made by any of the Defendants if set forth in the pleading, none could remove the protection of the qualified immunity.

Even if the Court believes that the probable cause for the issuance of the code citations was questionable, the Court should still proceed to consider whether the individual Defendants are entitled to qualified immunity.

Under the Supreme Court guidance, the qualified immunity analysis involves two inquiries. The first is "whether the facts that a Plaintiff has alleged or shown make out a violation of a constitutional right." Pearson v. Callahan, ____U.S.____, 129 S.Ct. 808, 816 (2009) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)) (citation omitted). And the second is "whether the right at issue was 'clearly established' at the time of a defendant's alleged misconduct." Id.   In Reichle v. Howards, ____U.S.___, 132 S.Ct. 2088, 2093 (2012), the

17

Supreme Court has often reiterated that standard that "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right."

The constitutional question involves a determination as to whether there was a reasonable mistake of fact while the qualified immunity question involves whether there was a reasonable mistake of law. Curley v. Klem, 499 F.3d 199, 214 (3d Cir. 2007); see also Saucier, 533 U.S. at 204-06 (distinguishing between inquiry of Fourth Amendment violations and inquiry of qualified immunity entitlement). If elected or appointed officials of reasonable competence could disagree regarding the legality of their conduct, then the objective test is met and immunity should be recognized. Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).  Therefore, in order to deny the individual defendants qualified immunity if any or all of them were mistaken in any legal analysis of probable cause for the issuance of citations and prosecution of the matter, the Court must find that "it would have been clear to a reasonable officer" that his conduct was unlawful...." Gilles v. Davis, 427 F. 3d 197, 203(3d Cir. 2005). In the light of pre-existing law, the "contours" of plaintiff's rights would have to be found to be sufficiently clear such that the unlawfulness of the officials conduct, in the specific circumstances confronted, would have been apparent to a reasonable person. Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000).

Here Plaintiffs have not come forward with evidence to raise an issue of material fact as to their claims for First Amendment Retaliation, selective enforcement or due process violations.  Here, there clearly was probable cause to issue the citations despite Plaintiffs' belief that the witnesses provided false testimony.  There are no facts asserted to raise an issue of material fact as to whether a policy-maker such as the President or Vice President of Council acting individually

outside their council role had notice that a violation of plaintiff's constitutional rights could occur based on alleged First Amendment Retaliation and were deliberately indifferent to that possibility.  Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).  Nor have Plaintiffs been able to illustrate a causal connection between any custom or policy of alleged Council members named and the violation of the constitutional rights.

## I.   FURTHER LEAVE TO AMEND SHOULD NOT BE GRANTED

Leave to Amend under Federal Rule of Civil Procedure 15 is generally freely granted. Fed. R. Civ. P. 15(a)(2).  However, leave to amend may be denied when amendment would be futile. See, Walton v. Mental Health Ass'n. of Southeastern Pa., 168 F.3d 661, 665 (3d Cir. 1999).  Here after the deficiencies in the initial Complaint were pointed out by Motion, the Plaintiffs filed an Amended Complaint which was not curative and which fails to again state a cause of action as a matter of law.

## III.   CONCLUSION

Based upon the foregoing, Defendants, Borough of Jenkintown, Sean Kilkenny, Debora Pancoe, Richard Bunker and George Locke, respectfully request that this Honorable Court grant their Motion to Dismiss under Rule 12 (b) (6) and enter the attached form of Order or grant such other relief as the Court deems appropriate.

Respectfully submitted,
**HOLSTEN & ASSOCIATES**
BY:   **/s/ Suzanne McDonough**
**SUZANNE MCDONOUGH, ESQUIRE**
**Attorney ID No.  29394**
**One Olive Street**
**Media, PA  19063**
**(610) 627-8307**
**Attorney for moving Defendants**

19

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Motion to Dismiss Plaintiffs' Amended Complaint and a supporting Memorandum of Law of Defendants, Borough of Jenkintown, Sean Kilkenny, Debora Pancoe, Richard Bunker and George Locke, was filed on December 18, 2018, and is available for viewing and downloading from the ECF system.

