## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID B. DOWNS & MARGARET A.** | : | |
| **DOWNS, H/W** | : | **18-CV-4529** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF JENKINTOWN, ET AL.** | : | |
| **Defendants** | : | |
| | : | |

## ORDER

AND NOW, this        day of            , 2019, upon review of Defendants'

Motion To Dismiss The Amended Complaint and Plaintiffs' Response thereto, it is hereby ordered

and decreed that Defendants' Motion To Dismiss is DENIED.

IT IS FURTHER ORDERED THAT Defendants shall answer the Complaint within 21 days

of the date of this Order.

HONORABLE JAN E. DUBOIS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID B. DOWNS & MARGARET A.** | : | |
| **DOWNS, H/W** | : | **18-CV-4529** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF JENKINTOWN, ET AL.** | : | |
| **Defendants** | : | |
| | : | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

As is set forth in the standard below, the Court must accept all of Plaintiffs' allegations as true and reasonable inferences that can be drawn therefrom. (Amended Complaint is attached hereto as Ex. "A") Perhaps the most obvious facts that the Court must accept as true and as pled in the First Amended Complaint are:

- Plaintiffs did **not** operate a business at their house in 2017 or any time thereafter;

-Defendants Deborah Pancoe and Richard Bunker were the President and Vice President of the Borough of Jenkintown and were authorized to make decisions and policy on behalf of Jenkintown Borough.

-Defendant George Locke was the Borough Manager for Jenkintown and was authorized to make decisions and policy on behalf of Jenkintown Borough.

-Defendant Sean Kilkenny was a Jenkintown Democratic Party leader, Sheriff of Montgomery County.

- All Defendants knew that Plaintiffs were **not** operating a business at their house in 2017

or any time thereafter.

- Despite knowing that Plaintiffs were **not** operating a business, all Defendants participated in the decision to issue notices of zoning violations and citations against Plaintiffs by falsely alleging that they operated a landscaping business out of their home.

- Defendants are state actors who had knowledge of and participated in the actions to falsely accuse Plaintiffs of violating Jenkintown's Code.

-throughout 2017 and up until the election on November 7, 2017, Plaintiffs engaged in constitutionally protected activity of: 1) appearing at Jenkintown Borough Council meetings and voicing complaints about zoning matters; 2) making right to know requests for information regarding zoning and other matters; 3) running as a Democrat (Plaintiff Margaret Downs) for the political office of Mayor of Jenkintown as a write-in candidate against the candidate who was endorsed by the Jenkintown Democratic party; and, 4) campaigning (Plaintiff David Downs) on behalf of Ms. Downs for her candidacy for mayor.

- Defendants retaliated against Plaintiffs by falsely accusing them of violating the zoning code because Plaintiffs engaged in protected activity under the First Amendment.

-On multiple occasions between November of 2017 and May of 2018, Plaintiffs and their attorneys invited Defendants to inspect their property to prove that they did not run a business and actually told Defendants that Plaintiffs did not operate any business at their residence.

- Between November of 2017 and May of 2018, Defendants had multiple opportunities to rescind the false allegations of code violations lodged against Plaintiffs but refused to do so.

-As a cover to mask their unconstitutional violations of Plaintiffs' rights, Defendants relied upon trumped up allegations made by Plaintiffs neighbors, the Glasses, even though they knew that

the allegations made by the Glasses were not true.  Defendants further offered the Glasses to provide false testimony against the Plaintiffs at the Zoning Hearing

- Plaintiffs were forced to expend thousands of dollars to hire attorneys to defend themselves against the aforesaid false allegations; and,

**-** In July of 2018, after three days of zoning hearings, Plaintiff's prevailed**.**

**(See Amended Complaint attached hereto as Exhibit "A".)**

## II.  STANDARD

The standard on a motion to dismiss under Rule 12(b)(6) is whether the Complaint "contain(s) sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, (2009) (quoting *Bell Atl. Corp. V. Twomly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads actual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. At 1949.

The Third Circuit has confirmed that pleading standards are not the same as burden of proof standards required at the time of trial stating - "the Court is concerned with the sufficiency of pleadings, not the sufficiency of evidence." Fowler v. UPMC Shadyside, 578 F.3d 203, 213-14 (3d Cir. 2009).   The Supreme Court has also held that " of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote or unlikely." Twombly, 550 U.S. at 556.

The Court in the case of Sosa v. Floyd, succinctly set forth the standard under 12(b)(6):

It is, of course, firmly established that in reviewing a Fed. R. Civ. P. 12(b)(6) motion, the Court must draw all reasonable inferences in the Plaintiff's favor.  See *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991).  Just as a pleading must

"be construed as to do substantial justice," a plaintiff generally need not explicitly allege the existence of every element in a cause of action if fair notice of the transaction is given and the complaint sets forth the material points necessary to sustain recovery.  See *Mekowitz v. Pottstown Memorial Medical Center et al.*, 154 F.3d 113, 124 (3d Cir. 1999).

Sosa v. Floyd, 98-CV-6602 (April 23, 1999 E.D. Pa.).

After applying the well cited law to Plaintiffs' First Amended Complaint, it is clear that Defendants' Motion To Dismiss should be denied.

