**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID B. DOWNS, and**<br>**MARGARET A. DOWNS,**<br>　　　　　　**Plaintiffs,**<br><br>　　　　v.<br><br>**BOROUGH OF JENKINTOWN,**<br>**SEAN KILKENNY,**<br>**DEBORA PANCOE,**<br>**RICHARD BUNKER, and**<br>**GEORGE LOCKE,**<br>　　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  18-4529** |

DuBois, J.                                                                    March 22, 2019

<u>**M E M O R A N D U M**</u>

## I.     INTRODUCTION

In this case, plaintiffs David and Margaret Downs assert that defendants—the Borough of Jenkintown and several leaders of the Borough—brought a series of false Jenkintown Zoning Code violation charges against plaintiffs in retaliation for exercising their First Amendment rights.  Specifically, plaintiffs assert claims of First Amendment retaliation, abuse of process, and civil conspiracy.  Presently before the Court is defendants' motion to dismiss.  For the reasons set forth below, the motion is granted in part and denied in part.

## II.     BACKGROUND

Plaintiffs David and Margaret Downs, husband and wife, are residents of defendant Borough of Jenkintown (the "Borough").  Am. Compl. ¶ 4.  The individual defendants are Sean Kilkenny, Solicitor of Jenkintown Borough and Sheriff of Montgomery County; Debora Pancoe,[1] President of Jenkintown Borough Council; Richard Bunker, Vice President of Jenkintown Borough Council; and George Locke, Borough Manager of Jenkintown.  *Id.* ¶¶ 6–9.

---

[1] The Court notes that the parties are inconsistent in how they spell Pancoe's first name.  In this Memorandum, the Court will employ the spelling used in defendants' motion, "Debora."

Defendants Kilkenny, Pancoe, and Bunker are all also "leader[s] of the Jenkintown Democratic Party." *Id.* ¶¶ 6–8.

Plaintiffs live in an area zoned as "B-1 Residential" under the Jenkintown Zoning Code. *Id.* ¶ 15. In August 2016, Joseph Glass rented the property adjacent to plaintiffs' and began operating a "concrete/cement finishing business" out of that property in violation of the Zoning Code. *Id.* ¶¶ 14–15. Plaintiffs and other nearby residents "made multiple complaints" about the business to defendant Borough Manager Locke. *Id.* ¶ 16. Plaintiffs also notified the other defendants about this issue "on several occasions," including during Borough Council meetings. *Id.*

The Borough issued Glass a Zoning Code violation citation on September 1, 2016, for operating "an impact business" in a residential area. *Id.* ¶ 18. However, on or about September 30, 2016, Locke deemed the violation abated, "even though nothing was done by Mr. Glass to remediate the violation." *Id.*

Over the next 14 months, "tensions ensued" between Glass, plaintiffs, and other Borough residents. *Id.* ¶ 20. Glass "engaged in multiple criminal acts" against plaintiffs, for which he "was prosecuted and pled guilty." *Id.* On October 25, 2016, Glass and his wife "made false allegations" that plaintiffs were operating a landscaping business on their property. *Id.* ¶ 21. Plaintiffs and other residents continued to complain about Glass's concrete business, and Glass was issued a new citation in November 2016. *Id.* ¶ 19. However, Glass continued to operate his concrete business, and defendants "failed to take effective measures in stopping the ongoing violations," instead "dismiss[ing] the matter as a 'neighborly dispute.'" *Id.* ¶ 22. Finally, in April 2017, a hearing on Glass's Zoning Code citation was held before "the Jenkintown District Justice," and Glass was found guilty. *Id.* ¶ 23.

Interested in how the Borough had acted in similar situations, plaintiff Ms. Downs made a series of Right to Know requests in 2017 for public records related to the Borough's "handling of code enforcement and related matters," to which the Borough responded. *See id.* ¶ 25. Thereafter, dissatisfied with defendants, Ms. Downs, a registered Democrat, decided in September 2017 to run for Mayor of Jenkintown as a write-in candidate. *Id.* ¶ 24. Jenkintown Democratic Party leaders, including defendants Kilkenny, Pancoe, and Bunker, were "angry" with Ms. Downs for running against the candidate they endorsed earlier in 2017. *Id.* ¶¶ 26–28. Defendants "criticized and retaliated against Jenkintown residents that supported Plaintiff and harbored resentment and anger toward Plaintiffs." *Id.* ¶ 29. Furthermore, on multiple occasions during the election season, Bunker made "disparaging comments" about Ms. Downs on the "Jenkintown Community Page" blog site for running for Mayor and for making Right to Know requests that he claimed cost the Borough more than $10,000 to provide responses. *Id.* ¶ 30.

