## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID and MARGARET DOWNS** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| **BOROUGH OF JENKINTOWN, ET AL.** | : | **NO. 18-CV-4529** |
| | : | |
| **Defendants** | : | |
| | : | |

### PLAINTIFF'S COUNTERSTATEMENT OF FACTS

**A.  Background and Facts Regarding The Impact Business Operated by Plaintiffs' Joseph and Christine Glass**

1.  For the past 28 Years, Plaintiffs have resided at 301 Runnymede Avenue, Jenkintown PA.  (Certification of Margaret Downs, Ex. "2")

2.  At no time between 2016 and the present have Plaintiffs operated an impact business, landscaping business or any other business.  Plaintiffs are not sole proprietors nor do they have any ownership interest in any business.  (Ex. "2" and see Certification of David Downs, Ex. "3") See Certifications of residents, Fred Gusoff, Patricia Harte and Jane Gee, of Jenkintown that live near Plaintiffs stating that, between 2016 to the present, they had never observed Plaintiffs operating any business.  (Certifications of Gusoff, Harte and Gee are attached hereto as Ex. "4") In February of 2018, many residents of Jekintown signed a Petition stating that Plaintiffs did not operate a business out of their home.  (A copy of the Petition is attached hereto as Ex. "5")

3.  In August of 2016, Joseph and Christine Glass, began renting the property adjacent to Plaintiffs' residence at 303 Runnymede Avenue, Jenkintown, PA 19046 and operating a concrete/cement finishing business known as "J.C. Glass Masonry, Concrete and Basement

Waterproofing" out of said property.  The property was owned by Francis V. Reiley. (N.T. David

Downs, p. 31, Ex. "27" and see business card of J.C. Glass, Ex. "6")

4.  Under the Jenkintown Zoning Code, the property at 303 Runnymede Avenue is zoned

as B-1 Residential.   Residents in this area are not permitted to operate an impact business.

5.  In or around August of 2016 and thereafter, Plaintiffs and other residents that live near

303 Runnymede Avenue made multiple complaints that the Glasses were operating an impact

business to Jenkintown Borough Manager, George Locke, and to members of Borough Council,

which included Defendants Deborra Sines Pancoe and Richard Bunker.  Ms. Pancoe was and is

President of Borough Council.  Mr. Bunker was Vice President of Borough Council.  Mr. Locke

testified that he received about 20 complaints from residents about the Glasses operating a

business.  (N.T. George Locke, p. 39, Ex. "7" and see Ex. "2" and "3") Ms. Downs voiced her

complaints about the Glasses operating an impact business on multiple occasions.  These emails

were sent to Defendants, George Locke, Deborra Pancoe and Richard Bunker. (See copies of

September 9 & 13, 2016 emails attached hereto as Ex. "29") Plaintiffs' Council member, Laurie

Durkin, also reported the Glasses operating an impact business to Deborra Pancoe and George

Locke.  (N.T. Durkin, p. 11-12, Ex. "8")

6.  Ms. Durkin observed trucks coming and going from the Glass house, workers coming

and going, equipment stored in the front yard and backyard, scaffolding, forms, cones, barricades

and large wooden planks.  (N.T. Durkin, p. 11-14, Ex. "").

7.  On September 1, 2016, the Glasses were issued a Notice of Violation because they

violated Jenkintown's Zoning Code by operating an impact business out of their property at 303

Runnymede Avenue. The Notice directed them to cease operating an impact business.  (N.T.

