## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID and MARGARET DOWNS** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| **BOROUGH OF JENKINTOWN, ET AL.** | : | **NO. 18-CV-4529** |
| | : | |
| **Defendants** | : | |
| | : | |

### PLAINTIFFS' PRAECIPE TO SUPPLEMENT PLAINTIFFS' COUNTERSTATEMENT OF FACTS AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In Defendants' Response to Plaintiffs' Counterstatement of Facts, Defendants Objected to Plaintiffs' attaching "Certifications" instead of "Affidavits" in support of their Counterstatement of Facts and Response to Defendants' Motion For Summary Judgment, and alleging that Plaintiffs violated Rule 56. Exhibits "2" and "3" to Plaintiffs' Counterstatement and Response To Defendants' Motion for Summary Judgment are the Certifications, respectively, of Margaret Downs and David Downs. (See Exhibits "2" and "3" to Plaintiffs' Counterstatement and Response to Defendants' MSJ, Docket No. 25) Even though Plaintiffs disagree with Defendants' aforesaid objection, Plaintiffs submit the attached Affidavits (Exhibits "1" and "2") of Margaret Downs and David Downs and respectfully requests that these be appended as Exhibits to supplement Plaintiffs' Counterstatement of Facts and Response to Defendants' Motion For Summary Judgment. (Docket Nos. 24 and 25)

Respectfully submitted,

WILLIAM J. FOX, ESQUIRE
Attorney for Plaintiffs

1626 Pine Street
Philadelphia, PA 19103
DATED:   January 6, 2020       (215) 546-2477

## CERTIFICATION OF SERVICE

I, William J. Fox, Esquire, attorney for Plaintiff, hereby certify that a true and correct copy of the foregoing Praecipe to Supplement Plaintiffs' Counterstatement Of Facts was served upon counsel for Defendants electronically at the address below:

Suzanne McDonough, Esquire
Holsten & Associates
One Olive Street
Media, PA 19063

WILLIAM J. FOX, ESQUIRE

Date: January 6, 2020

# Exhibit "1"

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID and MARGARET DOWNS** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | **CIVIL ACTION** |
| : | |
| **BOROUGH OF JENKINTOWN, ET AL.** : | **NO. 18-CV-4529** |
| : | |
| **Defendants** : | |
| : | |

## AFFIDAVIT OF MARGARET DOWNS

I, Margaret Downs, Plaintiff in this action, of full age, hereby depose and say:

1. On December 20, 2019, I executed the Certification in support of Plaintiffs'

Counterstatement of Facts and Response In Opposition to Defendants' Motion For Summary

Judgment.  (A copy of my Certification is appended hereto as Ex. "A")

2. I swear and affirm that the facts set forth in the Certification appended hereto as

Exhibit "A" are true and correct to the best of my knowledge, information and belief.


_____
Margaret Downs

Subscribed, sworn to, and acknowledged before me by Margaret Downs,  this 6th day
of January, A.D. 2020.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ROSEMARY WATSON, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 22, 2020

Exhibit "A"

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID and MARGARET DOWNS** : | |
| : | |
| **Plaintiff** : | |
| : | |
| **v.** : | **CIVIL ACTION** |
| : | |
| **BOROUGH OF JENKINTOWN, ET AL. :** | **NO. 18-CV-4529** |
| : | |
| **Defendants** : | |
| : | |

### CERTIFICATION OF MARGARET DOWNS

I, Margaret Downs, Plaintiff in this action, hereby certify as follows:

1. I have been a resident of Jenkintown for 36 years and reside at 301 Runnymede Avenue.

2. I August of 2016, Joseph Glass and Christine Glass rented the house next door to my house at 303 Runnymede Avenue. The Glasses rented the house from the owner, Frank Reiley.

3. When Mr. Glass began moving in, he violated Jenkintown's zoning code by using the yard as a commercial shop - - storing concrete equipment, forms, scaffolding, barricades, planks, wheel barrows, cones, signs and other tools.

4. My neighbors and I notified George Locke and all members of Council, including Deborra Pancoe and Richard Bunker, that the Glasses, by operating their concrete construction business out of their residence, were violating Jenkintown's zoning laws that prohibit the operation of an impact business.