William J. Fox, Esquire
1626 Pine Street
Philadelphia, Pa.  19103
Attorney for Plaintiffs

**HOLSTEN & ASSOCIATES**

**BY:** **      /s/ Suzanne McDonough**
**SUZANNE MCDONOUGH, ESQUIRE**
**Attorney ID No.  29394**
**One Olive Street**
**Media, PA  19063**
**(610) 627-8307**
**Attorney for moving Defendants, Borough of Jenkintown,**
**Sean Kilkenny, Debora Pancoe, Richard Bunker and**
**George Locke**

Dated: December 18, 2018

20

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **DAVID B. DOWNS & MARGARET A. DOWNS, H/W** | : |  |
| **Plaintiffs** | : | **18-CV-4529** |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **BOROUGH OF JENKINTOWN, ET AL.** | : |  |
| **Defendants** | : |  |
|  | : |  |

## FIRST AMENDED COMPLAINT

1. This is a civil action seeking equitable relief and money damages against Defendants for committing acts, under color of law, which deprived Plaintiffs of their rights secured under the First and Fourteenth Amendments of Constitution and laws of the United States and the Commonwealth of Pennsylvania; for conspiring for the purpose of impeding and hindering the due course of justice, with intent to harm Plaintiffs; and for refusing or neglecting to prevent such deprivations and denials to Plaintiffs.

2. The Court has jurisdiction of this action under 42 U.S.C. § 1983, 1988 and 28 U.S.C. §§ 1331, 1343 and 1367. The Court has jurisdiction over Plaintiffs' state law claims pursuant to the doctrine of supplemental jurisdiction.

3. This action properly lies in the Eastern District of Pennsylvania, Civil Division, pursuant to 28 USC §§ 1391(c), 29 USC 1132(e), because the Plaintiff and Defendants reside in Eastern Pennsylvania conduct business, have significant contacts in Pennsylvania and are subject to personal jurisdiction in Pennsylvania.

4. Plaintiffs, David B. Downs and Margaret A. Downs, h/w, are citizens and residents of Jenkintown, Pennsylvania and the United States of America.

1

5. Defendant, Borough of Jenkintown, is a local government entity/municipality and is an agent of the Commonwealth of Pennsylvania with offices located in Jenkintown, Pennsylvania.

6. Defendant, Sean Kilkenny, resides in Jenkintown, is the Solicitor to Jenkintown Borough, licensed to practice law in the Commonwealth of Pennsylvania. Defendant Kilkenny is also the Sheriff of Montgomery County and is a leader of the Jenkintown Democratic Party.

7. Defendant, Deborra Pancoe, resides in Jenkintown, is the President of Jenkintown Borough Council. Defendant Pancoe is also a leader of the Jenkintown Democratic Party.

8. Defendant, Richard Bunker, resides in Jenkintown, is the Vice-President of Jenkintown Borough Council. Defendant Bunker is also a leader of the Jenkintown Democratic Party.

9. Defendant, George Locke, is the Borough Manager of Jenkintown Borough.

10. Plaintiff sues each and all Defendants in their individual and official capacities.

11. At all times material to this Complaint, Defendants, Kilkenny, Pancoe, Bunker and Locke acted under color of law and under the color of the statutes, customs, ordinances and usage of the Commonwealth of Pennsylvania, Montgomery County and Jenkintown Borough.

12. At all times relevant, Defendants acted jointly and in concert with each other. Each individual Defendant had the duty and opportunity to protect the Plaintiffs from the unlawful actions of the other Defendants but each Defendant failed and refused to perform such duty, thereby proximately causing Plaintiffs' damages.

13. Defendants engaged in multiple corrupt actions, conspired with one another against Plaintiffs and, after Plaintiff, Margaret A. Downs, exercised her First Amendment Rights to

2

participate as a candidate and run for election for the public office of Mayor of Jenkintown

Borough, Defendants used the Jenkintown Borough Zoning Code as a weapon to retaliate against

Plaintiffs by falsely accusing them of operating an impact business, in violation of the

Jenkintown Zoning Code, out of their residence and further trumping up evidence Defendants

knew was false for the sole purpose to harass, intimidate, punish, embarrass and humiliate

Plaintiffs and to cause great economic harm to Plaintiffs by forcing them to undergo the expense

of appealing trumped-up zoning violations.

## KEY FACTS

14.  In August of 2016, Joseph Glass, began renting the property adjacent to Plaintiffs'

residence at 303 Runnymede Avenue, Jenkintown, PA 19046 and operating a concrete/cement

finishing business out of said property.  At all times relevant, said property was owned by

Francis V. Reiley.

15.  Under the Jenkintown Zoning Code, the property at 303 Runnymede Avenue was

zoned as B-1 Residential.  The operation of a concrete business out of this residential dwelling

by Mr. Glass violated the Zoning Code.  The operation of the business was a nuisance and

disruptive to residents that lived adjacent to and nearby 303 Runnymede Avenue.

16.  In or around August of 2016 and thereafter, Plaintiffs and other residents that live

near 303 Runnymede made multiple complaints about the illegal operation of the concrete

business to Defendant Locke. Plaintiffs notified the other Defendants of these complaints on

several occasions, including notifying Defendants in Borough Council meetings.