## III.  ARGUMENT

### A.  Allegations In Complaint

The assertion by Defendants that Plaintiff failed to properly plead a claim under the Section 1983 is without merit.  In the Complaint, Plaintiff sets forth more than 40 paragraphs of factual allegations detailing Plaintiffs' obvious claims for relief for First Amendment Retaliation under the Section 1983 and State law claims of Abuse of Process and Civil Conspiracy .  (A true and correct copy of the First Amended Complaint is attached hereto as Exhibit "A".)  The factual allegations, some of which are set forth below, expressly, and through drawing reasonable inferences in favor of Plaintiff, set forth the claims pled in the Complaint:

5.  Defendant, Borough of Jenkintown, is a local government entity/municipality and is an agent of the Commonwealth of Pennsylvania with offices located in Jenkintown, Pennsylvania.

6.  Defendant, Sean Kilkenny, resides in Jenkintown, is the Solicitor to Jenkintown Borough, licensed to practice law in the Commonwealth of Pennsylvania.  Defendant Kilkenny is also the Sheriff of Montgomery County and is a leader of the Jenkintown Democratic Party.

7.  Defendant, Deborra Pancoe, resides in Jenkintown, is the President of Jenkintown Borough Council.  Defendant Pancoe is also a leader of the Jenkintown Democratic Party.

8.  Defendant, Richard Bunker, resides in Jenkintown, is the Vice-

President of Jenkintown Borough Council. Defendant Bunker is also a leader of the Jenkintown Democratic Party.

9.  Defendant, George Locke, is the Borough Manager of Jenkintown Borough.

10.  Plaintiff sues each and all Defendants in their individual and official capacities.

11.  At all times material to this Complaint, Defendants, Kilkenny, Pancoe, Bunker and Locke acted under color of law and under the color of the statutes, customs, ordinances and usage of the Commonwealth of Pennsylvania, Montgomery County and Jenkintown Borough.

12.  At all times relevant, Defendants acted jointly and in concert with each other. Each individual Defendant had the duty and opportunity to protect the Plaintiffs from the unlawful actions of the other Defendants but each Defendant failed and refused to perform such duty, thereby proximately causing Plaintiffs' damages.

13.  Defendants engaged in multiple corrupt actions, conspired with one another against Plaintiffs and, after Plaintiff, Margaret A. Downs, exercised her First Amendment Rights to participate as a candidate and run for election for the public office of Mayor of Jenkintown Borough, Defendants used the Jenkintown Borough Zoning Code as a weapon to retaliate against Plaintiffs by falsely accusing them of operating an impact business, in violation of the Jenkintown Zoning Code, out of their residence and further trumping up evidence Defendants knew was false for the sole purpose to harass, intimidate, punish, embarrass and humiliate Plaintiffs and to cause great economic harm to Plaintiffs by forcing them to undergo the expense of appealing trumped-up zoning violations.

14.  In August of 2016, Joseph Glass, began renting the property adjacent to Plaintiffs' residence at 303 Runnymede Avenue, Jenkintown, PA 19046 and operating a concrete/cement finishing business out of said property.  At all times relevant, said property was owned by Francis V. Reiley.

15.  Under the Jenkintown Zoning Code, the property at 303 Runnymede Avenue was zoned as B-1 Residential.  The operation of a concrete business out of this residential dwelling by Mr. Glass violated the Zoning Code.  The operation of the business was a nuisance and disruptive to residents that lived adjacent to and nearby 303 Runnymede Avenue.

16. In or around August of 2016 and thereafter, Plaintiffs and other residents that live near 303 Runnymede made multiple complaints about the

illegal operation of the concrete business to Defendant Locke.  Plaintiffs notified
the other Defendants of these complaints on several occasions, including notifying
Defendants in Borough Council meetings.

17.  Over the next 14 months, Defendant Locke would consult with and
rely upon the advice provided by Defendants Kilkenny, Pancoe and Bunker.

18.  On September 1, 2016, Jenkintown Borough issued a code violation to
Mr. Glass for violating the Borough Zoning Code prohibiting the operation of an
impact business at that location. Defendant Locke deemed the violation as abated
on or about September 30, 2016 even though nothing was done by Mr. Glass to
remediate the violation.

19.  Because Mr. Glass did not stop operating his concrete business,
multiple complaints were made by Plaintiffs and other Jenkintown residents.  A
new Citation was issued to Mr.  Glass in November of 2016.

20.  Tensions ensued over the next 14 months between Mr. Glass and
Plaintiffs and residents of Jenkintown regarding his operation of his concrete
business at 303 Runnymede Avenue.  In 2016 and 2017, Mr. Glass engaged in
multiple criminal acts against Plaintiffs and, as a result, was prosecuted and pled
guilty to committing criminal acts.

21.  On October 25, 2016, Joseph Glass and Christine Glass, h/w, made
false allegations against Plaintiffs accusing them of operating a landscaping
business.  Defendant Locke investigated these complaints and eventually
determined that the complaints had no merit.

22.  Though Mr. Glass acted with impunity by openly operating his
business in violation of Jenkintown's Zoning Code, Defendants and other
Borough officials failed to take effective measures in stopping the ongoing
violations.   Instead of administering their duties as Borough Officials and
Employees, Defendants dismissed the matter as a "neighborly dispute."  However,
it was not a neighborly dispute.  It was an illegal and disruptive operation, and
continues to be, of a concrete business.

23.  In April of 2017, a hearing on the zoning citation was held before the
Jenkintown District Justice and Mr. Glass was found guilty of violating
Jenkintown's Zoning Code that prohibits residents from operating impact
businesses on residentially zoned property.

24.  In September of 2017, due to the dissatisfaction with the Defendants
and other elected officials of the Jenkintown Borough, Plaintiff, Margaret A.
Downs, decided to exercise her franchise and run, as a write-in candidate, for the

public office of Mayor of Jenkintown Borough.  Ms. Downs was a registered Democrat.