After receiving complaints from the Glasses, the Borough served plaintiffs with two "property code violation notices" in October 2017 for (1) having a dead tree on their property and (2) having a "down spout turned in the wrong direction." *Id.* ¶ 32. Plaintiffs hired an arborist, who concluded the tree on plaintiffs' property was healthy, and plaintiffs immediately "remediated" the down spout. *Id.* Plaintiffs found it "interesting" that they received these violation notices, because complaints about property and zoning code violations were "routinely ignored and/or dismissed," and enforcement of the code was "rare and sporadic." *Id.* ¶ 33.

Finally addressing the Glasses' October 2016 accusation that plaintiffs were operating a landscaping business out of their home, Locke stated, in a memorandum dated October 11, 2017, that he "made three inspections of Plaintiffs' property" and concluded plaintiffs were not operating such a business. *Id.* ¶ 34.

On November 7, 2017, the mayoral election was held, and Ms. Downs lost, garnering approximately thirty-five percent of the vote. *Id.* ¶ 35.

Two weeks later, on November 21, 2017, Locke sent plaintiffs a letter stating that the Glasses had again complained that plaintiffs were operating a landscaping business out of their home and asking that plaintiffs meet with Locke and Kilkenny to discuss the allegations. *Id.* ¶ 36. At the meeting, which took place on December 7, 2017, Kilkenny and Locke "refused to engage in discussion of the merits of the allegations." *Id.* ¶ 37–38. Instead, Kilkenny "instructed Locke to hand over a zoning violation notice to Plaintiffs and left the room." *Id.* Plaintiffs "tried to get Locke to listen." *Id.* Kilkenny returned and instructed Locke to end the meeting. *Id.*

Ms. Downs and her attorneys repeatedly invited Locke, Kilkenny, Pancoe, and Bunker, as well as other Borough Council members, to inspect her property so that they could see plaintiffs were not operating a landscaping business, or any other impact business. *Id.* ¶ 39. Defendants refused to do so. *Id.* ¶ 40. Plaintiffs' attorneys wrote to the Borough and Kilkenny, explaining "in detail" that plaintiffs did not operate a landscaping business and requesting an informal meeting. *Id.* ¶ 41. Defendants denied the request. *Id.* ¶ 42.

The Borough issued plaintiffs a zoning violation citation on or about January 7, 2018. *Id.* ¶ 43. A hearing was scheduled for March 26, 2018, before Montgomery County Magisterial District Judge Elizabeth McHugh. *See id.* At the hearing, Judge McHugh dismissed the Zoning Code violations. *Id.* ¶ 45.

That same day, defendants issued a new Zoning Code violation notice, again accusing plaintiffs of operating an impact business. *Id.* ¶ 46. Plaintiffs appealed the violation notice to the Jenkintown Borough Zoning Board (the "Board"). *Id.* ¶ 47. They also continued to communicate that they were not operating any business from their property to Kilkenny, Locke,

Pancoe, and Bunker. *Id.* ¶ 49. From May to July 2018, three hearings were held before the Board. *Id.* ¶ 53. At these hearings, defendants "presented trumped-up, false, weak and frivolous evidence to the Board," including "perjured testimony from witnesses." *Id.* ¶¶ 48, 53. After deliberation, the Board decided 5-0 in favor of plaintiffs. *Id.* ¶ 54.

Plaintiffs filed the Complaint on October 23, 2018, and filed the Amended Complaint on December 10, 2018. The Amended Complaint asserts claims of First Amendment retaliation under 42 U.S.C. § 1983 against all defendants (Count I), state law abuse of process against Kilkenny and Locke (Count II), and state law civil conspiracy against Kilkenny and Locke (Count III). Plaintiffs sue all individual defendants in their individual and official capacities. *Id.* ¶ 10. Plaintiffs seek, *inter alia*, economic and compensatory damages, attorneys' fees, pain and suffering damages, and punitive damages from the individual defendants. *Id.* at 12–13. Defendants filed a motion to dismiss the Amended Complaint on December 18, 2018 (Document No. 18). Plaintiffs responded to the motion on January 10, 2019 (Document No. 10). The motion is thus ripe for review.