George Locke, p. 36, 40, Ex. "7")

8.  Thirty days after the issuance of the Notice, the Borough may issue a Citation and request the violator to pay fines.  (N.T. George Locke, p. 36, 40, 46 Ex. "7")

9.  If the violator does not appeal the Notice within 30 days to the Zoning Hearing Board, then a Citation can be issued.  (N.T. George Locke, p. 47)

10.  Locke testified that Jenkintown looks for voluntary compliance.  "We go above and beyond trying to get voluntary compliance."  (N.T. George Locke, p. 40:6-16)

11.  Locke admits that he gave the Glasses the opportunity to abate the violation. (N.T. George Locke, p. 40:17-19, Ex. "7") He made a list of items that the Glasses needed to do to come into compliance, which was shared with Council Member, Laurie Durkin.  (N.T. George Locke, p. 38)  Locke states he gave the Glasses 30 days to abate the violation and he believes that they came into compliance.  (N.T. George Locke, p. 43") On October 5, 2016, 35 days after the Notice was issued, Mr. Locke sent a letter to the Glasses stating that they were in compliance. (A copy of October 5, 2016 letter is attached hereto as Ex. "9") Ms. Durkin disagreed with Mr. Locke that the Glasses had completed the items on the checklist.  (N.T. Durkin, 23-24, Ex. "8") Mr. Locke took Mr. Glass at his word and did not verify that Glass had complied with the items on the list.  (N.T. Durkin, p. 33:11-25; 34:1-13, Ex. "8")

12. In October of 2016, Plaintiffs complained to Mr. Locke that the Glasses continued to operate an impact business.  On October 12, 2016, Mr. Locke responded in writing stating in part: "I understand your continuing concerns.  However, the items noted in your email are **just as consistent with personal use as it is with commercial**."  (See October 12, 2016 letter attached hereto as Ex. "10" and N.T. Locke, p. 38-40, Ex. "7")

13.   After further complaints were made by Plaintiff, their son Ryan Downs, and Laurie Durkin, a member of Council that lives near 303 Runnymede, a second Notice of Violation was issued to the Glasses on December 12, 2016 referencing violations that occured on November 25, 2016.  (Second Notice of Violation is attached as Ex. "11") Locke mistakenly testified that a Citation was issued in November of 2016  (N.T. George Locke, p. 44, 45:16-19 Ex. "7") On January 13, 2017, the Borough issued a Citation to the Glasses. (Citation is attached as Ex. "12") More than 120 days had passed from when the first Notice had been issued before a Citation was issued to the Glasses.  Per the Citation, a hearing was set before Judge McHugh Casey.  Though the only issue to be determined at the hearing is typically the amount of fine a violator will receive, the Glasses, without objection from the Borough's Solicitor, were permitted to offer evidence on the merits of whether they violated the Zoning Code.  Judge McHugh Casey adjourned the hearing for six months giving the Glasses the opportunity to stay compliant for that time and if they did, the Citation would be dismissed.  The Glasses failed to stay compliant and were brought back within a two months and fined $500.00.  (Certification of M. Downs, Ex. "2")

**B.  Criminal Conduct of Joseph Glass**

14.   Plaintiffs were unable to communicate with the Glasses because of Mr. Glass' criminal actions toward Plaintiffs.  Eventually, Plaintiffs were required to file a private criminal complaint with local Magisterial District Court.  The honorable Elizabeth McHugh Casey presided in the local District Court.  (Ex. "2" and "3")

15.   During the Fall of 2016 and 2017, Plaintiffs made multiple calls to the Jenkintown Police to report the criminal acts of Joseph Glass.  The Police responded to calls but refused to take the steps necessary to arrest and charge Mr. Glass with any crimes.  Plaintiffs went before

Borough Council and expressed their concerns that the Police were not doing enough to stop the criminal actions of Joseph Glass.

16.   On multiple occasions, Joseph Glass made harassing, vulgar, vile, intimidating and threatening comments to Plaintiffs.  One of the comments Joe Glass made while Plaintiffs were outside of their home was:  "hey, honey, let's go over there and bang the sh__ out of that lady [referring to Ms. Downs] that lives at that house, bang her up the a__ and f___ the hell out of her."  (N.T. Dave Downs, p. 65-66, Ex. "27") Plaintiffs reported this conduct to the police.  (N.T. Dave Downs, p. 66, Ex. "27") Plaintiffs reported multiple incidents to the police and eventually filed a criminal complaint alleging 64 counts of criminal conduct against Joe Glass.  (N.T. Dave Downs, p. 66, Ex. "27" and see Ex. "2")