5. On September 1, 2016, the Glasses were given a Notice of Violation for operating an impact business.

6. Mr. Locke, charged with enforcing the zoning code, was reluctant to enforce the code against the Glasses and informed me that the zoning code had "gray" areas and was difficult to

enforce.

7. Mr. Locke provided the Glasses with multiple opportunities to come into compliance. However, the Glasses continued to operate the impact business out of their yard.

8. After multiple communications with the Borough Council and Mr. Locke, the Glasses were issued a second Notice of Violation on December 12, 2016.  Consequently, a Citation was issued to the Glasses on January 13, 2017, more than 120 days after the initial Notice had been issued.

9. The Glasses were treated with favoritism and given every opportunity to abate.  Even when they failed to abate, they were given additional opportunities to come into compliance.

10. My husband and I have never owned and/or operated an impact business, a landscaping business and/or any other type of business out of our home.

11. From September of 2016 into 2017, I exercised my right to dissent in writing and personally at several Borough Council meetings about the failure of Mr. Locke and the Borough to enforce the zoning code and other Borough codes.

12. In 2016 and 2017, I made multiple Right to Know requests requests to the Borough.

13. In September of 2017, due to my dissatisfaction with how Borough Council had been governing Jenkintown, I entered the Jenkintown Mayor's race as a write-in candidate against the Democratic Party endorsed candidate, Allyson Dobbs.

14. In previous years, the Mayor's election was typically uncontested and the only candidate was usually the Democratic Party endorsed candidate.  In Jenkintown, all 12 Borough Council members were Democrats.  For at least the past 10 years, the Jenkintown Council and Mayor positions had been occupied by Democrats.

15. Before I announced my candidacy, I met with long time Jenkintown Democratic Party Leader, Shirley Curry.  Ms. Curry discouraged me from running for Mayor and informed

me that I would be sorry if I ran as a write-in candidate.

16.   I believe Defendants Pancoe, Bunker and Locke were angry at me for running for office as a write-in candidate against their endorsed candidate, Allyson Dobbs.

17.   Defendants frowned upon my run for office and criticized and retaliated against Jenkintown residents that supported me.   One such person was Belinda Hull.   Ms. Hull was a member of the Jenkintown Zoning Hearing Board and supported me my write-in campaign for Mayor.   Ms. Hull's term on the Zoning Hearing Board was to be renewed in January of 2018.   In December of 2017, Pancoe informed Ms. Hull that, because she supported me for Mayor during the 2017 election, she would not be reappointed to the Zoning Hearing Board.

18.   On multiple occasions during the election season, Defendant Bunker made disparaging comments on the "Jenkintown Community Page" blog site about me exercising my right to run for the office of Mayor.   He also disparaged me for making the Right to Know requests and falsely claimed that Jenkintown spent tens of thousands of dollars having to respond to these requests.

19.   In September and October of 2017, I was issued property code violations alleging we had storm water runoff directed at the Glasses property and had dead tree branches hanging over the Glasses property.   I deny that there was alleged storm water runoff from our property onto the property being rented by the Glasses and that dead branches were hanging over the Glasses yard. Nonetheless, my husband and I addressed these issues to the satisfaction of the Mr. Lynch, the employee who issued property maintenance code violations in the Borough.

20.   I believe Defendants directed Mr. Lynch to issue the written property code violations in retaliation against me because I had: 1) expressed my dissatisfaction to Borough Council and Defendants on multiple occasions, in writing and at Borough Council Meetings, with how the zoning and property codes were not being enforced; 2) I made Right to Know requests; and 3) I

entered the race for Mayor as a write-in candidate against the Democratic Party's endorsed (and unopposed) candidate, Allyson Dobbs.

21. In October of 2016 and again in October of 2017, during the campaign for Mayor, I was notified by Mr. Locke that the Glasses had alleged that my husband and I were operating an impact business (landscaping business) out of our home.