17.  Over the next 14 months, Defendant Locke would consult with and rely upon the

advice provided by Defendants Kilkenny, Pancoe and Bunker.

18.  On September 1, 2016, Jenkintown Borough issued a code violation to Mr. Glass for

violating the Borough Zoning Code prohibiting the operation of an impact business at that

location. Defendant Locke deemed the violation as abated on or about September 30, 2016 even though nothing was done by Mr. Glass to remediate the violation.

19. Because Mr. Glass did not stop operating his concrete business,  multiple complaints were made by Plaintiffs and other Jenkintown residents.  A new Citation was issued to Mr. Glass in November of 2016.

20. Tensions ensued over the next 14 months between Mr. Glass and Plaintiffs and residents of Jenkintown regarding his operation of his concrete business at 303 Runnymede Avenue.  In 2016 and 2017, Mr. Glass engaged in multiple criminal acts against Plaintiffs and, as a result, was prosecuted and pled guilty to committing criminal acts.

21. On October 25, 2016, Joseph Glass and Christine Glass, h/w, made false allegations against Plaintiffs accusing them of operating a landscaping business.  Defendant Locke investigated these complaints and eventually determined that the complaints had no merit.

22. Though Mr. Glass acted with impunity by openly operating his business in violation of Jenkintown's Zoning Code, Defendants and other Borough officials failed to take effective measures in stopping the ongoing violations.   Instead of administering their duties as Borough Officials and Employees, Defendants dismissed the matter as a "neighborly dispute."  However, it was not a neighborly dispute.  It was an illegal and disruptive operation, and continues to be, of a concrete business.

23. In April of 2017, a hearing on the zoning citation was held before the Jenkintown District Justice and Mr. Glass was found guilty of violating Jenkintown's Zoning Code that prohibits residents from operating impact businesses on residentially zoned property.

4

24.  In September of 2017, due to the dissatisfaction with the Defendants and other elected officials of the Jenkintown Borough, Plaintiff, Margaret A. Downs, decided to exercise her franchise and run, as a write-in candidate, for the public office of Mayor of Jenkintown Borough.  Ms. Downs was a registered Democrat.

25.  In 2017, Ms. Downs had also made Right to Know requests for public records related to Jenkintown's handling of code enforcement and related matters.

26.  Though Plaintiff had substantial support from resident-voters of Jenkintown Borough, she did not have the support of the Jenkintown Democratic Party leadership, which included Defendants Kilkenny, Pancoe and Bunker.

27.  In the primary held in the Spring of 2017, Defendants and the Jenkintown Democratic Party nominated and endorsed Allyson Dobbs who ran unopposed as the Democratic candidate in the primary.  At the time of the general election, Ms. Dobbs had no opposition from the Republican Party and had cross-filed on the Republican ticket.

28.  Defendants Kilkenny, Pancoe, Bunker and Locke were angry at Ms. Downs for running for office as a write-in candidate against their endorsed candidate, Allyson Dobbs.

29.  At all times relevant, Defendants frowned upon Plaintiff's run for office, criticized and retaliated against Jenkintown residents that supported Plaintiff and harbored resentment and anger toward Plaintiffs.

30.  On multiple occasions during the election season, Defendant Bunker made disparaging comments on the "Jenkintown Community Page" blog site about Ms. Downs for exercising her right to run for the office of Mayor.  He also decried Ms. Downs for making the Right to Know requests and claimed that Jenkintown spent more than $10,000.00 having to respond to these requests.

31.  For many years, including 2016 through the present, the Jenkintown Borough failed to enforce the zoning code and/or selectively enforced the zoning code.

32.  In October of 2017, after receiving complaints from the Glasses, Defendant Borough served Plaintiffs with two property code violation notices.  Plaintiffs were cited for allegedly having a dead tree on their property (this was not true as Plaintiffs hired an Arborist to inspect the tree and confirm in writing to the Borough that the tree was healthy) and for having a down spout turned in the wrong direction, which Plaintiffs immediately remediated.

33.  What is interesting is that many other property and zoning code violations brought to the Borough's attention by citizens of Jenkintown were routinely ignored and/or dismissed. Enforcement was rare and sporadic.

34.  As to the allegations of the Glasses that Plaintiffs were violating the zoning code by operating an impact business, on October 11, 2017, Defendant Locke stated in a Memorandum that he had made three inspections of Plaintiffs' property and found that Plaintiffs were not operating a business.

35.  The election for Mayor of Jenkintown Borough took place on November 7, 2017. Even though Ms. Downs obtained approximately 35% of the vote as a write-in candidate, the election was won by Ms. Dobbs.