25.  In 2017, Ms. Downs had also made Right to Know requests for public records related to Jenkintown's handling of code enforcement and related matters.

26.  Though Plaintiff had substantial support from resident-voters of Jenkintown Borough, she did not have the support of the Jenkintown Democratic Party leadership, which included Defendants Kilkenny, Pancoe and Bunker.

27.  In the primary held in the Spring of 2017, Defendants and the Jenkintown Democratic Party nominated and endorsed Allyson Dobbs who ran unopposed as the Democratic candidate in the primary.  At the time of the general election, Ms. Dobbs had no opposition from the Republican Party and had cross-filed on the Republican ticket.

28.  Defendants Kilkenny, Pancoe, Bunker and Locke were angry at Ms. Downs for running for office as a write-in candidate against their endorsed candidate, Allyson Dobbs.

29.  At all times relevant, Defendants frowned upon Plaintiff's run for office, criticized and retaliated against Jenkintown residents that supported Plaintiff and harbored resentment and anger toward Plaintiffs.

30.  On multiple occasions during the election season, Defendant Bunker made disparaging comments on the "Jenkintown Community Page" blog site about Ms. Downs for exercising her right to run for the office of Mayor.  He also decried Ms. Downs for making the Right to Know requests and claimed that Jenkintown spent more than $10,000.00 having to respond to these requests.

31.  For many years, including 2016 through the present, the Jenkintown Borough failed to enforce the zoning code and/or selectively enforced the zoning code.

32.  In October of 2017, after receiving complaints from the Glasses, Defendant Borough served Plaintiffs with two property code violation notices. Plaintiffs were cited for allegedly having a dead tree on their property (this was not true as Plaintiffs hired an Arborist to inspect the tree and confirm in writing to the Borough that the tree was healthy) and for having a down spout turned in the wrong direction, which Plaintiffs immediately remediated.

33.  What is interesting is that many other property and zoning code violations brought to the Borough's attention by citizens of Jenkintown were routinely ignored and/or dismissed.  Enforcement was rare and sporadic.

34.  As to the allegations of the Glasses that Plaintiffs were violating the zoning code by operating an impact business, on October 11, 2017, Defendant Locke stated in a Memorandum that he had made three inspections of Plaintiffs' property and found that Plaintiffs were not operating a business.

35.  The election for Mayor of Jenkintown Borough took place on November 7, 2017.  Even though Ms. Downs obtained approximately 35% of the vote as a write-in candidate, the election was won by Ms. Dobbs.

36.  Two weeks after the election, on November 21, 2017, Defendant Locke, sent a letter claiming to Plaintiffs that the Borough had received multiple complaints (from the Glasses) that Plaintiffs were operating a landscaping business out of their home.  This letter asked Plaintiffs to meet with Defendants Locke and Kilkenny at Borough Hall to discuss these allegations.  A meeting was subsequently scheduled to take place on December 7, 2017.

37.  On December 7, 2017, Plaintiffs met with Defendants Kilkenny and Locke at Borough Hall.  Plaintiffs went to this meeting expecting to address the false allegations that they had been operating a landscape business.

38.  However, when Plaintiffs arrived to discuss this matter, Defendants Kilkenny and Locke refused to engage in discussion of the merits of the allegations and/or to learn the truth.  Instead, Kilkenny instructed Locke to hand over a zoning violation notice to Plaintiffs and left the room.  Kilkenny refused to engage with or listen to Plaintiffs.  Plaintiffs persisted and tried to get Locke to listen.  Kilkenny returned to the room and instructed Locke to end the meeting.

39.  Ms. Downs, and her attorneys, repeatedly invited Defendants Locke, Kilkenny, Pancoe and Bunker, as well as the other Council members, to come and inspect their property so that they could demonstrate that they were not operating a landscaping business or any other business.

40.  Defendants refused Plaintiffs' invitations to inspect the property. Defendants did not really care about the truth and did not care if Plaintiffs' were operating a business.  Defendants only cared to use the Zoning Code as a weapon to punish Plaintiffs for engaging in political activities, namely Ms. Downs' running for the office of Mayor.

41.  On Plaintiffs' behalf, two reputable and established attorneys wrote to the Borough and Defendant Kilkenny explaining in detail that Plaintiffs did not operate a business out of their home.  One attorney requested that an informal meeting take place between Borough officials, Plaintiffs and the Glasses.

42.   Defendants disregarded the attorneys' representations that no business was being operated at Plaintiff's property and denied the request for an informal meeting.

43.   On or about January 7, 2018, Defendant Borough issued a zoning violation citation to Plaintiffs and a hearing was scheduled on March 26, 2018 before the honorable District Justice Elizabeth McHugh.

44.   Defendants undertook great effort, preparing substantial briefs, to prosecute the violation even though they knew that Plaintiffs were not operating a business.

45.   At the hearing, Judge McHugh dismissed the zoning code violations brought by the Borough against Plaintiffs.

46.   That same day, Defendants further conspired to trump up a false code violation against Plaintiffs and issued a new zoning violation notice again accusing Plaintiffs of operating an impact business.

47.   Given the aggressive nature of Defendants' actions, Plaintiffs were placed in the untenable position of having to appeal the zoning violation notice to the Jenkintown Borough Zoning Board, which meant that they would have to incur substantial and considerable legal expense.