### III. LEGAL STANDARD

"The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked

assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are

"not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assesses "the

'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to

determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6)

motion, a court must consider only the complaint, exhibits attached to the complaint, matters of

public record, as well as undisputedly authentic documents if the complainant's claims are based

upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV.    DISCUSSION

Defendants raise numerous arguments in their motion to dismiss. Those arguments, each

of which is addressed below, are as follows: (1) plaintiffs failed to plead sufficient facts to state

their First Amendment retaliation claim or to connect the defendants to such a claim; (2)

plaintiffs' state law abuse of process claim is improper; (3) plaintiffs failed to plead sufficient

facts to state a claim of civil conspiracy; (4) the individual defendants are entitled to qualified

immunity; and (5) plaintiffs' demand for punitive damages should be stricken. For the reasons

that follow, the Court grants the motion in part and denies it in part.

### A. First Amendment Retaliation Claim against All Defendants under § 1983 (Count I)[2]

Plaintiffs assert that all defendants—the Borough, Kilkenny, Pancoe, Bunker, and

Locke—retaliated against plaintiffs for exercising their First Amendment rights. Am. Compl.

¶ 56. Plaintiffs bring this claim against the individual defendants in their individual and official

---

[2] Defendants interpret Count I of plaintiffs' Amended Complaint as stating claims of selective enforcement under the Fourteenth Amendment Equal Protection Clause and breach of a duty to protect plaintiffs in addition to a First Amendment retaliation claim. Defs.' Mem. Mot. Dismiss 7, 10. However, in plaintiffs' response to the motion plaintiffs do not say anything about either a selective enforcement claim or a breach of duty claim. *See* Pls.' Resp. 5. Furthermore, to the extent that plaintiffs assert a Fourteenth Amendment claim, it is subsumed by plaintiffs' First Amendment retaliation claim. *See Hill v. City of Scranton*, 411 F.3d 118, 125–26 (3d Cir. 2005) (disregarding Fourteenth Amendment selective enforcement claim where it was "functionally identical" to First Amendment retaliation claim and it would be "redundant to treat [the claims] separately").

capacities. *Id.* ¶ 10. Defendants argue that this claim should be dismissed as to the individual defendants insofar as it is brought against them in their official capacities. Defs.' Mem. Law Supp. Defs.' Mot. Dismiss 7. They also contend that plaintiffs failed to plead sufficient facts to allege a First Amendment retaliation claim. *Id.* at 8. Finally, they argue that plaintiffs failed to assert sufficient facts connecting each defendant to the First Amendment retaliation claim. *Id.* at 9–10, 11–13.

### i. *Official Capacity Claims against Individual Defendants*

The individual defendants seek dismissal of the First Amendment retaliation claim under § 1983 insofar as it is brought against them in their official capacities. Defs.' Mem. Mot. Dismiss 7. The Supreme Court has held that a § 1983 suit against a municipal officer in her official capacity is, in actuality, a suit against the municipality itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Courts frequently exercise their discretion to dismiss official capacity claims when the same claim has already been brought against the municipality. *See Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 638 n.5 (E.D. Pa. 2014).

Because the First Amendment retaliation claim under § 1983 is also brought against the Borough itself, the Court exercises its discretion and dismisses the official capacity claims against the individual defendants in Count I. Defendants' motion to dismiss such claims is granted, and the official capacity claims asserted in Count I are dismissed with prejudice.

### ii. *Failure to Allege Sufficient Facts*

To plead a First Amendment retaliation claim, "a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the

constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

The Court concludes plaintiffs plead sufficient facts with respect to each of these elements. First, plaintiffs plead facts alleging they engaged in conduct constitutionally protected by the First Amendment: (1) they spoke out at Borough Council meetings regarding Glass's Zoning Code violations and other "issues that concern the public"; (2) they made Right to Know requests; (3) Ms. Downs ran for political office; and (4) Mr. Downs "support[ed] Ms. Downs'[s] candidacy" and campaigned on her behalf. *See* Am. Compl. ¶¶ 52, 56; Pls.' Resp. Defs.' Mot. Dismiss 12.