17.   After Plaintiffs filed the criminal complaint with the Magistrate, the Montgomery County Prosecutor's Office took over the case and prosecuted Mr. Glass for criminal harassment and terroristic threats in the Montgomery County Court of Common Pleas.  On October 6, 2017, Mr. Glass pleaded guilty and was placed on probation.  He violated his probation and spent approximately four months in the County Prison.  On February 9, 2018, the Honorable Gary S. Silow entered a "No Contact" order which stated that Mr. Glass "shall refrain from any direct/indirect contact" with Peggy Downs, David Downs and Ryan Downs.  (See Ex. "2 and "3". A copy of said guilty plea and order is attached hereto as Ex. "13")

**C. Allegations That Plaintiffs Operated An Impact Business In 2016**

18.   On October 25, 2016, Joseph Glass and Christine Glass, h/w, made false allegations against Plaintiffs accusing them of operating a landscaping business.  Defendant Locke investigated these complaints and eventually determined that the complaints had no merit. (N.T.

Locke, p. 56-57, 59-61, Ex. "7" and see October 11, 2017 email stating that the Downses were

not operating an impact business in response to the October 25, 2016 complaint, Ex. "14")

### D.  Plaintiffs' Protected Activities

19.  Plaintiffs incorporate the statements of fact contained in paragraphs 1 through 18

herein with regard to the allegations pertaining to their protected activities of complaining to

Borough Council about the lack of enforcement of the zoning code.

20.  Plaintiffs made numerous Right To Know requests which includes the following:

several requests to obtain a copies documents regarding the Notice of Zoning violations and

Citation issued to the Glasses: requests for the business license regarding whether the Glasses

complied with the Borough business licensing; requests for permits regarding the work Glasses

performed in Jenkintown; copies of rental license for 303 Runnymede Avenue; property

maintenance spread sheet; multiple requests for copies of Borough Council Meeting Minutes;

copies of Solicitor legal bills; and, copies of a tape-recordings of the Borough Council Meetings

from September through November of 2017.  (A copy of the Right To Know requests are

attached hereto as Ex. "15")

21.  From 2016 until 2018, Plaintiffs appeared before the Borough Council on multiple

occasions and voiced complaints about the manner in which George Locke and the Borough

enforced the zoning code against the Glasses.  (Ex. "2" and "3")

22.  In September of 2017, due to her dissatisfaction with the manner in which the

Jenkintown Borough Council governed, Ms. Downs entered the Jenkintown Mayor's race as a

Democrat and write-in candidate.  (Ex. "2" and "2")

23.  Up until that time, the election was uncontested.  The only candidate was the

6

Democratic endorsed candidate, Allyson Dobbs.  In Jenkintown, all 12 Borough Council member were Democrats.  For at least the past 10 years, the Jenkintown Council and Mayor positions had been occupied by Democrats.  (Ex. "2")

24.  Before announcing her candidacy, Ms. Downs met with long time Jenkintown Democratic Party Leader, Shirley Curry.  Ms. Curry discouraged Ms. Downs from running and informed her that she would be sorry if she ran as a write-in candidate.  (Ex. "2")

24.  Mr. Downs supported Ms. Downs' candidacy by campaigning on her behalf by knocking on doors, distributing signs and campaign flyers and working the polls on election day. (Ex. "3")

   **E.  Defendants' Retaliatory Actions**

25.  A web/blog site known as the Jenkintown Home Page was available to Jenkintown residents to voice their opinions about public affairs and happenings in Jenkintown.  On multiple occasions, Defendant Richard Bunker, Vice President of Borough Council, voiced his resentment and anger at Ms. Downs with regard to her run for office, her voicing dissent at Borough Council meetings and for making Right To Know requests.  A sample of his posts includes the following: 1) that Ms. Downs would be a "disaster as a mayor"; 2) "She did badger council for months **trying to get us to force zoning officers to unfairly and unevenly target a neighbor."**: 3) "What Downs wouldn't shut up about, and she still shows up at council meetings whining about, is that the police and zoning officials wouldn't help her persecute her neighbor as much as she wanted."; 4) "And she wanted council to lean on police and zoning to unevenly enforce law and code, to mess with her neighbor.  It would be unethical for council to do so.  Perhaps even illegal."; 5) "Peggy Downs has cost the taxpayers tens of thousands of dollars on **pointless right-**