22. Mr. Locke inspected our home from the street in 2016. We informed him that we were not operating any impact business and that the trailer that was stored in our back yard was only used for personal reasons. Mr. Locke determined that we did not operate an impact business. In 2016, the Borough did not issue us a Notice of Violation

23. When this issue arose again in 2017, we again informed Mr. Locke that we did not operate an impact business. In October of 2017, Mr. Locke reached out to us and requested a meeting to discuss the allegations that we operated an impact business.

24. We agreed to meet with Mr. Locke and we also invited him and Borough Council to come and inspect our house. We did not operate an impact business and we had nothing to hide.

25. No meeting took place before the November 7, 2017 election.

26. I loss the election but was able to obtain 35% of the vote.

27. On November 21, 2017, Mr. Locke sent a letter to my husband and I requesting to meet at Borough Hall to discuss the allegations that we operated an impact business. We agreed to meet on December 7, 2017.

28. We met Mr. Locke and Mr. Kilkenny at Borough Hall intending to **discuss** whether an impact business was being operated out of our house and to once again, inform the Borough that we did not operate any kind of business, let alone an impact business, from our home.

29. At the meeting, no discussion took place and we were not provided any opportunity to address any allegations that we were operating a business. Neither Locke nor Kilkenny would

engage in a discussion about the allegations. They were not interested in having a discussion. Instead, they handed us a Notice of Violation falsely alleging that we operated an impact business. We tried to inform them that we did not operate an impact business, but they did not want to listen or discuss the matter.

30. In the Summer of 2017 and early Fall of 2017, on occasion, my husband loaded his lawn mower on to his pick up truck so that he could cut his cousin's lawn. His cousin lived in Willow Grove and was ill and unable to maintain his home. My husband was helping his cousin. He was not loading up the lawn mower for commercial/business use.

31. On December 18, 2017, our attorney sent a letter to Mr. Locke and the Borough explaining that we were in compliance with the zoning code as directed by the Notice of Violation that the Borough had served us. The Borough's Solicitor disagreed and was unwilling to discuss whether we were in compliance.

32. We made numerous requests to Mr. Locke and Borough Council, including Pancoe and Bunker, to come and visit our house and inspect so that we could demonstrate that we were not operating an impact business. All of our requests were ignored.

33. On January 9, 2018, our attorney Peter Friedman, Esquire, wrote to Kilkenny (with a copy to Mr. Locke) requesting a meeting to address the allegations. Mr. Friedman informed them that we did not operate a business, did not engage in business activity, did not receive any income and did not employ anyone. Defendants still refused to meet with us.

34. On January 11, 2018, Defendants issued us a Citation.

35. At no time did Locke, Pancoe, Bunker or any other Council member agree to meet with us to discuss the allegations that we operated an impact business.

36. We were not afforded any of the courtesies that were provided to the Glasses. At no time did Mr. Locke or any other Defendant offer to meet and discuss "voluntary compliance."

Mr. Locke's policy of "going above and beyond to get voluntary compliance" was never afforded to us.

37.  On March 26, 2018, we attended a hearing regarding the Citation with our zoning attorney, Michael Yanoff, Esquire.  At the hearing, Defendants opposed our effort to defend against the Citation on the merits. Defendants insisted that the only issue was the amount of fine to be assessed against us.

38. I had previously attended the Citation Hearing involving the Glasses.  The Glasses were not treated so harshly and were permitted to offer a defense on the issue as to whether they operated an impact business.  As a result they were given leniency by the Court.  The Court provided them with a probationary period to stay in compliance.  If they complied, the Citation would be dismissed.  However, the Glasses did not comply and were eventually fined.

39.  At our Citation Hearing, the Court determined that the underlying Notice of Violation was invalid and it was dismissed.  After the hearing, Mr. Yanoff engaged in discussions of resolving the issues with the attorney from the Solicitor's law firm, Anthony Ciuca.  However. Mr. Yanoff later learned from the Solicitor's office that the Defendants were not interested in resolution.

40.  On March 26, 2018, the same day of the Citation hearing, Defendants issued a new Notice of Violation - - again falsely alleging that we operated an impact business.