36.  Two weeks after the election, on November 21, 2017, Defendant Locke, sent a letter claiming to Plaintiffs that the Borough had received multiple complaints (from the Glasses) that Plaintiffs were operating a landscaping business out of their home.  This letter asked Plaintiffs to meet with Defendants Locke and Kilkenny at Borough Hall to discuss these allegations.  A meeting was subsequently scheduled to take place on December 7, 2017.

37.  On December 7, 2017, Plaintiffs met with Defendants Kilkenny and Locke at Borough Hall.  Plaintiffs went to this meeting expecting to address the false allegations that they had been operating a landscape business.

38.  However, when Plaintiffs arrived to discuss this matter, Defendants Kilkenny and Locke refused to engage in discussion of the merits of the allegations and/or to learn the truth. Instead, Kilkenny instructed Locke to hand over a zoning violation notice to Plaintiffs and left the room.  Kilkenny refused to engage with or listen to Plaintiffs.  Plaintiffs persisted and tried to get Locke to listen.  Kilkenny returned to the room and instructed Locke to end the meeting.

39.  Ms. Downs, and her attorneys, repeatedly invited Defendants Locke, Kilkenny, Pancoe and Bunker, as well as the other Council members, to come and inspect their property so that they could demonstrate that they were not operating a landscaping business or any other business.

40.  Defendants refused Plaintiffs' invitations to inspect the property. Defendants did not really care about the truth and did not care if Plaintiffs' were operating a business.  Defendants only cared to use the Zoning Code as a weapon to punish Plaintiffs for engaging in political activities, namely Ms. Downs' running for the office of Mayor.

41.  On Plaintiffs' behalf, two reputable and established attorneys wrote to the Borough and Defendant Kilkenny explaining in detail that Plaintiffs did not operate a business out of their home.  One attorney requested that an informal meeting take place between Borough officials, Plaintiffs and the Glasses.

42.  Defendants disregarded the attorneys' representations that no business was being operated at Plaintiff's property and denied the request for an informal meeting.

7

43. On or about January 7, 2018, Defendant Borough issued a zoning violation citation to Plaintiffs and a hearing was scheduled on March 26, 2018 before the honorable District Justice Elizabeth McHugh.

44. Defendants undertook great effort, preparing substantial briefs, to prosecute the violation even though they knew that Plaintiffs were not operating a business.

45. At the hearing, Judge McHugh dismissed the zoning code violations brought by the Borough against Plaintiffs.

46. That same day, Defendants further conspired to trump up a false code violation against Plaintiffs and issued a new zoning violation notice again accusing Plaintiffs of operating an impact business.

47. Given the aggressive nature of Defendants' actions, Plaintiffs were placed in the untenable position of having to appeal the zoning violation notice to the Jenkintown Borough Zoning Board, which meant that they would have to incur substantial and considerable legal expense.

48. At all times relevant, Kilkenny abused his authority as a Solicitor and Democratic Party leader to instruct Locke to conspire with the other Defendants to retaliate against Plaintiff by trumping up false evidence, including suborning perjured testimony from witnesses, and falsely alleging that Plaintiffs were operating an impact business from their home on 301 Runnymede Avenue in violation of the Jenkintown Borough Zoning Code.

49. At all times, Plaintiffs maintained that they did not operate any business at their home and directly communicated this fact to Defendants Kilkenny, Locke, Pancoe and Bunker.

8

50. At all times relevant, Defendants knew that Plaintiffs did not operate a business out of their home.  Despite knowing this fact, Defendants still charged Plaintiffs with violating the Jenkintown Zoning Code.

51. At all times relevant, Defendants were obliged to but failed to procure some reasonable evidence of the alleged code violation against Plaintiffs.  However, Defendants did nothing to investigate and obtain evidence of the alleged violation because they knew that Plaintiffs did not operate a business out of their home.

52. The only purpose of Defendants' actions was to punish Plaintiffs for exercising their First Amendment Rights:

        a. to speak out at Council Borough meetings regarding the aforesaid zoning code violations of Mr. Glass;

        b.  to make Right To Know requests for public information;

        c. regarding Ms. Downs' rights to campaign and run for political office within the Borough against the endorsed candidate of the political party in power; and,

        d. regarding Mr. Downs' rights to support Ms. Downs' candidacy and to campaign on behalf of her candidacy for the Mayor of Borough of Jenkintown.

53. In May, June and July of 2018, three separate hearings were held before the Jenkintown Borough Zoning Board. On the first two days of the hearings, Defendants presented trumped-up, false, weak and frivolous evidence to the Board.  On the third day, Plaintiffs presented their evidence.