48.   At all times relevant, Kilkenny abused his authority as a Solicitor and Democratic Party leader to instruct Locke to conspire with the other Defendants to retaliate against Plaintiff by trumping up false evidence, including suborning perjured testimony from witnesses, and falsely alleging that Plaintiffs were operating an impact business from their home on 301 Runnymede Avenue in violation of the Jenkintown Borough Zoning Code.

49.   At all times, Plaintiffs maintained that they did not operate any business at their home and directly communicated this fact to Defendants Kilkenny, Locke, Pancoe and Bunker.

50.   At all times relevant, Defendants knew that Plaintiffs did not operate a business out of their home.  Despite knowing this fact, Defendants still charged Plaintiffs with violating the Jenkintown Zoning Code.

51.   At all times relevant, Defendants were obliged to but failed to procure some reasonable evidence of the alleged code violation against Plaintiffs. However, Defendants did nothing to investigate and obtain evidence of the alleged violation because they knew that Plaintiffs did not operate a business out of their home.

52.   The only purpose of Defendants' actions was to punish Plaintiffs for

exercising their First Amendment Rights:

        a. to speak out at Council Borough meetings regarding the aforesaid zoning code violations of Mr. Glass;

        b.  to make Right To Know requests for public information;

        c. regarding Ms. Downs' rights to campaign and run for political office within the Borough against the endorsed candidate of the political party in power; and,

        d. regarding Mr. Downs' rights to support Ms. Downs' candidacy and to campaign on behalf of her candidacy for the Mayor of Borough of Jenkintown.

    53.  In May, June and July of 2018, three separate hearings were held before the Jenkintown Borough Zoning Board. On the first two days of the hearings, Defendants presented trumped-up, false, weak and frivolous evidence to the Board.  On the third day, Plaintiffs presented their evidence.

    54.  After Plaintiffs rested, the Board retired to deliberate for a very short period of time.  When the Board returned, they announced their decision 5 - 0 in favor of Plaintiffs. (See Ex. "A")

The aforementioned allegations contained in Plaintiff's First Amended Complaint succinctly set forth claims for First Amendment Retaliation, Abuse of Process and Conspiracy. Defendants' arguments to the contrary contain no merit.  Plaintiff's Complaint survives the Rule 12(b)(6) motion because it "contain(s) sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, (2009) (quoting Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).

### B.  Plaintiffs Make Out A Claim For First Amendment Retaliation

To make out a claim for First Amendment retaliation under Section 1983, Plaintiffs must aver that: 1) they engaged in constitutionally protected conduct; 2) the retaliatory conduct of Defendants was enough to "deter a person of ordinary firmness from exercising his constitutional rights; and, 3) a causal link exists between the Plaintiffs' protected conduct and Defendants'

retaliatory actions.  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  A causal link exists

when there is suggestive timing between the protected conduct and retaliatory action or when a

pattern of  antagonism exists.  Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.

1997).

### 1.  Plaintiffs Engaged in Constitutionally Protected Conduct

Plaintiffs engaged in multiple instances of constitutionally protected conduct.  They

appeared at Jenkintown Borough Council meetings on multiple occasions and voiced their

complaints about the code violations of Joseph Glass. (See Ex. "A", ¶¶ 14-23, 52)   Ms. Downs

made right to know requests to Defendant Borough for information regarding the Borough's

handling of code enforcement and related matters. (See Ex. "A", ¶¶ 14-23, 25, 52)  After making

these requests, Defendant Bunker, Vice President of Borough Council, ridiculed Ms. Downs on

multiple occasions.  (See Ex. "A", ¶ 30, 52) Due to her dissatisfaction with the Borough's handling

of the Glass code violations, Ms. Downs decided to run as a write-in candidate for the office of

Mayor of Jenkintown Borough.  (Ex. "A", ¶¶ 24-29) Mr. Downs engaged in protected political

activity by campaigning on behalf of Ms. Downs during the election.  (Ex. "A", ¶ 52) The election

for mayor was held on November 7, 2017.  There can be no dispute that Plaintiffs exercised their

First Amendment rights as set forth above and engaged in constitutionally protected conduct.  See

the First Amendment.

### 2.  Defendants' Actions To Falsely Accuse Plaintiffs Of Violating Jenkintown's Zoning Code Was Obvious And Crass Retaliation

Defendants' brief is more of an argument on the merits than an argument that Plaintiffs

failed to state a claim under F.R.C.P. 12(b)(6).  There was no reason for Defendants to charge

Plaintiffs with a zoning violation because they knew that Plaintiffs were not operating a landscaping

business (which presumably would be a violation of Jenkintown's Zoning Code prohibiting

operation of an "impact business" from a residentially zoned property).  What is interesting is that

in an October 11, 2017 memorandum, Defendant Locke had stated that he had inspected Plaintiffs'

property on three occasions and determined that the allegations (made by the Glasses) that Plaintiffs

were  operating a landscaping business were **not** true.  (Ex. "A" ¶ 34)

On another occasion in October of 2017 Defendants made weak allegations that Palintiffs

violated Jenkintown's property code (again after complaints are made by the Glasses). Defendant

Borough, who selectively and sporadically, enforced its property code,  served Plaintiffs with two

property code violation notices.  Defendants knew that the Glasses allegations were false but

continued to rely upon them up until the Zoning Hearing as a cover for their unconstitutional actions

against Plaintiffs.  (Ex. "A" ¶¶ 14-23, 53)  Plaintiffs were cited for allegedly having a dead tree on

their property (this was not true as Plaintiffs hired an Arborist to inspect the tree and confirm in

writing to the Borough that the tree was healthy) and for having a down spout turned in the wrong

direction, which Plaintiffs immediately remediated.  (Ex. "A" ¶¶ 1-33)

Given Jenkintown's sporadic and selective enforcement of its codes, one has to ask, how

many residents of Jenkintown, in 2017 or any year prior, were cited for having a downspout going

the wrong direction and/or for having a healthy tree be incorrectly determined to be dead.