Second, plaintiffs allege a retaliatory action: defendants issued plaintiffs Zoning Code violation notices or citations in October 2017, December 2017, January 2018, and March 2018, knowing that their claims were false. *See* Am. Compl. ¶¶ 32, 38, 43, 46; Pls.' Resp 12–14. They also assert that defendants were not interested in listening to plaintiffs refute these claims during the same time period. *See, e.g.*, *id.* ¶¶ 38–42.

Finally, plaintiffs sufficiently allege a causal link between plaintiffs' conduct and the retaliatory action. Relevant factors suggesting a causal link include temporal proximity between the protected conduct and the retaliation and evidence of ongoing antagonism subsequent to the protected conduct. *See Abramson v. William Patterson Coll.*, 260 F.3d 265, 288 (3d Cir. 2001). First, plaintiffs allege suggestive temporal proximity. Plaintiffs were issued Zoning Code violation notices from October 2017 to March 2018, close in proximity to Ms. Downs's run for office from September to November 2017. *See* Am. Compl. ¶¶ 24, 32, 35, 38, 43, 26; Pls.' Resp. 14–15. Second, plaintiffs allege ongoing antagonism by defendants. Plaintiffs state that defendants were angry Ms. Downs ran for office, that Bunker made disparaging comments about

Ms. Downs and her candidacy online, and that defendants refused to engage with plaintiffs' regarding the Zoning Code violation allegations. Am. Compl. ¶¶ 26, 28–29, 30, 38–40, 42. These factual allegations, taken together, are sufficient to allege a causal link.

Thus, plaintiffs plead sufficient facts to state a First Amendment retaliation claim. Defendants' motion to dismiss is denied with respect to this claim.

### iii. Factual Basis for Defendants' Liability

Defendants argue that plaintiffs failed to plead a sufficient factual basis for defendants to be held liable on plaintiffs' First Amendment claim. Defs.' Mem. Mot. Dismiss 9–10, 11–13. Specifically, defendants contend that plaintiffs failed to assert any "delineation as to what any individual did or when such action was taken" and that plaintiffs failed to plead sufficient facts to state a *Monell* claim against the Borough. *Id.* at 10, 14. The Court concludes, for the reasons set forth below, that plaintiffs plead sufficient facts to assert a First Amendment retaliation claim against defendants Pancoe, Bunker, Locke, and the Borough, but that Kilkenny is entitled to absolute prosecutorial immunity.

### 1. President Debora Pancoe & Vice President Richard Bunker

Defendants argue that plaintiffs sued Pancoe and Bunker only because they are leaders of the Borough Council and the Jenkintown Democratic Party—not because they had any particular role in the alleged harm to plaintiffs. Defs.' Mem. Mot. Dismiss 13. However, plaintiffs allege several facts regarding Pancoe and Bunker's involvement in deciding to issue Zoning Code violation notices to plaintiffs. For example, plaintiffs assert that Locke acted in reliance on advice from Pancoe and Bunker. Am. Compl. ¶ 17. Furthermore, they assert that Kilkenny and Locke "can only act with the authorization of the President and Vice President of the Jenkintown Borough Council," Pancoe and Bunker, so Pancoe and Bunker must have been involved. *See*

Pls.' Resp. 14.  Plaintiffs also aver that all defendants "conspired with one another against Plaintiffs," at least in part because of their displeasure, as Jenkintown Democratic Party leaders, with Ms. Downs's campaign.  *See* Am. Compl. ¶ 13, 26, 28–29.  Plaintiffs further assert that defendants, including Pancoe and Bunker, "criticized and retaliated against Jenkintown residents that supported Plaintiff."  *Id.* ¶ 29.  Finally, plaintiffs contend that Bunker criticized Ms. Downs online for her campaign and her Right to Know law requests.  *Id.* ¶ 30.  At this stage of the proceedings, the Court determines these allegations are sufficient to withstand defendants' motion to dismiss.  The First Amendment retaliation claim against Pancoe and Bunker in their individual capacities may proceed.