**to-know** requests in her attempt to twist zoning law to run her neighbor out of town. . . And the only responsibility of the Mayor is to supervise the police, and her neighbor dispute involves the police at least weekly.  Having her in charge of the police seems like a recipe for disaster to me." Bunker admitted to writing the aforementioned posts. (N.T. Bunker, p. 91-95, Ex. "16" and see Bunker's Posts attached hereto as Ex. "17")

26.  Though Bunker admits that he accused Ms. Downs of costing the Jenkintown taxpayers tens of thousands of dollars, he has no evidence what the costs or responding to Right To Know requests were.  (N.T. Bunker, p. 96:18-25; 97:1-11; 100-101, Ex. "16")

27.  Bunker refers to Ms. Downs' actions in making Right To Know requests as "obnoxious."  (N.T. Bunker, p. 98:13-25; 99:1, Ex. "16")

28.  Christine Glass continued to accuse Plaintiffs of operating an impact business and took photos of Mr. Downs transporting a lawnmower and weed whacker in his pick-up truck.  In the Summer of 2017, Mr. Downs' cousin became seriously ill and was incapacitated for several months. To help his cousin, who lived in Willow Grove, Mr. Downs did load his lawn mower onto his truck so that he could go an cut his cousin's lawn.  (N.T. D. Downs, p. 52-53, Ex. "27")

29.  On October 11, 2017, Mr. Locke prepared a Memorandum to Borough Council summarizing his findings of whether Plaintiffs operated an impact business.  Mr. Locke determined that there was no business operations being run in 2016.  (October 11, 2017 Memorandum, Ex. "14")

30. On September 25, 2017, after Ms. Downs had announced her candidacy, Christine Glass again filed a false claim that Plaintiffs were operating an impact business.  The key evidence was the photos of Mr. Downs pickup truck with his lawnmower contained therein.  (Id.)

8

In the Memorandum Mr. Locke states that Mr. Downs denied that he was operating any business. Mr. Locke wrote in part:

> After thorough review of all the documents provided, the Borough has concerns that these complaints, photographs, and videos depcit the running of a landscape business.  A compliance letter has been drafted as well **as a request for a meeting with David and Margaret Downs.**  A package containing this summary, compliance letter, and all supporting evidence has been submitted to the Borough Solicitor for legal review and guidance.  (October 11, 2017 Memorandum, Ex. "15")

31.  Between October 11, 2017 and the election, November 7, 2017, no meeting took place between Plaintiffs and Locke about whether they were operating an impact business.  (Ex. "2")

32.  On November 21, 2017, Mr. Locke wrote a letter to the Downses which states in part: "After thorough review of all the documents provided, the Borough has concerns that these complaints, photographs and videos may be credible. . . . As discussed, the Borough is now looking to **discuss** these complaints after the Thanksgiving holiday with the Borough Solicitor(s) and I."  ( A copy of the November 21, 2017 letter is attached hereto as Ex. "18") A meeting was scheduled for December 7, 2017.