41.  We filed an appeal of the Notice to the Zoning Hearing Board and were represented by Mr. Yanoff.  Three Zoning Appeal Board hearings took place between late May of 2018 and July of 2018.  After the third hearing, the Board retired to deliberate for a very short period of time.  The Board voted 5 to 0 in our favor.

42.  On multiple occasions in 2016 and 2017, Mr. Glass engaged in criminal acts against my Husband, son and I.  We made multiple complaints to the Jenkintown Police Department

about Mr. Glasses criminal actions. While the Jenkintown P.D. took our complaints, they did not take action to charge Mr. Glass with any crimes.

43. In 2017, my husband and I filed private criminal charges with the local Magisterial District Court. Eventually, the Montgomery County Prosecutor's Office took over the case in which 64 criminal counts were filed against Mr. Glass.

44. On October 6, 2017 in a plea negotiation, Mr. Glass plead guilty to two counts and was sentenced to 30 days jail time, probation and a fine. He subsequently violated his probation, by engaging again in criminal acts toward my husband and I, and was imprisoned for a period of approximately four months.

45. On February 9, 2018, the Montgomery Court of Common Pleas entered a "No Contact" Order against Mr. Glass prohibiting him from having any contact with my husband, son (Ryan) and I.

I hereby certify that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Margaret Downs

Date: _December 20, 2019_

Exhibit "2"

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID and MARGARET DOWNS**    : | |
| : | |
| **Plaintiff**    : | |
| : | |
| v.    : | **CIVIL ACTION** |
| : | |
| **BOROUGH OF JENKINTOWN, ET AL.** : | **NO. 18-CV-4529** |
| : | |
| **Defendants**    : | |
| : | |

## AFFIDAVIT OF DAVID DOWNS

I, David Downs, Plaintiff in this action, of full age, hereby depose and say that:

1. On December 20, 2019, I executed the Certification in support of Plaintiffs'

Counterstatement of Facts and Response In Opposition to Defendants' Motion For Summary

Judgment.  (A copy of my Certification is appended hereto as Ex. "A")

2. I swear and affirm that the facts set forth in the Certification appended hereto as

Exhibit "A" are true and correct to the best of my knowledge, information and belief.

_____
David Downs

Subscribed, sworn to, and acknowledged before me by David Downs,  this 6th  day of
January , A.D. 2020.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ROSEMARY WATSON, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 22, 2020

Exhibit "A"

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID and MARGARET DOWNS :  
    :
    **Plaintiff**   :
    :
v.     :     **CIVIL ACTION**
    :
BOROUGH OF JENKINTOWN, ET AL. :     **NO. 18-CV-4529**
    :
    **Defendants**   :
    :

## <u>CERTIFICATION OF DAVID DOWNS</u>

I, David Downs, Plaintiff in this action, hereby certify as follows:

1. I have been a resident of Jenkintown for 57 years and reside at 301 Runnymede Avenue.

2. I August of 2016, Joseph Glass and Christine Glass rented the house next door to my house at 303 Runnymede Avenue. The Glasses rented the house from the owner, Frank Reiley.

3. When Mr. Glass began moving in, he violated Jenkintown's zoning code by using the yard as a commercial shop - - storing concrete equipment, forms, scaffolding, barricades, planks, wheel barrows, cones, signs and other tools.

4. My neighbors and I notified George Locke and all members of Council, including Deborra Pancoe and Richard Bunker, that the Glasses, by operating their concrete construction business out of their residence, were violating Jenkintown's zoning laws that prohibit the operation of an impact business.

5. On September 1, 2016, the Glasses were given a Notice of Violation for operating an impact business.

6. Mr. Locke, charged with enforcing the zoning code, was reluctant to enforce the code against the Glasses.

7. Mr. Locke provided the Glasses with multiple opportunities to come into compliance. However, the Glasses continued to operate the impact business out of their yard.

8. After multiple communications with the Borough Council and Mr. Locke, the Glasses were issued a second Notice of Violation on December 12, 2016.   Consequently, a Citation was issued to the Glasses on January 13, 2017, more than 120 days after the initial Notice had been issued.

9. The Glasses were treated with favoritism and given every opportunity to abate.  Even when they failed to abate, they were given additional opportunities to come into compliance.