54. After Plaintiffs rested, the Board retired to deliberate for a very short period of time. When the Board returned, they announced their decision 5 - 0 in favor of Plaintiffs.

## COUNT I - SECTION 1983 - FIRST AMENDMENT
## ALL DEFENDANTS

9

55.  Plaintiffs hereby incorporate by reference paragraphs 1 through 54 of this Complaint as though same were fully set forth at length herein.

56.  At all times relevant, Defendants retaliated against Plaintiffs because Ms. Downs exercised her First Amendment Rights to freedom of speech by running for public office, making Right To Know requests and because Plaintiffs spoke out with regard to issues that concern the public, including issues regarding unlawful practices, policies and customs of the Jenkintown Borough.

57.  As a direct and proximate result of the acts and omissions of Defendants herein described, the Plaintiffs were caused to suffer economic harm, other money damages, were caused mental emotional pain, anguish and suffering, and had been chilled in their exercise of their rights to freedom of speech and to petition for the redress of grievances under the First and Fourteenth Amendments to the United States Constitution, and, in addition, have suffered the loss of all the Constitutional rights described herein.

58.  In the manner described herein, Defendants acted with reckless disregard of Plaintiff's Constitutional rights.

59.  Defendants knew or should have known that their actions would or probably would inflict great economic distress and pain and suffering upon Plaintiffs.

60.  At all times relevant, individual Defendants, enacted policy and executed policy on behalf of Defendant Borough of Jenkintown.

61.  In the manner described herein, Defendants have deprived Plaintiffs of their rights to freedom of speech and due process of the law.  All of these rights are secured to Plaintiff by

10

provisions of the First and Fourteenth Amendments to the United States Constitution and by 42 U.S.C. § 1983 and 1988.

62.   The actions of all Defendants exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous and unjustifiable and, therefore, punitive damages against the individual Defendants is necessary and appropriate.

## COUNT II - ABUSE OF PROCESS (STATE LAW)
## DEFENDANTS KILKENNY & LOCKE

63.   Plaintiffs hereby incorporate by reference paragraphs 1 through 62 of this Complaint as though same were fully set forth at length herein.

64.   As a result of the conduct of Defendants Locke and Kilkenny as described herein, Plaintiffs were subjected to false claims of violating Jenkintown's zoning laws and forced to expend great sums of money to defend against said false charges.

65.   Defendants' conduct in bringing the aforesaid false claims against Plaintiffs was reckless, intentional, without valid legal basis, done to annoy, harm and harass Plaintiffs and constitutes an abuse of process.

66.   As a result of Defendants' conduct, Plaintiffs suffered economic losses, pain and suffering, emotional distress, anguish, loss of reputation and other pecuniary losses.

67.   The actions of Defendants Kilkenny and Locke exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous and unjustifiable and, therefore, punitive damages against the individual Defendants is necessary and appropriate.

## COUNT III - CONSPIRACY (STATE LAW)
## DEFENDANTS KILKENNY & LOCKE

68.  Plaintiffs hereby incorporate by reference paragraphs 1 through 67 of this Complaint as though same were fully set forth at length herein.

69.  As a result of the conduct of Defendants Kilkenny and Locke as described herein, Plaintiffs were subjected to false claims of violating Jenkintown's zoning laws and forced to expend great sums of money to defend against said false charges.  Said Defendants conspired and engaged in a conspiracy to bring the aforesaid false claims against Plaintiffs.

70.  The conduct of said Defendants, acting in concert and conspiracy, was undertaken knowingly, intelligently, intentionally, negligently, recklessly and/or with malice and reckless disregard for the truth.

71.  As a result of Defendants' conduct, Plaintiffs suffered economic losses, pain and suffering, emotional distress, anguish, loss of reputation and other pecuniary losses.

72.  The actions Defendants Kilkenny and Locke exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous and unjustifiable and, therefore, punitive damages against the individual Defendants is necessary and appropriate.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants and each of them, jointly and severally, as follows:

A)      Awarding economic and compensatory damages under 42 U.S.C. ¶ 1983, et seq.;

B)      Awarding interest calculated at the prevailing rate;

C)      Awarding reasonable attorney's fees, and other costs of the action pursuant to the Section 1983;

12

D).    Awarding damages for pain and suffering under Section 1983;

E).    Awarding punitive damages as to individual Defendants; and,

F)     Awarding such other relief as this Court shall consider to be fair and equitable.

WILLIAM J. FOX, ESQUIRE
Attorney for Plaintiffs
1626 Pine Street
Philadelphia, PA 19103
(215) 546-2477

13