Defendants' Brief misunderstands Plaintiffs allegations regarding Defendants' selective and

sporadic enforcement of its zoning and property codes.  What is highly suspect in this case is the

fact that a Borough which sporadically enforces its code chose to focus on Plaintiff, even though

Defendants knew Plaintiff was not operating a business.  Based on the Borough's past practice, and

most definitely in the case of how it enforced code violations committed by the Glasses, they

normally would not care if Plaintiffs were illegally operating an impact business.  The only reason

that Defendants cared in the case of Plaintiffs was to punish Plaintiffs for engaging in

constitutionally protected conduct.

On November 21, 2017, Plaintiffs are again falsely accused of operating a landscaping business.  On this day, they are notified by Defendant Locke to come to  Borough Hall on December 7, 2017 to discuss whether they are operating a business at their home.  When they arrive on December 7th, they are stoically greeted by Defendants Kilkenny and Locke.  No discussion or inquiry occurs as to whether Plaintiffs are actually operating a business.  Instead, Defendants Locke and Kilkenny hand over a notice of zoning violation.  Plaintiffs attempt to explain that they do not operate a business out of their home but Locke and Kilkenny are not interested in listening.  It is easy to infer that the actions of Defendants Kilkenny and Locke were calculated and meant to embarrass Plaintiffs.  It is easy to infer that Locke and Kilkenny used their positions to demonstrate that they had the power to harm Plaintiffs.  Defendants Bunker and Pancoe also had knowledge of these actions and supported them.  It is obvious, and can be reasonably inferred, that Defendants Kilkenny and Locke can only act with the authorization of the President and Vice President of the Jenkintown Borough Council.

Any reasonable person would ask two questions: 1) what happen between October 11, 2017 and November 21, 2017 that would cause Defendants to reverse course on their prior determination that Plaintiffs operated no business and now accuse Plaintiffs of operating a business?  The only answer to this question is that "the election happened" and Ms. Downs lost.  Now the leaders of the Jenkintown Borough and Jenkintown Democratic Party can trump up lies, with the overly enthusiastic participation of the Glasses, and pounce on Plaintiffs.

The allegations in the Amended Complaint clearly demonstrate facts of protected activity that are close in time and overlap with the acts of retaliation.  Plaintiff's Amended Complaint alleges a clear connection between Plaintiffs' protected conduct and the retaliation.  The retaliatory

acts occurred on November 21, 2017, December 7, 2017, January 7, 2018, March 26, 2018, at the three days of Zoning Hearings that took place between May and July of 2018. The retaliatory acts occurred throughout the period between November 2017 and July 2018 until Plaintiffs, after great expense, embarrassment and humiliation,  prevailed at the Zoning Hearing.  Defendants' arguments to the contrary are nothing more than jury arguments and should not be entertained in Rule 12(b)(6) motion practice. Ashcroft v. Iqbal, 129 S.Ct. at 1949.  Krouse v. American Sterilizer Co., 126 F.3d at 503-04.

Plaintiffs' Amended Complaint alleges many other facts demonstrating that they properly alleged claims of First Amendment retaliation.  Defendants became angry at Plaintiff when she decided to run for office, harbored resentment to Plaintiffs and criticized and retaliated against residents of Jenkintown that supported Ms. Downs' candidacy. (See Ex. "A", ¶¶ 24-29) On many occasions during the election season, Defendant Bunker made disparaging comments about Ms. Downs on the "Jenkintown Community Page" blog site.  (Ex. "A", ¶ 30)  Plaintiffs' actions to appear at Council Meetings and voice complaints, make right to know requests, run for political office and campaign on behalf of a candidate running for office are constitutionally protected actions under the First Amendment.  Mitchell, 318 F.3d 523.  On November 7, 2017, the election was held and the Democratic Party endorsed candidate, Allyson Dobbs, won the election.

Even though Jenkintown's Borough Manager, Defendant Locke, had determined on multiple occasions that Plaintiff's were not operating a landscaping business, two weeks after the election, on November 21, 2017, Plaintiffs were notified by Defendant Locke to appear at Borough Hall to answer new complaints that Plaintiffs had been illegally operating a landscaping business at their home.  The false, and what should have been considered a highly suspicious allegation, was again made by the Glasses.  Defendants used the Glasses as a pawn to raise the false allegations and

retaliate against Plaintiffs for engaging in constitutionally protected conduct under the First Amendment.

On December 7, 2017, Plaintiffs met with Defendants Locke and Kilkenny expecting to discuss the false allegations and reassure the Borough that they were not operating a business. However, Defendants did not want to be reasonable or engage in any discussions.  Even though Defendants did not conduct an investigation into whether the allegations were true and actually knew that Plaintiffs were not operating a landscaping business, Defendants still issued a zoning violation notice to Plaintiffs.  (Ex. "A" ¶¶ 36-38) This action was pure and crass retaliation against Plaintiffs because of their prior protected constitutional conduct.  <u>Mitchell</u> at 523.