### 2.  <u>Solicitor Sean Kilkenny</u>

Defendants argue that the First Amendment retaliation claim should be dismissed as to Kilkenny, because he is protected by absolute prosecutorial immunity as a prosecutor of Zoning Code offenses.  Defs.' Mem. Mot. Dismiss 12.

Prosecutors have absolute immunity from civil liability for their conduct in their role as prosecutors.  *See Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976).  Prosecutorial immunity extends to any official whose "duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action." *Schrob v. Catterson*, 948 F.2d 1402, 1411 (3d Cir. 1991); *see also Poppell v. City of San Diego*, 149 F.3d 951, 962, 966 (9th Cir. 1998) (concluding absolute immunity applied to city attorney's discretionary decision about how to enforce city's zoning code).  The test for whether prosecutorial immunity applies is one of functionality—the attorney must "establish[] that she was functioning as the state's 'advocate'" at the time that she engaged "in the alleged conduct that gives rise to the constitutional violation."  *See Yarris v. Cty. of Del.*, 465 F.3d 129, 136 (3d

Cir. 2006). An attorney is functioning as an advocate when engaged in activities associated with the prosecutorial process, such as initiating a prosecution. *See Rose v. Bartle*, 871 F.2d 331, 343 (3d Cir. 1989). Prosecutorial immunity applies even if the prosecutor acted willfully, maliciously, or in bad faith. *Imbler*, 424 U.S. at 427–28; *see also Yarris*, 465 F.3d at 136 (concluding prosecutor is "absolutely immune from liability for using false testimony in connection with a prosecution" (internal citations omitted)). "The [Supreme] Court has explicitly stated that even groundless charges are protected [by prosecutorial immunity], in the interest of maintaining vigorous prosecution of crime." *Kulwicki v. Dawson*, 969 F.2d 1454, 1464 (3d Cir. 1992).

Plaintiffs argue that Kilkenny's false accusations were brought against plaintiffs not "in his capacity as a solicitor or even as a lawyer," but rather "in his capacity as a Democratic Leader of Jenkintown with the clout that goes along with being the Sheriff of Montgomery County." Pls.' Resp. 18. However, the well-pleaded factual allegations in plaintiff's Amended Complaint do not support such an argument. Although the Amended Complaint alleges that Kilkenny harbored animosity toward plaintiffs due to his position as a Jenkintown Democratic Party leader, all of Kilkenny's actions relevant to plaintiffs' claims were done within the scope of his employment as Solicitor—Kilkenny brought Zoning Code violation charges against plaintiffs; he did so at least on some occasions as the result of complaints by the Glasses; and he met with plaintiffs to discuss the charges. *See, e.g.*, Am. Compl. ¶¶ 26, 28, 32, 38, 48. Furthermore, even if Kilkenny brought these charges based on ill will, this does not change the fact that he was acting within the scope of his employment as Solicitor while he did so. *See Imbler*, 424 U.S. at 427–28.

Thus, defendants' motion is granted with respect to Kilkenny's absolute prosecutorial immunity from plaintiffs' First Amendment retaliation claim (Count I), and that claim is dismissed as to Kilkenny in his individual capacity with prejudice.

### 3. Borough Manager George Locke

Defendants argue Locke is not liable for First Amendment retaliation because he acted solely on the advice of others—either the Glasses' complaints or the demands of his superiors, Kilkenny, Pancoe, and Bunker. Defs.' Mem. Mot. Dismiss 13. Indeed, plaintiffs' Amended Complaint states that Locke "consult[ed] with and rel[ied] upon" advice from Kilkenny, Pancoe, and Banker. *See* Am. Compl. ¶ 17. However, plaintiffs also plead facts addressing Locke's active participation in the alleged retaliation. Plaintiffs assert that Locke brought the Zoning Code violation claims against them even after he personally investigated the claims and found them meritless. *See id.* ¶¶ 21, 34, 36. Plaintiffs also allege that Locke, like Kilkenny, refused to listen to plaintiffs when they tried to refute the charges against them. *Id.* ¶¶ 37–40. Finally, the Amended Complaint avers that Locke, like the other individual defendants, was personally angry at Ms. Downs. *Id.* ¶ 28. The Court concludes that, at this stage of the proceedings, it would be premature to conclude, as defendants contend, that Locke was merely a "pawn" of the other defendants. *See* Defs.' Mem. Mot. Dismiss 13. Based on all such allegations, the Court determines plaintiffs have adequately pled a First Amendment retaliation claim against Locke. The motion to dismiss is denied with respect to this claim against Locke in his individual capacity.