33.  On December 7, 2017, 30 days after Ms. Downs lost the election, Plaintiffs met with Locke and Kilkenny at Borough Hall.  At the meeting no **real discussion** took place as to whether Plaintiffs were operating an impact business. (Ex. "2" and "3".)  Neither Kilkenny nor Locke were willing to listen to Plaintiffs state that they were not operating a business.  The meeting didn't last long.  Kilkenny and Locke hand delivered the Notice of Violation to Plaintiffs alleging that Plaintiffs were operating an impact business.  (Ex. "2" and "3" and see copy of Notice of Violation issued to the Downses attached hereto as Ex. "19")

34.  Mr. Downs testified regarding the favorable treatment the Glasses received as folows:

> Q.  You believe that the borough should not have permitted those allegations to go forward, they should have stopped it; is that what you mean?
>
> A.  Upon receipt of those photos and videos [from the Glasses], they should have sat with us, just like they did with the Glasses and said here are the accusations, are you running a business.  They never asked us.  They never came down.  They never conducted an investigation.  They never conducted an on-site inspection at our house and say they ever saw anything.  With the Glasses, they went down, they spoke with them, they gave them a list of what they had to do to abate the situation.  We begged for a similar opportunity just to defend ourselves. (N.T. D. Downs, p. 171-72, Ex. "27")

35.  On December 18, 2017, Plaintiffs' attorney, James N. Gross, wrote to Mr. Locke and the Borough informing them that the Downses were in compliance with the Zoning Code as was directed in the Notice of Violation.  Mr. Gross invited them to discuss the matter with him if the Borough disagreed.  (A copy of Mr. Gross' December 18, 2017 letter is attached hereto as Ex. "20")

36.  Defendants disregarded Mr. Gross' letter responding that they had evidence that Plaintiff's were operating an impact business. (See letter from Anthony Ciuca, Esquire,  Ex. "21")

37.  In December of 2017, Pancoe, along with Council member Anne MacHaffie, retaliated against Belinda Hull for supporting Plaintiff's candidacy.  Ms. Hull was a member of the Jenkintown Zoning Hearing Board and supported Ms. Downs' write-in campaign for Mayor.  Ms. Hull's term on the Zoning Board was to be renewed in January of 2018.  In December of 2017, Pancoe informed Ms. Hull that, because she supported me for Mayor during the 2017 election, that she would not be reappointed to the Zoning Hearing Board. and harbored

resentment and anger toward Plaintiffs.  (See Ex. "2" and N.T. Pancoe, p. 105-107, Ex. "8")

38.  Interestingly, Mr. Locke admits that he did **not** observe Plaintiffs operating any business, let alone an impact business, during November and December of 2017.  (N.T. Locke, p. 73:11-22, Ex. "7")  It was Jenkintown's practice not to issue a Notice of Violation if the alleged violations has stopped.  Kilkenny could not recall a single incident where a resident who had stopped violating the zoning code was issued a Notice of Violation.  (N.T. Kilkenny, p. 53:21-25; 54:1-24, Ex. "23")

39.  Mr. Kilkenny also admits that he is a jogger and has often jogged pass the Downs' home.  He admits that during the years 2016 and 2017 he never saw the Downses operating an impact business out of their house.  (N.T. Kilkenny, p. 22:8-16, Ex. "23")

40.  On January 9, 2018, another attorney on behalf of Plaintiffs, wrote a letter to Kilkenny  (sent vial email) requesting to meet and discuss the fact that Plaintiffs were not operating an impact business.  (See January 9, 2018 letter of Peter Friedman, Esquire, attached hereto as Ex. "24")  A courtesy copy of the letter was sent to Mr. Locke.  (Id.)

41.  In the letter, Mr. Friedman informed Mr. Kilkenny that Plaintiffs were not operating a business and not violating Jenkintown's zoning code.  On January 9, 2018 in an email, Kilkenny rejected the offer to meet - - stating to Mr. Locke: "George, I am incline to say no, we already had a meeting, thoughts?" The only meeting Kilkenny could have been referring to was the December 7th meeting where he directed Locke to hand the Notice to the Downses.  (A copy of Kilkenny's January 9, 2018 email is attached hereto as Ex. "25".)

42. On multiple occasions between November of 2017 and January 2018, Plaintiffs requested to Defendants Locke, Pancoe, Bunker and to Borough Council to meet with them and

to come and inspect their house so that they could demonstrate that complied with the zoning

code and were not operating an impact business.  No one accepted Plaintiffs many requests.  (Ex.