10. My wife and I have never owned and/or operated an impact business, a landscaping business and/or any other type of business out of our home.

11. From September of 2016 into 2017, I exercised my right to dissent by attending several Borough Council meetings about the failure of Mr. Locke and the Borough to enforce the zoning code and other Borough codes.

12. In 2016 and 2017, my wife and I made multiple Right to Know requests to the Borough.

13. In September of 2017, due to my dissatisfaction with how Borough Council had been governing Jenkintown, my wife entered the Jenkintown Mayor's race as a write-in candidate against the Democratic Party endorsed candidate, Allyson Dobbs.

14. I supported my wife's candidacy by knocking on doors, distributing campaign signs and flyers and by working the polls on election day.

15. I believe Defendants Pancoe, Bunker and Locke were angry at my wife for running for office as a write-in candidate against their endorsed candidate, Allyson Dobbs.

16. Defendants frowned upon my wife's run for office and criticized and retaliated against Jenkintown residents that supported her.  One such person was Belinda Hull.  Ms. Hull

was a member of the Jenkintown Zoning Hearing Board and supported my wife's campaign for

Mayor. Ms. Hull's term on the Zoning Hearing Board was to be renewed in January of 2018. In

December of 2017, Pancoe informed Ms. Hull that, because she supported my wife for Mayor

during the 2017 election, she would not be reappointed to the Zoning Hearing Board.

17. In September and October of 2017, I was issued property code violations alleging we

had storm water runoff directed at the Glasses property and had dead tree branches hanging over

the Glasses property. I deny that there was alleged storm water runoff from our property onto the

property being rented by the Glasses and that dead branches were hanging over the Glasses yard.

Nonetheless, my wife and I addressed these issues to the satisfaction of the Mr. Lynch, the

employee who issued property maintenance code violations in the Borough.

18. I believe Defendants directed Mr. Lynch to issue the written property code violations

in retaliation against my wife and I because: 1) we had expressed our dissatisfaction to Borough

Council and Defendants on multiple occasions, in writing and at Borough Council Meetings,

with how the zoning and property codes were not being enforced; 2) we made Right to Know

requests; and 3) my wife entered the race for Mayor as a write-in candidate against the

Democratic Party's endorsed (and unopposed) candidate, Allyson Dobbs.

19. In October of 2016 and again in October of 2017, during my wife's campaign for

Mayor, I was notified by Mr. Locke that the Glasses had alleged that my wife and I were

operating an impact business (landscaping business) out of our home.

20. Mr. Locke inspected our home from the street in 2016. We informed him that we

were not operating any impact business and that the trailer that was stored in our back yard was

only used for personal reasons. Mr. Locke determined that we did not operate an impact

business. In 2016, the Borough did not issue us a Notice of Violation

21. When this issue arose again in 2017, we again informed Mr. Locke that we did not

operate an impact business.  In October of 2017, Mr. Locke reached out to us and requested a meeting to discuss the allegations that we operated an impact business.

22, We agreed to meet with Mr. Locke and we also invited him and Borough Council to come and inspect our house.  We did not operate an impact business and we had nothing to hide.

23.  No meeting took place before the November 7, 2017 election.

24.  My wife loss the election but was able to obtain 35% of the vote.

25.  On November 21, 2017, Mr. Locke sent a letter to my wife and I requesting to meet at Borough Hall to discuss the allegations that we operated an impact business.  We agreed to meet on December 7, 2017.

26.  We met Mr. Locke and Mr. Kilkenny at Borough Hall intending to **discuss** whether an impact business was being operated out of our house and to, once again, inform the Borough that we did not operate any kind of business, let alone an impact business, from our home.

27.  At the meeting, no discussion took place and we were not provided any opportunity to address any allegations that we were operating a business.  Neither Locke nor Kilkenny would engage in a discussion about the allegations.  They were not interested in having a discussion. Instead, they handed us a Notice of Violation falsely alleging that we operated an impact business.  We tried to inform them that we did not operate an impact business, but they did not want to listen or discuss the matter.