At the meeting, Defendants Kilkenny and Locke refused to engage with Plaintiffs and did not ask them for their input as to the validity of the allegations.  Following the meeting, Plaintiffs engaged attorneys to write to Defendants to: 1) inform them that Plaintiffs were not running a business; 2) invite them to inspect Plaintiffs' residence; and, 3) to have a sit down meeting with the Glasses  regarding the allegations.  Defendants disregarded all of these requests.  (Ex. "A" ¶¶ 39-42) Instead, on January 7, 2018, Defendants continued their retaliation by issuing Plaintiffs a zoning violation citation which required them to expend substantial sums of money to hire and attorney and appear at a hearing on March 26, 2018.  After the citation was dismissed, Defendants immediately retaliated against Plaintiffs by trumping up another code violation, on that same day.  <u>Id</u>.

At this time, Plaintiffs had no choice but to appeal the violation to the Jenkintown Borough Zoning Board.  Otherwise, Defendants would have been able to harass Plaintiffs indefinitely. Plaintiffs incurred great costs to defend against the malicious and false allegations that they had operated an impact business at their residence.  Plaintiffs Zoning Hearing took place over three days and, at the end, the Zoning Board, which is appointed by the members of Borough Council, found

completely in favor of Plaintiffs.  (Ex. "A" ¶¶ 50-54)

Defendants' actions caused Plaintiffs to have to endure great expense, stress and anxiety and all in the public eye.  The only reason that Defendants brought false code violations against Plaintiffs was because they exercised their rights to speak up in political Council Borough meetings, to make right to know requests and to engage in a campaign for public office against the Democratic Party's endorsed candidate.  Defendants' tyrannical and abusive actions were intended to deter other Jenkintown residents from engaging in their First Amendment rights and from challenging the Democratic Party and those in power in Jenkintown government.  Defendants' actions played out in public:  on the streets of Jenkintown, the Village Green of Jenkintown, the Borough Hall of Jenkintown and on Jenkintown social media.  Anyone with a pulse in Jenkintown was aware of the outrageous actions of  Defendants, which can only be interpreted as Defendants' conscious effort to deter residents of Jenkintown from speaking up at Borough Council meetings, making complaints about code violations, making right to know requests and running for office against the endorsed candidate of the Party in power.  <u>Mitchell</u> at 523.

For the foregoing obvious reasons, Plaintiff makes out a claim for First Amendment retaliation under Section 1983.   The Complaint, "contain(s) sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949, (2009) (quoting *Bell Atl. Corp. V. Twomly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  The allegations pled in Plaintiffs' Amended Complaint are more than sufficient. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d at 213-214.

### C.  Plaintiffs Are Entitled To Punitives Under Section 1983

In Plaintiff's prayer for relief a demand for punitive damages is made.  (See page 12-13 of the First Amended Complaint.)  To the extent that punitive damages are allowable under the Federal

claim against individual Defendants, punitive damages are proper.  Plaintiff does not seek such damages against the government agency or municipality as the 1983 jurisprudence has made clear, government agencies are immune from punitive damages.  However, punitive damages are available against individual defendants.  *See*  Newport v. Fact Concerts., Inc. 453 U.S. 247, 101 (1981) and Smith v. Wade, 461 U.S. 30, 33-34 (1983).

**D.  Defendants Are Not Entitled To Immunity**

**1.  Defendant Kilkenny Is Not Entitled To Immunity**

**a. Defendant Kilkenny Is Not Entitled to Prosecutorial/Absolute Immunity**

Plaintiff alleges that Defendant Kilkenny was a leader of the Jenkintown Party and Sheriff of Montgomery County.  Defendant Kilkenny is also a solicitor to the Jenkintown Borough, but he is not the only solicitor.  In this case, Plaintiff alleges that Defendant Kilkenny, and the other Defendants, retaliated against Plaintiffs because they exercised their First Amendment rights to engage and campaign in politics, appear at political meetings, make right to know requests for information and to run for political office.  In doing so, many of Plaintiffs' actions were adverse to the Jenkintown Democratic Party and their leaders, including Kilkenny and the others.  When Kilkenny participated in the decision, along with Defendants Bunker, Pancoe and Locke, to falsely accuse Plaintiffs of illegally operating a business at their residence, he was not doing so in his capacity as a solicitor or even as a lawyer, he was doing so in his capacity as a Democratic Leader of Jenkintown with the clout that goes along with being the Sheriff of Montgomery County.  Indeed, in Montgomery County Democratic politics, Defendant Kilkenny is a powerful official and state actor.

With regard to the zoning hearing, Jenkintown appointed Noah Marlier, Esquire,  as "zoning solicitor" to handle the hearing.  Mr. Marlier conducted the Zoning Hearing on behalf of Defendant

Jenkintown.  For these reasons, Defendant Kilkenny cannot be considered the solicitor in this matter.

### b.  Defendant Kilkenny Is Not Entitled To Intracorporate Conspiracy Doctrine Immunity

Defendant Kilkenny argues that he should be immune if Plaintiffs' allegations against him were to allege that he conspired with the other Defendants, in his capacity as their attorney, to violate Plaintiffs' constitutional rights.  Defendant misinterprets the allegations in Plaintiffs' Amended Complaint.  Plaintiffs allege that Defendant Kilkenny conspired with the other Defendants in his capacity as a Democratic Party Leader and County Official to violate Plaintiffs' rights.  A review of the facts from the Amended Complaint does not delve into privileged communications or suggest that Kilkenny was giving legal advice to the other Defendants.  The allegations in the Amended Complaint reveal that Defendants, including Kilkenny, acted and conspired to violate Plaintiffs' rights by trumping up false allegations (with the help of false allegations and perjured testimony from the Glasses) that Plaintiffs operated an illegal business out of their residence.