4.  The Borough's Municipal Liability

Defendants argue plaintiffs failed to plead the Borough's municipal liability under *Monell*, because they failed to allege sufficient facts of any municipality policy or custom. Defs.' Mem. Mot. Dismiss 14.

Under *Monell*, a municipality cannot be held liable on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Sevs.*, 436 U.S. 658, 691 (1978).  Rather, a municipal entity is liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights.  *Id.* at 694.  An "official policy" is created not only by formal rules but also when the "government's authorized decisionmakers" make the "decision to adopt [a] particular course of action."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A "custom" exists when a "widespread practice" is "so permanent and well settled as to constitute a custom or usage with the force of law."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal citations omitted).

Plaintiffs argue that the individual defendants are decisionmakers by virtue of their positions—Borough Council President Pancoe, Vice President Bunker, Solicitor Kilkenny, and Borough Manager Locke.  *See* Pls.' Resp. 22.  The Amended Complaint alleges that these individual defendants "enacted policy and executed policy on behalf of Defendant Borough of Jenkintown" and that numerous decisions by defendants illustrate their policy of selectively and sporadically enforcing the Borough's Zoning Code.  *See* Am. Compl. ¶¶ 31, 33, 60.  Examples of decisions by defendants that evince this policy include charging plaintiffs with the Zoning Code violations, ignoring plaintiffs' efforts to defend against these allegations, and failing to

investigate allegedly valid Zoning Code violation claims against the Glasses. *See, e.g.*, *id.* ¶¶ 22, 32, 36–42, 43–44, 46, 49–51, 53.

These factual allegations are sufficient to state a claim that the Borough had a policy or custom of selectively enforcing its Zoning Code to deprive residents, or at the very least, plaintiffs, of their First Amendment rights. Thus, defendants' motion is denied with respect to the Borough's municipal liability.

### B. State Law Abuse of Process Claim against Kilkenny & Locke (Count II)

Plaintiffs assert that Kilkenny and Locke subjected them to false claims of violating Jenkintown's Zoning Code, thereby forcing them to "expend great sums of money" to defend against these claims. *Id.* ¶ 64. They bring this abuse of process claim against Kilkenny and Locke in their individual and official capacities. *Id.* ¶ 10.

To state a claim for abuse of process, a plaintiff must allege that a defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiffs." *See Rosen v. Am. Bank*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993). The core of this claim is that there was some "perversion of legal process after it has begun in order to achieve a result for which the process was not intended," such as "extortion, blackmail, . . . to coerce or compel the plaintiff to take some collateral action," or to cause some sort of emotional or financial injury. *See Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191–92 (Pa. Super. Ct. 1994); *see also Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 307 (3d Cir. 2003). In other words, "the gist of the [claim] is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." *In re Larsen*, 616 A.2d 529, 592–93 (Pa. 1992).

However, there is no abuse of process if a defendant "even with bad intentions, merely carries out the process to its authorized conclusion." *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992).

Defendants argue that plaintiffs failed to state an abuse of process claim because they assert that the process was initiated improperly—not that the process was perverted after it commenced. *See* Defs.' Mem. Mot. Dismiss 15. Indeed, plaintiffs' Amended Complaint states that "Defendants' conduct in *bringing the aforesaid false claims* against Plaintiffs . . . constitutes an abuse of process." Am. Compl. ¶ 65 (emphasis added); *see also* Pls.' Resp. 23 (stating that "falsely accusing [plaintiffs] of operating an impact business," not any perversion thereafter, is the basis for their claim). Plaintiffs do not argue that there was a perversion of process after its initiation, nor do they avow that defendants demanded anything other than the action's authorized conclusion—charging plaintiffs with a Zoning Code violation.[3] Even if defendants had bad intentions in bringing the Zoning Code violation claims against plaintiffs, this does not constitute abuse of process. *See Cameron*, 817 F. Supp. at 21. Thus, defendants' motion to dismiss is granted with respect to plaintiffs' abuse of process claim, and that claim is dismissed without prejudice.