"2" and "3")

43.   Neither Mr. Locke nor any other Defendant sought to obtain voluntary compliance

from Plaintiffs or allow them to abate the alleged violations (even though they informed

Defendants they were in compliance).  Defendants policy of going "above and beyond trying to

get voluntary compliance" was not extended to Plaintiffs.   (N.T. George Locke, p. 40:6-16 Ex.

"7")

44.   On January 11, 2018, 35 days after the Notice had been issued, Locke issued a

Citation to Plaintiffs.  ( A copy of the Citation is attached as Exhibit "26".)

45.   On March 26, 2018, a hearing on the Citation was held before Judge McHugh Casey.

Judge McHugh Casey dismissed the Notice of Violation as facially invalid.  At the conclusion of

the hearing, Plaintiffs zoning attorney, Michael Yanoff, Esquire, sought to resolve the matter

with the Borough.  The Solicitors got back to Mr. Yanoff and informed him that there would be

no resolution.  (Ex. "2")

46.   Later that same day, Defendants caused a new Notice of Violation to be issued to

Plaintiffs.  (Ex. "2")

47.   Plaintiffs appealed the Notice to the Jenkintown Zoning Hearing Board.  After three

hearings between late May and July of 2018, the Board swiftly voted 5 to 0 and exonerated

Plaintiffs of any violations.  (Ex. "2")

48.   George Locke would not issue Notices of Violation without the approval of Pancoe

and Kilkenny.  Pancoe acted as George's direct supervisor.  He sought approval, validation and

affirmation from Pancoe with regard to any significant decision.   (N.T. L. Durkin, p. 18-19, Ex. "8") In her role as a member of Borough Council, Ms. Durkin frequently interacted with Mr. Locke and Ms. Pancoe and observed Ms. Pancoe interact with Mr. Locke.  (N.T. L. Durkin, p. 12, 16-20, Ex. "8")

49. When it came to enforcing the Borough Code, Locke was reluctant to enforce it. Locke believed that the Zoning Code was a "gray area" and difficult to enforce.  (N.T. Durkin, p. 20:21-25; 21:11, Ex. "8")  Two contracting businesses in town were not cited for operating impact businesses from their homes.  (N.T. Durkin, p. 22:8-18)

50.  Like Locke, Deborra Pancoe was also reluctant to enforce the zoning code against the Glasses.  (N.T. Durkin, p. 25:3-8, Ex. "8")   Mr. Locke was frustrated that Plaintiffs voiced their dissatisfaction with the manner in which he enforced the zoning code.  Pancoe referred to the Downs and their neighbors that complained about the zoning enforcement as the "mad neighbor crew."  (N.T. Durkin, p. 26:4-11)

51.  Ms. Durkin and the Downses hosted neighborhood meetings to address the Borough's reluctance to enforce the Borough's codes.  Pancoe chastised Ms. Durkin for hosting a meeting at her house and showing sympathy to her neighbors and their positions.  (N.T. Durkin, p. 26:12-25; 27-29, Ex. "8")

52.  In public meetings, Kilkenny supported Locke's vague interpretation of the zoning code and supported Locke's handling of the Glasses zoning violations.  (N.T. Durkin, p. 31:11-24, Ex. "8")

53.  Locke, Kilkenny and Pancoe were not happy with Durkin because she supported the Downses and her neighbors.  (N.T. Durkin, p. 34:14-24, Ex. "8")

13

54.  Shortly after Ms. Durkin had a meeting at her home with neighbors regarding the zoning issues, Pancoe removed Ms. Durkin from her position as chair of the Business, Zoning and Real Estate Committee. In late November of 2016, Ms. Durkin resigned from her position on Borough Council.  (N.T. Durkin, p. 34:25; 35:1-12, Ex. "8")


    _/s/ William J. Fox_____
    WILLIAM J. FOX, ESQUIRE
    Attorney for Plaintiff
    1626 Pine Street
    Philadelphia, PA 19103

Date:_ December 20, 2019_