28.  In the Summer of 2017 and early Fall of 2017, on occasion, I loaded my lawn mower on to my pick up truck so that I could cut my cousin's lawn in Willow Grove.  My cousin was seriously ill, incapacitated and unable to maintain his home.  When I transported my lawn mower on my pickup truck to my cousin's home, I was only doing it to help him.  At no time was I loading up the lawn mower for any commercial or business use.

29.  On December 18, 2017, our attorney sent a letter to Mr. Locke and the Borough

explaining that we were in compliance with the zoning code as directed by the Notice of

Violation that the Borough had served us. The Borough's Solicitor disagreed and was unwilling

to discuss whether we were in compliance.

30. We made numerous requests to Mr. Locke and Borough Council, including Pancoe

and Bunker, to come and visit our house and inspect so that we could demonstrate that we were

not operating an impact business. All of our requests were ignored.

31. On January 9, 2018, our attorney Peter Friedman, Esquire, wrote to Kilkenny (with a

copy to Mr. Locke) requesting a meeting to address the allegations. Mr. Friedman informed

them that we did not operate a business, did not engage in business activity, did not receive any

income and did not employ anyone. Defendants still refused to meet with us.

32. On January 11, 2018, Defendants issued us a Citation.

33. At no time did Locke, Pancoe, Bunker or any other Council member agree to meet

with us to discuss the allegations that we operated an impact business.

34. We were not afforded any of the courtesies that were provided to the Glasses. At no

time did Mr. Locke or any other Defendant offer to meet and discuss "voluntary compliance."

Mr. Locke's policy of "going above and beyond to get voluntary compliance" was never afforded

to us.

35. On March 26, 2018, we attended a hearing regarding the Citation with our zoning

attorney, Michael Yanoff, Esquire. At the hearing, Defendants opposed our effort to defend

against the Citation on the merits. Defendants insisted that the only issue was the amount of fine

to be assessed against us.

36. I had previously attended the Citation Hearing involving the Glasses. The Glasses

were not treated so harshly and were permitted to offer a defense on the issue as to whether they

operated an impact business. As a result they were given leniency by the Court. The Court

provided them with a probationary period to stay in compliance. If they complied, the Citation would be dismissed. However, the Glasses did not comply and were eventually fined.

37. At our Citation Hearing, the Court determined that the underlying Notice of Violation was invalid and it was dismissed. After the hearing, Mr. Yanoff engaged in discussions of resolving the issues with the attorney from the Solicitor's law firm, Anthony Ciuca. However. Mr. Yanoff later learned from the Solicitor's office that the Defendants were not interested in any resolution.

38. On March 26, 2018, the same day of the Citation hearing, Defendants issued a new Notice of Violation - - again falsely alleging that we operated an impact business.

39. We filed an appeal of the Notice to the Zoning Hearing Board and were represented by Mr. Yanoff. Three Zoning Appeal Board hearings took place between late May of 2018 and July of 2018. After the third hearing, the Board retired to deliberate for a very short period of time. The Board voted 5 to 0 in our favor.

40. On multiple occasions in 2016 and 2017, Mr. Glass engaged in criminal acts against my wife, son and I. We made multiple complaints to the Jenkintown Police Department about Mr. Glasses criminal actions. While the Jenkintown P.D. took our complaints, they did not take action to charge Mr. Glass with any crimes.

41. In 2017, my wife and I filed private criminal complaints with the local Magisterial District Court. Eventually, the Montgomery County Prosecutor's Office took over the case in which 64 criminal counts were filed against Mr. Glass.

42. On October 6, 2017 in a plea negotiation, Mr. Glass plead guilty to two counts and was sentenced to 30 days jail time, probation and a fine. He subsequently violated his probation, by engaging again in criminal acts toward my wife and I, and was imprisoned for a period of approximately four months.

43.  On February 9, 2018, the Montgomery Court of Common Pleas entered a "No Contact" Order against Mr. Glass prohibiting him from having any contact with my ~~husband~~ wife, son (Ryan) and I.

I hereby certify that the foregoing statements are true and correct to the best of my knowledge, information and belief.

David Downs

Date: 12-20-19