No reasonable person would believe that Kilkenny was acting as an attorney and advising the other Defendants that the Borough had any legitimate reason to cite the Plaintiffs for zoning code violations.  Any competent attorney advising the Defendants in this matter would have conducted even a modicum of an investigation by 1) inspecting the property to ascertain whether Plaintiffs were operating an impact business; and, 2) questioning Plaintiffs as to whether they were operating an impact business.  Plaintiffs on their own and through their attorneys offered Defendants the opportunity to meet with them to offer proof that they were not operating a business and requested that they come and visit their house to demonstrate that they were not operating a

business.  Defendants' brief cites to Gen. Refractories, Co. v. Firman's Fund Ins. Co. and Heffernan v. Hunter as support that some how Defendant Kilkenny was providing legal advice to Defendants when they decided to falsely cite Plaintiffs.  However, these cases are not on point and involve factual circumstances where the lawyers are actually providing legal advice to their clients and are actively representing their clients within the scope of the attorney/client relationship.  *See* Refractories, Co. v. Firman's Fund Ins. Co. 337 F.3d 297, 313 (3d Cir. 2003) and Heffernan v. Hunter, 189 F.3d 405, 413-14 (3d Cir. 1999).  Here, Kilkenny was operating a political leader outside of his duties as an attorney.

**2.  Individual Defendants Are Not Entitled To Qualified Immunity**

The test of determining whether a defendant is entitled to qualified immunity is well settled and is a two-part analysis: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" . . and if a violation exists "whether the right was clearly established."  Saucier v. Katz, 533 U.S. 194, 200 (2001).  Whether a defendant is entitled to qualified immunity is typically determined by the Court unless there are disputed facts relevant to that determination.  Johnson v. Jones, 515 U.S. 304, 313, 115 S. Ct. 2151 (1995);  Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir. 1995).  The motivation of the defendant and whether he acted with improper intent is an issue that must be decided by the trier of fact so that the jury can observe the demeanor of the witnesses.  Mitchell v. Forsyth, 472 U.S. 511, 529, 105 S. Ct. 2806 (1985); Walker v. Horn, 286 F.3d 705, 710 (3d Cir. 2002).

Plaintiffs had a clearly established constitutional right to engage in the political and First Amendment activity as described in the Amended Complaint.  All of the individual Defendants should have reasonably understood that Plaintiffs had a constitutionally protected right to appear at Council Meetings and voice their concerns and complaints; to make right to know requests; to

engage in politics and political campaigns; and, to run for office.  The Amended Complaint alleges that the reason and motivation of Defendants to bring false accusations against Plaintiffs was because Plaintiffs engaged in the aforesaid protective conduct.  The intent and motivations of Defendants' actions is a question of credibility that must be decided by a jury.  *See*  Johnson v. Jones, 515 U.S. at 313 and Mitchell v. Forsyth, 472 U.S. at 529.

In their brief, Defendants wrongly suggest that they may have made a "mistake" to justify their violations of Plaintiffs' constitutional rights, entitling them to qualified immunity.  Defendants cannot credibly argue that they did not have knowledge or understand that Plaintiffs had engaged in well established constitutionally protected conduct.   Likewise, Defendants cannot claim that they made a mistake when citing Plaintiffs for violating Jenkintown's zoning code.  The reason is - - Defendants knew Plaintiffs did not violate the zoning code. The allegations in the Amended Complaint are clear, the Defendants intentionally and with malice retaliated against Plaintiffs to punish them for engaging in their First Amendment rights.  The allegations in the Amended Complaint must be accepted as true.   Ashcroft v. Iqbal, 129 S.Ct. at 1949.

### 3.  **Defendant Borough of Jenkintown is Not Entitled Immunity Under Monell**

Defendants incorrectly argue that Monell v. Dept. of Social Services precludes Plaintiffs 1983 claim against municipal Defendant, Jenkintown Borough, because the Amended Complaint does not allege that Jenkintown's policy and/or custom caused the unconstitutional acts.  *See* Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978).

When the decision to undertake the unconstitutional action is made by the municipality's authorized decision-makers, that action represents and is a custom and policy of the municipality, here Jenkintown. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986); *and see* Bartholomew v. Fischl, 782 F.2d 1148, 1154 (3d Cir. 1986).   Plaintiffs Amended Complaint alleges that the

decision makers were the President and Vice President of Borough Counsel, Defendants Pancoe and Bunke, Borough Manager, Defendant Locke and Defendant Kilkenny, the Jenkintown Democratic Party leader and Montgomery County Sheriff.   Plaintiffs also alleged that Defendant Jenkintown Borough had a custom of selectively and sporadically enforcing it zoning code and used this custom to violate Plaintiffs' constitutional rights.  (See Ex. "A" ¶¶ 14-23, 31-34, 55-62)

Defendants are the policy makers and decision makers for Jenkintown and the Amended Complaint clearly alleges that they violated Plaintiff's constitutional rights with regard to the manner in which they weaponized Jenkintown's zoning and property code against Plaintiffs.  Their unconstitutional acts against Plaintiffs "represents an act of official government 'policy' as that term is commonly understood." Pembaur, 475 U.S. at 481.  For these reasons, Defendant Jenkintown Borough is not entitled to dismissal under Monell.