### C. State Law Civil Conspiracy Claim against Kilkenny & Locke (Count III)

Plaintiffs assert that Kilkenny and Locke "conspired and engaged in a conspiracy to bring" "false claims of violating Jenkintown's zoning laws" against plaintiffs. Am. Compl. ¶ 69. They bring this claim against Kilkenny and Locke in their individual and official capacities. *Id.* ¶ 10.

---

[3] Although the Amended Complaint contains some facts stating that defendants were unwilling to investigate their Zoning Code violation charges, plaintiffs make no such argument in the abuse of process section of their Complaint. *See* Am. Compl. ¶¶ 39–42, 63–67; *see also* Pls.' Resp. 23 (arguing that section reveals the full basis for their claim). Instead, plaintiffs only argue that the initiation of proceedings is the basis for this claim. *See* Am. Compl. ¶ 65; Pls.' Resp. 23. The Court thus interprets the Amended Complaint accordingly.

The Court first addresses the viability of this claim against Kilkenny given his prosecutorial immunity. Because Kilkenny is immune from the underlying § 1983 claim, he cannot be held liable for conspiracy to commit a § 1983 claim. *Cf. Stankowski v. Farley*, 251 F. App'x 743, 746 (3d Cir. 2007) (holding judge could not be held liable under conspiracy claim for the acts of his co-conspirators due to judicial immunity). Thus, Count III is dismissed as to Kilkenny. Moreover, because all claims against Kilkenny have been dismissed, he must be dismissed as a defendant. However, Kilkenny may still be considered a co-conspirator with respect to the claim of civil conspiracy against Locke. *See Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("Immunity does not change the character of the [immune party's] action or that of his co-conspirators.").

The Court next turns to whether plaintiffs plead sufficient facts to state a claim for conspiracy against Locke. "In Pennsylvania, to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (internal citations omitted). A civil conspiracy claim requires "an underlying tort." *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 506 (E.D. Pa. 2008). The pleadings "must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010) (quoting *Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989)) (dismissing conspiracy claim where complaint set forth merely a "conclusory allegation of agreement at some unidentified point[,

which] does not supply facts adequate to show illegality"). Under *Twombly*, a plaintiff claiming conspiracy must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The Court interprets plaintiffs' Amended Complaint to allege a civil conspiracy claim as part of their First Amendment retaliation claim under § 1983. *See* Pls.' Resp. 24. After reviewing the well-pleaded facts in the light most favorable to plaintiff, the Court concludes that plaintiffs plead sufficient facts to state that Kilkenny and Locke conspired against plaintiffs to retaliate against them for exercising their First Amendment rights. Specifically, plaintiffs aver facts evincing each of the elements of that claim: (1) that Kilkenny and Locke worked in combination, with the common purpose to punish plaintiffs for exercising their First Amendment rights, *see, e.g.*, Am. Compl. ¶¶ 28–29, (2) that they engaged in the overt act of bringing false Zoning Code violations against plaintiffs, *see, e.g.*, *id.* ¶¶ 32, 36–38, 46, and (3) that plaintiffs suffered legal damage in expenses exerted to defend against such claims, *see, e.g.*, *id.* ¶¶ 47, 64, 69. These factual allegations also "address the period of the conspiracy"—beginning in or about October 2017 and continuing through March 2018—the "object of the conspiracy"—to punish plaintiffs for exercising their First Amendment rights—and the actions of the conspirators "taken to achieve that purpose"—bringing the Zoning Code violations against plaintiff. *See Great Western Mining*, 615 F.3d at 179. Thus, plaintiffs plead sufficient facts to allege a claim of civil conspiracy to violate their First Amendment rights under § 1983.[4]

In sum, the Court grants defendants' motion to dismiss insofar as it seeks to dismiss the only remaining claim against Kilkenny—the civil conspiracy claim (Count III). The action is

---

[4] The Court notes that although defendants argue that Kilkenny cannot be held liable for conspiracy under the intracorporate conspiracy doctrine, which "bans claims against attorneys based on conspiracies allegedly formed in the attorney-client context," they do not make such an argument with respect to Locke. *See* Defs.' Mem. Mot. Dismiss 11–12.

therefore dismissed with prejudice as to Kilkenny.  The Court denies defendants' motion with respect to the conspiracy claim against Locke in his official and individual capacities.