### 4. Individual Defendants Should Not Be Dismissed Based Upon Their Official Capacity Status

Defendants suggest that, because Plaintiff identified them in the Amended Complaint in their official capacity, they should be dismissed from this case.  Defendants correctly point out that suing individuals in their official capacity is really a claim against the municipality.  Monell v. Dept. of Social Services, 436 U.S. at 691.  However, the individual Defendants are also being sued in their individual capacities. Paragraph 10 of Plaintiffs' Amended Complaint states: "Plaintiffs sue each all Defendants in their **individual** and official capacities.  (Ex. "A" ¶ 10) The Eastern District has rejected this argument before and has stated:

> It is true . . . . . that suits against officials in their official capacity are nothing more than actions against the governmental entity of which the individual was an agent.  However, this does not mean that the [borough] and [borough official] should be dismissed.  It would be possible for [the borough] to be liable, but for [the borough official] to be liable only in his **personal** capacity.  If so, it would be necessary to keep both in the action; [the borough official] could not

serve as a proxy for [the borough], nor could [the borough] for the [borough official].

Capresecco v. Jenkintown Borough, 261 F. Supp. 2d 319, 322 (E.D. Pa. 2003) *citing* Coffman v. Wilson Police Dept., 739 F. Supp 257, 262 (E.D. Pa. 1990).  For these reasons, Defendants' argument that they should be dismissed from this lawsuit because they were named in their official capacity should be denied.

### E.  Plaintiffs Make Out Claims For Abuse Of Process And Conspiracy

To make out a claim of abuse of process, "a plaintiff must show that the defendant used legal process against the plaintiff in a way that constituted a perversion of that process and caused harm to the plaintiff.  Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 304. (3d Cir. 2003) Plaintiffs Amended Complaint alleges that Defendants used the Zoning Code to punish Plaintiffs by falsely accusing them of operating an impact business at their residence when Defendants knew that Plaintiffs were not operating any business.  (See generally the factual allegations in Ex. "A" and more specifically, Count II of the Amended Complaint ¶¶ 63-67). Plaintiffs' allegations fall squarely within the elements of an abuse of process claim.  Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d at 304.

In their motion, Defendants suggest that abuse of process only applies to claims involving extortion or for collateral purposes.  However, the Appellate Court in Gen. Refractories Co. disagreed that abuse of process was limited to these circumstances.  The Appellate Court opined that case that if it followed defendants' view, "we would render the tort largely impotent, inapplicable to those cases where a legal process is pursued in a perverted manner in order to directly harm an adversary."  Gen. Refractories Co. 337 F.3d at 306.  For the foregoing reasons, Plaintiffs' claim for abuse of process should be allowed to go forward.

To maintain a conspiracy claim, Plaintiffs must aver 1) that a combination of two or more

persons acted with a common purpose to do what purports to be a lawful act for an unlawful

purpose; 2) an overt act is done in pursuance of the common purpose; and, 3) actual legal damages

are sustained.  Refractories Co. at 313 *citing* Strickland v. Univ. of Scranton, 700 A.2d 979, 987-88

(Pa. Super. 1997).   Here, Defendants Kilkenny and Locke conspired to trump up false zoning

violations against Plaintiffs for the unlawful purpose of retaliating against and punishing Plaintiffs

for engaging in constitutionally protected conduct.  The overt act of issuing the zoning violation was

done for the common purpose of punishing Plaintiffs for engaging in protected activity.  Plaintiffs

sustained substantial legal damage, including the expenditure of thousands of dollars to defend

themselve against the false charges.  Strickland v. Univ. of Scranton, 700 A.2d at 987-88.  (See Ex.

"A" generally and specifically ¶¶ 68-72)


## CONCLUSION

A review of Defendants' Motion reveals that they are really asking the Court to make

negative inferences against Plaintiff when reviewing the Complaint.  Defendants' approach does not

read the Complaint as whole or in context.  The black letter rule of law as set forth in Iqbal and

Twombly requires the Court to make reasonable inferences in favor of Plaintiff.  Defendants review

of the complaint is restrictive and defies common sense.  A review of the Complaint reveals that

Plaintiff alleges claims First Amendment retaliation under Section 1983 against all Defendants and

for Abuse of Process and Conspiracy against individual Defendants Kilkenny and Locke.  The

allegations in Plaintiffs' Amended Complaint more than sufficiently put Defendants on notice of

their claims.

In the event the Court finds that the Amended Complaint is deficient in some way, then

Plaintiffs request the opportunity to amend the First Amended Complaint and provide more specific

allegations to address any deficiencies. See F.R.C.P. 12(a)(4)(B).   Plaintiffs have substantial

documentary evidence and witnesses to support their claims.  While Plaintiffs believe that they have

substantially outlined their claims in the First Amended Complaint, if the Court were to require it,

Plaintiffs could add substantially more factual averments to support their claims.  The Federal Rules

provide that leave to amend "shall be freely given when justice so requires.  F.R.C.P. 15(a) *and see*

Gen. Refractories Co. at 309 *citing* Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000).

      **WHEREFORE**, Plaintiffs respectfully request that this honorable Court enter the proposed

order and deny Defendants' Motion To Dismiss.


                /s/ *William J. Fox*

                WILLIAM J. FOX, ESQUIRE
                Attorney for Plaintiffs
                1626 Pine Street
                Philadelphia, PA 19103
                (215) 546-2477


      I, William J. Fox, Esquire, attorney for Plaintiff, hereby certify that a true and correct copy
of the foregoing Response To Motion To Dismiss was served upon counsel for Defendants
electronically at the address below:

           Suzanne McDonough, Esquire
           Holsten & Associates
           One Olive Street
           Media, PA 19063


                /s/ *William J. Fox*
                WILLIAM J. FOX, ESQUIRE

Date: January 10, 2019