### D.  Qualified Immunity for the Individual Defendants

Defendants argue that the individual defendants are entitled to qualified immunity for plaintiffs' claims.  Defs.' Mem. Mot. Dismiss 17.

Qualified immunity shields government officials performing discretionary functions from 42 U.S.C. § 1983 liability.  *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 192 (3d Cir. 2005).  However, qualified immunity does not apply if two conditions are met.  *Id.*  First, the plaintiff must allege facts that "make out a violation of a constitutional right."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Second, the "right at issue [must have been] 'clearly established' at the time of defendant's alleged misconduct."  *Id.*  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Reichle v. Howards*, 566 U.S. 658, 664 (2012).  If officials could disagree regarding the legality of their conduct, then qualified immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Viewing all of the facts in the light most favorable to plaintiffs, the Court must reject defendants' claim of qualified immunity at this stage of the proceedings.  Plaintiffs have alleged sufficient facts to make out a violation of their First Amendment rights.  They have also alleged sufficient facts to support a finding that no reasonable official could have believed that probable cause existed to issue the Zoning Code violation notices and citations.  Significantly, plaintiffs assert that defendants repeatedly brought the same Zoning Code violation claims against them, despite inspections of plaintiffs' property revealing no violation and a judicial finding in plaintiffs' favor.  *See* Am. Compl. ¶¶ 34, 36, 45–46.  The motion is thus denied as to this claim.

The denial is without prejudice to defendants' right to assert the claim after completion of discovery, if warranted by the facts and applicable law.

### E. Punitive Damages Claims against the Individual Defendants

Plaintiffs' Amended Complaint seeks "punitive damages as to individual Defendants." Am. Compl. 13. Plaintiffs do not seek punitive damages from the Borough. *See id.*; Pls.' Resp. 18. Defendants take the position that any demand for punitive damages should be stricken. Defs.' Mem. Mot. Dismiss 17.

Defendants first argue that punitive damages are not recoverable against municipal defendants sued in their official capacities in a § 1983 action. *Id.* (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)). The Court agrees. Plaintiffs' remaining claim for punitive damages against an individual defendant in his official capacity—the civil conspiracy claim against Locke—is stricken.

Second, defendants argue that plaintiffs have provided "no factual predicate for a claim for punitive damages against any individual Defendant in their private capacity." *Id.* In Pennsylvania, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Coloplast A/S v. Oakwell Distribution Inc.*, No. 15-1592, 2015 WL 3872295, at *5 (E.D. Pa. June 23, 2015) (citing Restatement (Second) of Torts § 908(2)). At this early stage in the proceedings, the possibility remains that the facts will support a finding that defendants' conduct was sufficiently reckless or outrageous to permit punitive damages. *See id.* (denying motion to strike punitive damages as premature for early stage of proceedings). Thus, the Court denies defendants' motion with respect to plaintiffs' demand for punitive damages as against the individual defendants in their individual capacities. Defendants may reassert this argument after

completion of discovery by motion for summary judgment and/or at trial if warranted by the facts and applicable law.

## V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. First, the Court grants defendants' motion with respect to the First Amendment retaliation claim (Count I) insofar as it is brought against the individual defendants in their official capacities, and those official capacity claims are dismissed with prejudice. Second, the Court grants those parts of defendants' motion seeking to dismiss the First Amendment retaliation and civil conspiracy claims against defendant Kilkenny and dismisses those claims with prejudice. Third, the Court grants that part of defendants' motion seeking to strike with prejudice plaintiffs' claims for punitive damages against the individual defendants in their official capacities. Finally, the Court grants that part of defendants' motion seeking to dismiss plaintiffs' abuse of process claim (Count II) and dismisses that claim without prejudice.

The Court denies the motion in all other respects. The claims that remain are (1) the First Amendment retaliation claim (Count I) against the Borough and Pancoe, Bunker, and Locke, in their individual capacities, (2) the civil conspiracy claim (Count III) against Locke in his official and individual capacities, and (3) the claims for punitive damages against the remaining individual defendants in their individual capacities.

An appropriate Order follows.