**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID B. DOWNS, and** | **CIVIL ACTION** |
| **MARGARET A. DOWNS,** | |
| **Plaintiffs,** | |
| | |
| **v.** | |
| | **NO.  18-4529** |
| **BOROUGH OF JENKINTOWN,** | |
| **DEBORA PANCOE,** | |
| **RICHARD BUNKER, and** | |
| **GEORGE LOCKE,** | |
| **Defendants.** | |

**DuBois, J.**                                                              **May 22, 2020**

**M E M O R A N D U M**

## I.     INTRODUCTION

In this case, plaintiffs, David and Margaret Downs, assert that the Borough of Jenkintown ("the Borough") and the individually named defendants retaliated against them by falsely accusing them of violating the Jenkintown Zoning Code ("Zoning Code") as a result of the exercise by plaintiffs of their First Amendment rights.  Presently before the Court is defendants' motion for summary judgment.  For the reasons set forth below, the motion is granted in part and denied in part.

## II.    BACKGROUND[1]

### A.  The Borough Government and Zoning Code

The Borough is managed by a council of twelve members (the "Borough Council"). Locke Dep. 137:1-138:15.  At all relevant times, defendant Debora Pancoe was the President of the Borough Council, Pancoe Dep. 8:10-12, defendant Richard Bunker was the Vice President of the Borough Council, Bunker Dep. 13:17-14:6, and defendant George Locke was the Borough

---

[1]      The facts are presented in the light most favorable to plaintiffs.  Disputed facts are noted as such.

Manager, Locke Dep. 25:25-26:1.  Locke testified that he reports to the Borough Council, but primarily answers to the Borough president.  *Id.* at 26:2-5.  In addition to his duties as Borough Manager, Locke also handled "code and enforcement, and zoning matters."  *Id.* at 15:7-9.

Pursuant to the Zoning Code, properties zoned in the B-1 Residential District may only operate a "No Impact home-based business."  Defs.' Ex. B.  Properties zoned in the B-1 Residential District are prohibited from operating an impact home-based business ("impact business").  Defs.' Ex. B.  If Locke or a zoning enforcement officer determines that a resident is violating the Zoning Code, he may issue an Official Notice of Zoning Code Violation ("Notice of Violation").  Locke Dep. 36:1-14.  A Notice of Violation instructs the resident to cease violating the Zoning Code, and either: (1) inform the Borough, in writing, of the resident's intent to comply, or (2) request a hearing before the Jenkintown Borough Zoning Hearing Board ("Zoning Hearing Board").  Defs.' Ex. B.  If a resident does not appeal the Notice of Violation to the Zoning Hearing Board within 30 days of receipt, the resident forfeits the right to challenge the Notice of Violation on the merits, and the Borough may issue a citation.  Locke Dep. 46:8-47:2.

Locke testified that he kept the Borough informed of his actions regarding his enforcement of the Zoning Code.  Locke Dep. 49:8-19, 63:16-19; Pls.' Ex. 14.  Locke, however, has discretion to issue Notices of Violation, and may do so without approval from the Borough Council or individual members of the Borough Council.  Locke Dep. 48:15-49:19; Pancoe Dep. 42:25-43:5, 52:13-17; Bunker Dep. 85:10-86:22.  Lori Durkin, a former member of the Borough Council, testified that during the time she served on the Council, which ended in November 2016, Locke was "heavily advised" by Pancoe, the Borough President, and Locke would not issue a Notice of Violation without "approval" from Pancoe.  Durkin Dep. 34:25-35:5, 57:10-

60:23.

### B. Plaintiffs' Complaints Against the Glasses

Plaintiffs reside at 301 Runnymede Avenue in the Borough of Jenkintown.  Pls.'
Counterstatement Facts ¶ 1.  In August 2016, Joseph and Christine Glass rented the house next
door to the plaintiffs.  *Id.* ¶ 3.  Plaintiffs' property and the home the Glasses were renting were
zoned in the B-1 Residential District.  *Id.* ¶ 4; Def.' Ex. B.  Shortly after the Glasses moved in
next door to the plaintiffs, the Borough received at least 20 complaints, from the plaintiffs and
other neighbors, that the Glasses were operating an impact business, a construction business, in
violation of the Zoning Code for the B-1 Residential District.  Locke Dep. 39:18-40:5; Pls.' Ex.
29.  On September 6, 2016, after investigating the numerous complaints against the Glasses,
Locke issued a Notice of Violation to the Glasses for operating an impact business.  *Id.* at 40:6-
16.  In response, according to Locke, the Glasses stated "they would stop doing what they were
doing that was not allowed," and comply with the Zoning Code.  *Id.*

Locke testified that the Borough "look[s] for voluntary compliance," and "go[es] above
and beyond trying to get voluntary compliance" with Notices of Violation.  Locke Dep. 40:6-16.
To ensure that the Glasses came into compliance with the Zoning Code, Locke and Durkin
inspected the Glasses' property and spoke with the Glasses regarding their compliance with the
Zoning Code.  Locke Dep. 40:20-41:6; Durkin Dep. 23:1-10.  Locke gave the Glasses a
"checklist to fill out and complete" so they could come into compliance with the Zoning Code.
Durkin Dep. 23:1-13; Locke Dep. 38:8-23.  Locke concluded that the Glasses complied with the
September 6, 2016 Notice of Violation.  Pls. Ex. 9; Locke Dep. 43:10-12.

Plaintiffs contended that the Glasses continued to operate an impact business, so they
continued to file complaints against them with Locke and the Borough.  Pls.' Ex. 10; Pls.'

Counterstatement Facts ¶ 12.  Plaintiffs "appeared before the Borough Council on multiple occasions[, from 2016 to 2017,] and voiced complaints about the manner in which George Locke and the Borough enforced the zoning code against the Glasses."  Pls.' Counterstatement Facts ¶ 21.[2]  Locke testified that he "didn't enjoy" the way the plaintiffs acted toward him with respect to their complaints about the Glasses.  Locke Dep. 84:24-85:17 (stating that he "didn't enjoy," *inter alia*, the plaintiffs telling him that he was "awful" at his job).  Plaintiffs also made 25 separate requests for public information ("Right-to-Know requests") from September 16, 2016 until November 22, 2017, seeking a wide range of information.  Pls.' Ex. 15.  Locke was aware of these requests and assisted in preparing responses.  Locke Dep. 116:10-21.

Ultimately, in "September of 2017, due to her dissatisfaction with the manner in which the Jenkintown Borough Council governed, Ms. Downs entered the Jenkintown Mayor's race as a Democrat and write-in candidate."  Pls.' Counterstatement Facts ¶ 22.  Mr. Downs supported his wife's campaign for mayor.  D. Downs. Dep. 15:19-23, 24:4-17.  During Ms. Downs' campaign for mayor, Borough Vice President Bunker made several comments on social media opposing Ms. Downs' candidacy.  Pls. Ex. 17.  Specifically, Bunker stated that: Ms. Downs would be a "disaster" as a mayor, she "cost the taxpayers of the Borough tens of thousands of dollars on pointless right-to-know requests in her attempt to twist zoning law to run her neighbor out of town," and "she wanted council to lean on police and zoning to unevenly enforce law and code, to mess with her neighbor."  *Id.*  The election was held on November 7, 2017.  Pancoe Dep. 74:16-17.  Ms. Downs was defeated.  Pls.' Counterstatement Facts ¶ 33.

---

[2]       Plaintiffs' counterstatement of facts states that "[f]rom 2016 until 2018, Plaintiffs appeared before the Borough Council on multiple occasions and voiced complaints about the manner in which George Locke and the Borough enforced the zoning code against the Glasses."  Pls. Counterstatement Facts ¶ 21 (citing to Pls.' Ex. 2, 3). However, plaintiffs' Exhibit Two and Exhibit Three state that they appeared before the Borough Council "from September of 2016 into 2017."  Pls.' Exs. 2, 3.

### C.  The Glasses' Complaints About the Plaintiffs

On October 25, 2016, shortly after plaintiffs began complaining that the Glasses were operating an impact business, the Glasses filed their first complaint with the Borough asserting that the plaintiffs were operating an impact business—a landscaping business.  Pls.' Ex. 14. Locke investigated the Glasses' complaint against the plaintiffs, and concluded that "the evidence provided [by the Glasses against the plaintiffs] did not rise to the level of operating a business."  *Id.*  However, the Glasses "adamantly disagreed" with Locke.  *Id.*  Locke directed the Glasses to "report any new activity to the Borough for review."  *Id.*  Approximately one year later, on September 20, 2017, during Ms. Downs' campaign for mayor, the Glasses filed a second complaint with the Borough alleging that plaintiffs were operating an impact business. Pls.' Ex. 14.  The Glasses filed three additional complaints against plaintiffs on September 25th, 29th, and October 4th, 2017.  *Id.*  In support of their complaints, the Glasses submitted photographs and videos that purported to show that plaintiffs were operating an impact business. *Id.*

Locke testified that, after the Glasses' first complaint against the plaintiffs in October 2016, but before their second complaint in September 2017, Magisterial District Judge Elizabeth McHugh, issued a ruling, which interpreted the definition of an impact business under the Zoning Code in a way that encompassed a broader range of activities.  Locke Dep. 52:23-54:2. The plaintiffs deny that any such ruling was made by Judge McHugh, and significantly, no such ruling was included in the record.  Pls.' Resp. 24, ¶ 87-89.  Locke applied this new interpretation of the Zoning Code by Judge McHugh when he reviewed the Glasses' 2017 complaints against the plaintiffs.  Locke Dep. 52:23-54:2.

**D.  Locke's Response to the Glass' 2017 Complaints About the Plaintiffs**

Locke reviewed the evidence submitted by the Glasses that purported to show that plaintiffs were operating an impact business from their home.  Pls.' Ex. 14.  Locke then sought legal advice from Borough Solicitor Sean Kilkenny regarding whether the evidence against the plaintiffs was sufficient to issue them a Notice of Violation for operating an impact business. Locke Dep. 63:8-15, 66:14-17.  Locke was advised that "there was enough evidence" to issue a Notice of Violation to the plaintiffs for operating an impact business.  Kilkenny Dep. 17:1-5. Specifically, Kilkenny told Locke that "he had a reasonable basis" to issue the Notice of Violation "based on the evidence and based on Judge McHugh's version of how she was interpreting the Code."  Kilkenny Dep. 49:23-50:7.

On October 11, 2017, Locke informed the Borough Council that he believed that the evidence against the plaintiffs was sufficient to issue a Notice of Violation.  Pls.' Ex. 14; Locke Dep. 63:16-19.  According to Locke, it was his "call" to issue the Notice of Violation to the plaintiffs.  Locke Dep. 72:8-10.  Additionally, Locke testified that he does not remember Bunker, the Borough Vice President, "ever mention[ing] anything about issuing the Notice of Violation . . . to the [plaintiffs] prior to [Locke] doing it."  Locke Dep. 71:16-71:19.  Ms. Downs, however, testified that she has "strong beliefs" that Locke was directed by Borough President Pancoe to issue the Notice of Violation to the plaintiffs.  M. Downs Dep. 100:24-101:11.  Ms. Downs also testified that, "by virtue of his Facebook posts," Bunker made "it very clear that he was in favor of this target against us."  *Id.* at 103:2-8.  She added that she had a "suspicion" that Locke's actions were directed by Kilkenny, but admitted that she had no "direct evidence" that Locke was directed to issue the Notice of Violation to the plaintiffs by anyone.  *Id.* at 97:16-98:12; 108:14-109:1.

After Locke informed the Borough Council that he believed there was sufficient evidence to issue a Notice of Violation to the plaintiffs, he was advised by Kilkenny and Pancoe to delay issuing the Notice until after the mayoral election because they did not want to appear to be interfering with the election.  Locke Dep. 72:11-73:10.  Locke complied.  On December 7, 2017, one month after the mayoral election ended, Locke and Kilkenny met with plaintiffs and issued a Notice of Violation to them which charged that they were operating an impact business.  Pls.' Counterstatement Facts ¶ 33.

Ms. Downs stated that after Locke issued the Notice of Violation to the plaintiffs on December 7, 2017, they made numerous requests to meet with him and explain that they were not operating an impact business, but he never replied.  M. Downs Dep. 171:19-172:14; Pls.' Ex. 25; Pls.' Ex. 2.[3]  In addition, Ms. Downs stated that the plaintiffs invited Locke to inspect their home to determine whether they were operating an impact business, but he did not reply.  M. Downs Dep. 171:19-172:14; Pls.' Ex. 2, ¶ 32.  Borough residents also appeared at Borough Council meetings and stated that the plaintiffs did not operate an impact business, which gave Locke "pause."  Locke Dep. 72:3-7.  Furthermore, Ms. Downs testified that Locke and the Borough never gave them an opportunity to come into voluntary compliance with the Code, and treated the plaintiffs differently than they treated the Glasses.  *See* M. Downs Dep. 171:19-172:14; Pls.'s Ex. 2.  Locke, however, testified that he gave the plaintiffs the opportunity to voluntarily comply with the Code, but plaintiffs responded that they were not violating the Code.  Locke Dep. 68:24-69:6, 69:25-70:10.  Locke, also, testified that he treated both the plaintiffs and

---

[3]       In their response to plaintiffs' counterstatement of facts, defendants objected to, and moved to strike, Plaintiffs' Exhibits 2-6 because those exhibits were submitted as "certifications," which defendants argue are improper under Federal Rule of Civil Procedure 56.  Defs.' Resp. Counterstatement Facts at 1.  In response, plaintiffs filed affidavits, affirming the accuracy of their certifications previously submitted as plaintiffs' Exhibits 2 and 3.  Pl.' Praecipe Supp. Pls.' Counterstatement Facts & Resp. Defs.' Mot. Summ. J. (Doc. No. 30, filed January 6, 2020).  Defendants did not object to plaintiffs' affidavits.  The Court concludes that Plaintiffs' Exhibits Two and Three, as affirmed, satisfy Rule 56.

the Glasses "exactly the same."  Locke Dep. 150:3-9.

Shortly after plaintiffs received the Notice of Violation, their attorney sent Locke a letter that stated: "rest assured that the Downs' are, and always have been, in compliance with any and all Permitted Uses as defined in the applicable section of the Jenkintown Borough Code."  Pls.' Ex. 20.  An attorney from Kilkenny's law firm, responded on December 21, 2017, replying that: "The Borough has determined that Mr. and Mrs. Downs are in violation of the Borough's Zoning Code," and if the plaintiffs disagreed with the Borough's determination, they needed to file an appeal to the Zoning Hearing Board by January 6, 2018.  Pls.' Ex. 21.  The plaintiffs did not appeal the Notice of Violation to the Zoning Hearing Board.  Locke Dep. 73:23-74:1.  As a result, Locke issued a citation to the plaintiffs on January 11, 2018.  Locke Dep. 113:1-114:14.  Locke testified that no one instructed him to issue the citation.  Locke Dep. 73:23-74:1.

After Locke issued a Citation to the plaintiffs, the case was brought before Judge McHugh on March 26, 2018.  Locke Dep. 91:17-92:7.  Judge McHugh determined that, for a reason not related to this case, the original Notice of Violation was defective, so she recommended that it be reissued.  *Id.*  Locke reissued the Notice of Violation to the plaintiffs that same day.  Locke Dep. 93:13-18, 94:19-21.  Locke testified that he was not instructed by any member of the Borough Council to reissue the Notice of Violation to the plaintiffs, and that "[i]t was [his] decision."  *Id.*  The plaintiffs appealed the second Notice of Violation to the Zoning Hearing Board.  Locke Dep. 124:20-25.  After several hearings, the Zoning Hearing Board issued a decision in plaintiffs' favor and vacated the second Notice of Violation.  Locke Dep. 128:8-12.  Locke testified that he "wasn't surprised" by the Zoning Hearing Board's decision in the plaintiffs' favor.  Locke Dep. 128:24-129:2.

### E.  Property Maintenance Notices

During Ms. Downs' campaign for mayor, Kevin Lynch, a Property Maintenance Code Enforcement Officer for the Borough two property maintenance notices to the plaintiffs for failing to comply with the property maintenance code.  Defs.' Exs. E, I.  Lynch issued the first property maintenance notice on September 13, 2017, in response to a complaint by the Glasses about an allegedly "dead and / or dying" tree on plaintiffs' property.  Defs.' Exs. E, F.  Plaintiffs arranged for an arborist to inspect the tree and the arborist determined that the tree was healthy but two branches needed to be cut.  Defs.' Ex. G.  Plaintiffs informed Lynch of the arborist's findings.  *Id.*  Lynch responded on October 27, 2017, and stated that the plaintiffs were now in compliance with the property maintenance code after having an arborist inspect the tree.  Defs.' Ex. H.  On October 20, 2017, Lynch issued a second property maintenance notice to plaintiffs in response to the Glasses' complaint that the plaintiffs were directing storm water toward their property, causing damage to it.  Defs.' Exs. I, J.  Plaintiffs complied with the second property maintenance notice by installing an extension that corrected the water run-off problem.  Defs.' Ex. K.

Ms. Downs testified that she "thinks" Pancoe, Kilkenny, and Locke directed Lynch to issue the property maintenance notices to the plaintiffs.  M. Downs Dep. 110:16-20.  Additionally, she testified that Lynch told her that he was instructed by Pancoe to put the property maintenance notices in writing because of Ms. Downs' campaign for mayor.  *Id.* at 109:9-22.  Mr. Downs also testified that he "think[s]" that the Borough selectively enforced the property maintenance code, D. Downs Dep. 154:7-15, and only enforced it against the plaintiffs because of his wife's campaign for mayor, D. Downs Dep. 153:8-23.  He based this belief on his observations of properties that were supposedly in violation of the property maintenance code

that he thinks did not receive a property maintenance code violation.  Pls.' Resp. Defs.'
Statement Facts ¶ 24; D. Downs Dep. 153:1-156:3.

### F.  Procedural History

Plaintiffs filed a Complaint on October 23, 2018.  On December 10, 2018, plaintiffs filed
an Amended Complaint against the Borough; Sean Kilkenny, Solicitor to the Borough; Debora
Pancoe, Borough Council President; Richard Bunker, Borough Council Vice President; and
George Locke, the Borough Manager (Document No. 4).  The Amended Complaint asserted
three claims: (1) First Amendment retaliation pursuant to § 1983 against all defendants (Count I);
(2) state law abuse of process against Solicitor Kilkenny and Borough Manager Locke (Count
II); and (3) state law conspiracy against Solicitor Kilkenny and Borough Manager Locke (Count
III).  First Am. Compl. 9-12.

By Memorandum and Order dated March 22, 2019, the Court granted in part and denied
in part defendants' motion to dismiss.  The Court dismissed: (1) the First Amendment retaliation
claim (Count I) against defendants Pancoe, Bunker, and Locke in their official capacities; (2) the
state law abuse of process claim (Count II) against defendants Kilkenny and Locke; and (3) the
First Amendment retaliation (Count I) and state law civil conspiracy (Count III) claims against
defendant Sean Kilkenny in both his official and individual capacity.  The remaining claims in
the case are: (1) the First Amendment retaliation claim against Pancoe, Bunker, and Locke in
their individual capacities (Count I); (2) the First Amendment retaliation claim against the
Borough (Count I); and (3) the civil conspiracy claim against Locke in his official and individual
capacity (Count III).

On November 15, 2019, defendants moved for summary judgment on all remaining claims (Document No. 19).  Plaintiffs responded on December 20, 2019 (Document No. 25). The motion is thus ripe for decision.

## III.   LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material when it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249.  However, the existence of a "mere scintilla" of evidence in support of the nonmoving party is insufficient. *Id.*  In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment[] and resolve all reasonable inferences in that party's favor."  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof.  *Celotex Corp.*, 477 U.S. at 322.

## IV.   DISCUSSION

Defendants moved for summary judgment on each of plaintiffs' remaining claims—(1) the First Amendment retaliation claim against Pancoe, Bunker, and Locke in their individual capacities (Count I); (2) the First Amendment retaliation claim against the Borough (Count I);

and (3) the civil conspiracy claim against Locke in his official and individual capacity (Count III).  The Court addresses each in turn.

### A.  First Amendment Retaliation Claims Under § 1983 Against the Individual Defendants in Their Individual Capacities (Count I)

In their motion for summary judgement, defendants argue that (1) plaintiffs' First Amendment retaliation claim against the individual defendants has "no evidentiary support," (2) the plaintiffs cannot meet their burden of proving their protected activities were the cause of the individual defendants' actions, (3) there was probable cause to issue the Notice of Violation to the plaintiffs, and (4) even if the Court concludes that plaintiffs have provided sufficient evidence of First Amendment retaliation by the individual defendants, they are entitled to qualified immunity.  *See* Defs.' Mot. Summ. J. at 5-15.  The Court addresses each argument in turn.

To prevail on a § 1983 claim against an individual defendant, "plaintiff must show that defendant[,] acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997).  Importantly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).  A plaintiff may show that a defendant is personally involved by providing evidence of "the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  *Chavarriaga*, 806 F.3d at 222; *see also A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) ("[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in

his subordinates' violations."). Thus, in order for Pancoe, Bunker, or Locke to be personally liable under § 1983, the Court must determine whether they were personally involved in the alleged retaliation against plaintiffs.

> i.   *Borough Council President Debora Pancoe*

Plaintiffs assert that the evidence shows that Borough Council President Debora Pancoe directed Locke to issue the Notice of violation and that "Locke would not have issued the Notice of Violation and Citation to Plaintiffs unless Pancoe directed it." Pls.' Resp. at 35. Specifically, plaintiffs argue that Durkin's testimony creates a genuine issue of material fact regarding Pancoe's personal involvement in the alleged retaliation against plaintiffs. *Id.* The Court disagrees.

Durkin testified that Locke was "heavily advised" by Pancoe, and that Locke would not issue a Notice of Violation without "approval" from Pancoe. Durkin Dep. 57:10-60:23. However, Durkin lacks personal knowledge of Locke's decision to issue the Notice of Violation to the plaintiffs in 2017. Her testimony is based on her service as a Borough Council member, which ended in November of 2016—one year before Locke issued the Notice of Violation to the plaintiffs. Durkin Dep. 34:25-35:5, 57:10-60:23. Accordingly, Durkin's testimony is insufficient to create a genuine dispute of material fact regarding Pancoe's personal involvement in the alleged retaliation against plaintiffs in 2017.

There is no dispute that Locke issued, and subsequently reissued the Notice of Violation to plaintiffs. The record demonstrates that Locke has discretion to issue a Notice of Violation and may do so independently and without approval from the Borough Council or members of the Borough Council. Locke Dep. 48:15-49:19; Pancoe Dep. 42:25-43:5, 52:13-17; Bunker Dep. 85:10-86:22. Specifically, Locke testified that it was his "call" to issue the Notice of Violation

to the plaintiffs.  Locke Dep. 72:8-10.  Additionally, Locke testified that he was not instructed to reissue the Notice of Violation to plaintiffs.  Locke Dep. 93:13-17.  Pancoe also testified that Locke did not seek her approval before he reissued the Notice of Violation to the plaintiffs. Pancoe Dep. 134:14-21.  On this issue, the Court concludes that Durkin's testimony on the way Pancoe and Locke interacted in 2016—one year before Locke issued the Notice of Violation—is not probative.  In sum, there is no evidence that Pancoe was personally involved in the alleged retaliation against plaintiffs.  Accordingly, defendants' motion for summary judgment on plaintiffs' First Amendment retaliation claim against Borough President Debora Pancoe in her individual capacity (Count I) is granted.

### ii.   *Borough Council Vice President Richard Bunker*

With respect to Borough Council Vice President Richard Bunker, plaintiffs assert that because Bunker made public statements opposing Ms. Downs' candidacy for mayor, he "was supporting the decisions to prosecute Plaintiffs."  Pls.' Resp. at 35.  Therefore, according to plaintiffs, he is personally liable under § 1983.  *Id.*  The Court disagrees.

As discussed *supra*, Locke has discretion to issue a Notice of Violation and may do so independently without approval from the Borough Council or members of the Borough Council, such as Vice President Bunker.  Locke Dep. 48:15-49:19; Pancoe Dep. 42:25-43:5, 52:13-17; Bunker Dep. 85:10-86:22.  Further, Locke testified that he does not remember Bunker "ever mention[ing] anything about issuing the Notice of Violation . . . to the [plaintiffs] prior to [Locke] doing it."  Locke Dep. 71:16-71:19.  Plaintiffs, however, argue that Bunker's public statements opposing Mrs. Downs' campaign for mayor is evidence that he "was supporting the decisions to prosecute Plaintiffs."  Pls.' Resp. at 35.  But, plaintiffs fail to connect Bunker's public statements opposing Mrs. Downs' campaign for mayor with Locke's decision to issue,

14

and subsequently reissue, the Notice of Violation to them.  Making public statements' opposing

Mrs. Downs' campaign for mayor, without more, is not evidence of Bunker's personal

involvement in the alleged retaliation against plaintiffs.  In sum, there is no evidence that Bunker

was personally involved in the alleged retaliation against plaintiffs.

Accordingly, defendants' motion for summary judgment on plaintiffs' First Amendment

retaliation claim against Borough Vice President Richard Bunker in his individual capacity

(Count I) is granted.

> ### iii.   Borough Manager George Locke

Locke was personally involved in the alleged retaliation against plaintiffs because he

issued, and subsequently reissued, the Notice of Violation to the plaintiffs.  Accordingly, the

Court must determine whether plaintiffs have met their burden of production with respect to their

First Amendment retaliation claim against Locke in his individual capacity.

To prevail on their First Amendment retaliation claim against Locke in his individual

capacity, plaintiffs must prove: "(1) constitutionally protected conduct, (2) retaliatory action

sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3)

a causal link between the constitutionally protected conduct and the retaliatory action."

*Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (quoting *Thomas v. Indep. Twp.*, 463 F.3d

285, 296 (3d Cir. 2006)).  "A defendant may defeat the claim of retaliation by showing that it

would have taken the same action even if the plaintiff had not engaged in the protected activity."

*Eck v. Oley Valley Sch. Dist.*, No. CV 19-1873, —F. Supp. 3d.—, 2019 WL 6884668, at *9 (E.D.

Pa. Dec. 17, 2019) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.

2007)).

The Court notes that defendants did not argue that Locke's decision to issue, and

subsequently reissue, the Notice of Violation did not constitute a retaliatory action against plaintiffs for (1) voicing their complaints at Borough Council about the manner in which Locke and the Borough enforced the zoning code against the Glasses, (2) requesting public information in the form of Right-to-Know requests, and (3) campaigning for mayor by Ms. Downs with her husband's support. *See* Defs.' Mot. Summ. J. at 7-8, 12.[4]  Rather, defendants argue that there is no causal connection between plaintiffs' protected conduct and Locke's claimed retaliatory action. *Id.*  Accordingly, the Court limits its analysis to whether the plaintiffs have shown that there was a causal connection between the plaintiffs' constitutionally protected conduct and Locke's alleged retaliatory action.

To establish a causal link between an alleged retaliatory action and a protected activity, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFlaminis*, 480 F.3d at 267.  In the absence of an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or a pattern of antagonism coupled with timing to establish a causal link, a plaintiff must "show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id.*  "The required [causal] link is 'but-for' causation." *Mirabella*,

---

[4]     Nonetheless, the Court concludes that plaintiffs have satisfied that first two elements of their First Amendment retaliation claim against Locke in his individual capacity.  As to the first element, plaintiffs exercised their First Amendment rights—their right to free speech, to petition the government for redress of grievances, and their right to political association—when they publically criticized the failure of Locke and the Borough to enforce the Zoning Code, requested public information, *see Mirabella*, 853 F.3d at 649, and when Ms. Downs sought political office with her husband's support, *see Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214 (1986); *Pueschel v. Chao*, 955 F.3d 163, 169 (D.C. Cir. 2020).  As to the second element, Locke's act of, issuing and subsequently reissuing, the Notice of Violation to plaintiffs, could constitute retaliatory action sufficient to deter a person of ordinary firmness from exercising their constitutional rights.  *See Majer v. Twp. of Long Beach*, No. CIV.A.06-2919MLC, 2009 WL 3208419, at *5 (D.N.J. Sept. 30, 2009) (finding a genuine issue of material fact as to whether township's conduct was retaliatory where plaintiff "was issued violation notices and a summons as to his practice of posting 'Open House—For Rent' signs").

853 F.3d at 651 (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006). This inquiry is highly context specific. *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 178 (3d Cir. 1997). Importantly, the Third Circuit has stressed that "[a] court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." *DeFlaminis*, 480 F.3d at 267.

The Court concludes that viewing the record as a whole, in the light most favorable to the plaintiffs, they have presented sufficient evidence from which a jury could infer causation. First, Locke issued the Notice of Violation on December 7, 2017, one month after Ms. Downs' campaign for mayor ended, and fifteen days after plaintiffs filed their most recent Right-to-Know request, of which Locke testified that he was aware.[5] Pls.' Ex. 15; Locke Dep. 116:10-21. Thus, there is a close temporal proximity between plaintiffs' protected conduct and Locke's allegedly retaliatory actions, which is probative of causation. *See Hammond v. City of Wilkes Barre*, 628 F. App'x 806, 808 (3d Cir. 2015) ("[T]wo weeks may be close enough temporally to be probative of causation."). Second, Locke testified that he "didn't enjoy" the way the plaintiffs acted toward him with respect to their complaints about the Glasses. Locke Dep. 84:24-85:17. Third, Ms. Downs testified that Locke treated the plaintiffs differently than he treated the Glasses with respect to his enforcement of the Zoning Code. M. Downs Dep. 171:19-172:14. Specifically, Ms. Downs stated that (1) Locke did not meet with the plaintiffs to discuss their alleged violation of the Zoning Code, as he had done with the Glasses; (2) Locke did not

---

[5] The Court notes that part of the delay resulted from Locke's decision to defer issuance of the Notice of Violation during Ms. Downs' campaign for mayor. He concluded that there was sufficient evidence to issue a Notice of Violation to the plaintiffs in October 2017, during Ms. Downs' campaign for mayor. *See supra*, Part II.

investigate plaintiffs' home, to determine whether they were in fact operating an impact business, as he had done with the Glasses; and (3) Locke did not give the plaintiffs an opportunity to abate their conduct, as he had done with the Glasses.  *Id.*; Pls.' Ex. 2.  On this issue, plaintiffs argue that Locke's failure to give plaintiffs the opportunity to voluntarily comply is significant because Locke testified that the Borough "look[s] for voluntary compliance," and "go[es] above and beyond trying to get voluntary compliance" with Notices of Violation.  Locke Dep. 40:6-16.  Finally, Locke testified that he "wasn't surprised" by the Zoning Hearing Board's decision in the plaintiffs' favor.  Locke Dep. 128:24-129:2.  The Court concludes that a reasonable jury considering this evidence could conclude that Locke issued, and subsequently reissued, the Notice of Violation to the plaintiffs in retaliation for their constitutionally protected conduct.  This conclusion, however, does not end the Court's inquiry.

"A defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity."  *Eck v. Oley Valley Sch. Dist.*, No. CV 19-1873, —F. Supp. 3d.—, 2019 WL 6884668, at *9 (E.D. Pa. Dec. 17, 2019).  In their motion for summary judgment, defendants argue that Locke would have taken the same actions against plaintiffs even if they had not engaged in their protected activities.  Defs.' Mot. Summ. J. at 10-11.  Defendants also assert that "there is evidence to establish even probable cause" that plaintiffs violated the Zoning Code, which "defeats a First Amendment Retaliation Claim."  *Id.* at 11 (citing *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019)).  The Court will address each argument in turn.

First, defendants argue that, according to both Locke and Kilkenny, the evidence was sufficient to issue a Notice of Violation.  Defs.' Mot. Summ. J. at 10.  Defendants claim that Locke would have issued the Notice of Violation to the plaintiffs regardless of their protected

conduct.  But, Locke and Kilkenny's determination that the evidence was sufficient to warrant issuance of a Notice of Violation was based on an alleged ruling by Judge McHugh that interpreted the definition of an impact business under the Zoning Code in a way that encompassed a broader range of activities.  Kilkenny Dep. 49:23-50:10; Locke Dep. 52:23-54:2. Plaintiffs dispute the existence of such a ruling, and defendants have not presented any evidence of the ruling—the record does not include copies of an order or a transcript, and Judge McHugh's deposition was not taken.  Because defendants' argument that Locke would have taken the same action even if the plaintiffs had not engaged in protected conduct is based on Judge McHugh's challenged ruling, this defense presents a genuine issue of material fact, which cannot be adjudicated on a motion for summary judgment.

Second, defendants claim that "the photographs and videos evidencing commercial grade landscaping equipment being moved from and to the [plaintiffs'] property on multiple occasions was sufficient probable cause to issue the notice."  Defs.' Mot. Summ. J. at 11.  However, "[b]ecause of its fact-specific nature, the existence or absence of probable cause is ordinarily a question of fact appropriate for resolution by a jury.  *Adams v. Springmeyer*, 17 F. Supp. 3d 478, 495 (W.D. Pa. 2014); *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) ("Typically, the existence of probable cause in a section 1983 action is a question of fact.").  Nonetheless, "a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to the Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly."  *Brantley v. Burrows*, No. CV 14-4185, 2015 WL 13620413, at *3 (E.D. Pa. Nov. 19, 2015); *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003).

The Court declines to determine whether, as a matter of law, there was probable cause for Locke to issue the Notice of Violation to the plaintiffs as a matter of law because the existence of probable cause depends on the definition of an impact business under the Zoning Code. And, as discussed *supra*, there is a question of fact as to whether Judge McHugh issued a ruling that expanded the definition of an impact business under the Zoning Code. Furthermore, defendants fail to include in the summary judgment record the "photographs and videos" that they rely on to argue that probable cause exists. *See* Defs.' Mot. Summ. J. at 11.

The Court concludes that a reasonable jury could find that Locke retaliated against plaintiffs because they exercised their First Amendment rights. The Court also concludes that the defendants have failed to show that Locke would have issued, and subsequently reissued, the Notice of Violation to the plaintiffs despite their constitutionally protected conduct. Additionally, the Court declines to determine as a matter of law whether there was probable cause to issue the Notice of Violation to the plaintiffs. The Court must now address whether Locke is entitled to qualified immunity.

Qualified immunity shields government officials performing discretionary functions from 42 U.S.C. § 1983 liability. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 192 (3d Cir. 2005). However, qualified immunity does not apply if two conditions are met. *Id.* First, the plaintiff must allege facts that "make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, the "right at issue [must have been] 'clearly established' at the time of defendant's alleged misconduct." *Id.* "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). If officials could disagree regarding the legality of their conduct, then qualified immunity should be recognized.

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

As discussed *supra*, plaintiffs have provided sufficient evidence of retaliation against them for exercising their First Amendment rights to warrant submission of that issue to the jury. Accordingly, the Court must determine whether the plaintiffs' First Amendment rights were clearly established at the time of Locke's alleged misconduct. *Reichle*, 566 U.S. at 664. Defendants argue that (1) Locke is entitled to qualified immunity because his actions did not violate plaintiffs' clearly established rights, and (2) Locke is presumptively entitled to qualified immunity because he relied on legal advice from Kilkenny. Defs.' Mot. Summ. J. 13-14 (citing *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255-56 (3d Cir. 2010)). The Court disagrees.

"[I]t is clearly established that 'the First Amendment prohibits [a public official] from retaliating against an individual for speaking critically of the government.'" *Blankenship v. Manchin*, 471 F.3d 523, 533 (4th Cir. 2006) (quoting *Trulock v. Freeh*, 275 F.3d 391, 406 (4th Cir. 2001)); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 588 (6th Cir. 2008) ("[T]he right to criticize public officials is clearly protected by the First Amendment."); *see also Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."). Thus, the Court concludes that plaintiffs had a clearly established First Amendment right to voice their criticism of their local government's perceived failure to enforce the law. A reasonable public official in Locke's position would know that he could not retaliate against the plaintiffs for criticizing the Borough and Locke at Borough Council for failing to enforce the Zoning Code.

21

Moreover, the "right to seek political office . . . is undeniable." *Pueschel v. Chao*, 955 F.3d 163, 169 (D.C. Cir. 2020) (quoting *Branch v. F.C.C.*, 824 F.2d 37, 47 (D.C. Cir. 1987)); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) ("[P]laintiff's interest in seeking office was protected by the First Amendment."); *see also United States v. Tonry*, 605 F.2d 144, 150 (5th Cir. 1979) ("There is no question that candidacy for office and participating in political activities are forms of expression protected by the first amendment."); *Savage v. Pennsylvania Tpk. Comm'n*, No. 2:15-CV-6501, 2016 WL 3548436, at *8 (E.D. Pa. June 27, 2016) ("The [Supreme] Court observed that there is a First Amendment interest in candidacy."). Because the right to seek political office is so foundational to our system of government, every reasonable official in Locke's position would know that they could not retaliate against the plaintiffs because Ms. Downs ran for mayor. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."). Accordingly, Locke is not entitled to qualified immunity on plaintiffs' First Amendment retaliation claim.

Nonetheless, defendants argue that Locke is "presumptively entitled" to qualified immunity because he relied on Solicitor Kilkenny's legal advice regarding whether there was sufficient evidence to issue the Notice of Violation to the plaintiffs. Defs.' Mot. Summ. J. at 15 (citing *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255-56 (3d Cir. 2010). First, as discussed *supra*, Locke's reliance on Kilkenny's legal advice was based on Judge McHugh's ruling, as to which there is a genuine issue of material fact. *See Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) ("Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury."). Second, defendant's argument is based on the Third Circuit opinion in *Kelly*, which

held "that a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause." *Kelly*, 622 F.3d at 255-56. That case presents different concerns and is distinguishable from this case. Accordingly, the Court declines to extend the holding in *Kelly* to plaintiffs' First Amendment retaliation claim against Locke.

The Court concludes that plaintiffs' First Amendment right to criticize their local government's perceived failure to enforce the law, and Ms. Downs' First Amendment right to seek political office were clearly established at the time of Locke's actions. Accordingly, Locke is not entitled to qualified immunity. Defendants' motion for summary judgment on plaintiffs' First Amendment retaliation claim against Locke in his individual capacity (Count I) is denied.

### B.  First Amendment Retaliation Claim Against the Borough Under § 1983 (Count I)

Under *Monell v. Department of Social Services*, a municipality cannot be held liable on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Sevs.*, 436 U.S. 658, 691 (1978). Rather, a municipal entity is liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights. *Id.* at 694. An "official policy" is created not only by formal rules but also when the "government's authorized decisionmakers" make the "decision to adopt [a] particular course of action." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A "custom" exists when a "widespread practice" is "so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal citations omitted).

In this case, plaintiffs claim that "Defendants Pancoe, Bunker and Locke" were the

"authorized decision makers for the Borough of Jenkintown."  Pls.' Resp. at 41.  Thus, according

to plaintiffs, the alleged retaliatory actions of Pancoe, Bunker and Locke represent an official

Borough policy.  *Id.* at 42.  Plaintiffs also argue that the record "demonstrates that Defendant

Jenkintown Borough had a custom of selectively and sporadically enforcing" the property

maintenance code and the "zoning code[,] and used this custom to violate Plaintiffs'

constitutional rights."  *Id.* at 12, 41. The Court will address each argument in turn.

> i.   *First Amendment Retaliation Claim Based on an Official Borough Policy*

Plaintiffs contend that "Defendants Pancoe, Bunker and Locke" were the "authorized

decision makers for the Borough of Jenkintown."  Pls.' Resp. at 41.  Thus, according to

plaintiffs, the alleged retaliatory actions of Pancoe, Bunker, and Locke represent an official

Borough policy.  *Id.* at 42.   But, as discussed *supra*, plaintiffs' First Amendment retaliation

claim against Pancoe and Bunker in their individual capacities fail because they were not

personally involved in the alleged retaliation against the plaintiffs.  As such, plaintiffs' *Monell*

claim based on an official Borough policy predicated on Pancoe and Bunker's actions fails as a

matter of law.  *See Zimmerlink v. Zapotsky*, 539 F. App'x 45, 50 (3d Cir. 2013) ("Because no

claims against the individual defendants survive, [plaintiff's] municipal liability claims against

the County were properly dismissed."); *Marable v. W. Pottsgrove Twp.*, 176 F. App'x 275, 283

(3d Cir. 2006) ("We further note that a municipality may not incur *Monell* liability as a result of

the actions of its officers when its officers have inflicted no constitutional injury.").

The Court concludes that a reasonable jury could find that Locke retaliated against

plaintiffs because they exercised their First Amendment rights.  Thus, plaintiffs' *Monell* claim

predicated on Locke's actions is viable only if Locke was a policymaking official for the

Borough, which defendants' dispute.[6]  *See Pembaur*, 475 U.S. at 481.  The Court must determine whether there is evidence of record that Locke is a policymaking official.

"Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."  *Pembaur*, 475 U.S. at 481; *Praprotnik*, 485 U.S. at 123.  "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."  *Pembaur*, 475 U.S. at 482.  "The question of who is a 'policymaker' is a question of state law."  *Kelly*, 622 F.3d at 264-65 (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1481 (3d Cir. 1990)); *Praprotnik*, 485 U.S. at 124 ("We begin by reiterating that the identification of policymaking officials is a question of state law.").  "In order to ascertain if an official has final policy-making authority, and can thus bind the municipality by his conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question, and (2) whether the official's authority to make policy in that area is final and unreviewable."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (internal marks omitted).  Accordingly, the Court must determine whether, under Pennsylvania law, Locke is a policymaking official for the Borough in the area of zoning enforcement.

Pennsylvania law provides that, "[t]he council of a borough may, at its discretion at any time, create by ordinance the office of borough manager," whose powers and duties "shall be regulated by ordinance."  8 Pa. Cons. Stat. Ann. §§ 1141(a), 1142(a).  However, the Jenkintown municipal ordinances were not made part of the summary judgment record in this case and

---

[6]    Plaintiffs did not argue, or submit any evidence, that Locke's actions were ratified by a policymaking official.  *See Kelly*, 622 F.3d at 264 ("An employee who lacks policymaking authority can still bind the municipality if a municipal policymaker . . . ratified his decision.").  Accordingly, the Court does not address whether Locke's actions were ratified.

"these documents are not 'readily available' such that the Court could take judicial notice of them." *Chirdon v. Borough of Plum*, 92 F. Supp. 3d 360, 365 (W.D. Pa. 2015) (quoting *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 321 (1st Cir. 2004).  Therefore, the Court must analyze the record to determine whether Locke is a policymaking official in the area of zoning enforcement.

In this case, plaintiffs present no evidence that supports their assertion that Locke was a policymaker for the Borough.  Specifically, there is no evidence of record that (1) Locke is responsible for making Borough policy in the area of zoning enforcement, or (2) that, even if Locke possesses authority to make policy, his authority is final and unreviewable.  *See generally* Pls. Resp. 32-42.  The record establishes that although Locke has discretion to enforce the Zoning Code, he does not make policy with respect to zoning enforcement.  *See Pembaur*, 475 U.S. at 482 ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.").  Locke merely enforces the Zoning Code, which demonstrates that he is not an official policymaker in the area of zoning enforcement.  *See Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004) ("The mere authority to implement preexisting rules is not the authority to set policy.").

Moreover, even if Locke were responsible for making Borough policy in the area of zoning enforcement, the record illustrates that his authority would not be final and unreviewable. Plaintiffs admit that Locke "answers" to the Borough Council, Pls.' Resp. at 21, ¶ 76. Additionally, a Notice of Violation that Locke issues can be appealed to the Zoning Hearing Board.  Locke Dep. 124:20-25, 128:8-12.  Indeed, plaintiffs appealed the Notice of Violation at issue to the Zoning Hearing Board, and the Board reversed Locke's determination and found in

their favor.  Locke Dep. 128:8-12.  The fact that Locke "answers" to the Borough Council and

that his decisions can be appealed to the Zoning Hearing Board shows that even if Locke had

authority to make policy in the area of zoning enforcement, his authority was not final and

unreviewable.  The Court thus concludes that Locke is not a policymaking official for the

Borough in the area of zoning enforcement.  Plaintiffs have failed to meet their burden of

proving that any alleged First Amendment retaliation they suffered was the result of an official

Borough policy.

> ii.  *First Amendment Retaliation Claim Based on a Borough Custom of
> Selectively Enforcing the Property Maintenance Code and the Zoning Code*

In response to defendants' motion for summary judgment, plaintiffs argue that "[t]he

record evidence also demonstrates that [the Borough] had a custom of selectively and

sporadically enforcing" the property maintenance code and the "zoning code[,] and used this

custom to violate Plaintiffs' constitutional rights."  Pls.' Resp. at 35, 41.  The Court will address

each purported Borough custom in turn.

> a.  <u>Borough Custom of Selectively Enforcing the Property Maintenance Code</u>

Plaintiffs' argument that the Borough had a custom of selectively enforcing the property

maintenance code is based solely on the testimony of plaintiff, Mr. Downs.  *See* Pls.' Resp. at 12,

37-38.  Mr. Downs testified that he "think[s]" that the Borough selectively enforced the property

maintenance code.  D. Downs Dep. 154:7-15.  Further, plaintiffs in their response to Defendant's

Statement of Facts, stated that "Mr. Downs believes that the Borough selectively enforced

property and zoning code based upon his observation[s]" of properties supposedly in violation of

the property maintenance code that he thinks did not receive a property maintenance code

violation.  Pls.' Resp. Defs.' Statement Facts ¶ 24; D. Downs Dep. 153:1-155:24 ("There were

probably multiples, but I know there is a house down the street that the house is being overgrown

by the weeds and bushes and I don't think they got cited for that."). In sum, Mr. Downs'

testimony regarding a Borough custom of selectively enforcing the property maintenance code is

nothing more than mere speculation. Mr. Downs' speculation is insufficient to create a genuine

issue of material fact as to whether the Borough had a custom of selectively enforcing the

property maintenance code. *See Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) ("[A]n

inference based upon a speculation or conjecture does not create a material factual dispute

sufficient to defeat summary judgment."). Accordingly, the Court concludes that plaintiffs failed

to meet their burden of proving the existence of a Borough custom of selectively enforcing the

property maintenance code.

   b. <u>Borough Custom of Selectively Enforcing the Zoning Code</u>

   Plaintiffs' argument that the Borough selectively enforced the Zoning Code is based on

their alleged "unfavorable treatment" by Locke when he enforced the Zoning Code against them

as compared to their neighbors—the Glasses. *See* Pls.' Resp. at 35-37. This assertion, that

plaintiffs were treated differently from their neighbors, could support a selective-enforcement

claim under the Equal Protection Clause of the Fourteenth Amendment. *See Dique v. New*

*Jersey State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (listing elements of a selective

enforcement claim under the Equal Protection Clause). However, plaintiffs did not plead a

selective-enforcement claim under the Equal Protection Clause of the Fourteenth Amendment in

the First Amended Complaint. *See* First Am. Compl. 9-12. Rather, the plaintiffs asserted a First

Amendment retaliation claim, *id.*, and in response to defendant's motion for summary judgment,

they argued that the Borough "had a custom of selectively and sporadically enforcing it (sic)

zoning code and used this custom to violate Plaintiffs' constitutional rights." Pls.' Resp. at 41.

To prevail on such a claim, plaintiffs must provide evidence of a "widespread [Borough]

practice" of selectively enforcing the Zoning Code.  *See Praprotnik*, 485 U.S. at 127 (defining a "custom" as a "widespread practice").

A "custom" exists when a "widespread practice" is "so permanent and well settled as to constitute a custom or usage with the force of law."  *Praprotnik*, 485 U.S. at 127.  While there is no bright line rule that establishes how widespread a practice must be in order to be considered a municipal custom, "[i]t is well established that 'proof of a single instance of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy (sic) can be attributed to a municipal policymaker.'"  *Gwynn v. City of Philadelphia*, 866 F. Supp. 2d 473, 488 (E.D. Pa. 2012) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 820 (1985)), *aff'd*, 719 F.3d 295 (3d Cir. 2013); *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009).  Thus, a single incident of misconduct is insufficient to establish a municipal custom.  *See Praprotnik*, 485 U.S. at 127 (explaining that a custom is a "widespread practice"); *Crawford v. Van Buren Cty., Ark.*, 678 F.3d 666, 669 (8th Cir. 2012) ("Liability for an unconstitutional custom or usage, however, cannot arise from a single act."); *Wilson v. Cook Cty.*, 742 F.3d 775, 780 (7th Cir. 2014) (explaining that "a single incident—or even three incidents" does not constitute a widespread municipal custom or practice); *see also Solomon v. Philadelphia Hous. Auth.*, 143 F. App'x 447, 457 (3d Cir. 2005) ("A custom under *Monell* can usually not be established by a one-time occurrence.").

In this case, plaintiffs do not provide any evidence that the Borough selectively enforced the Zoning Code against other Jenkintown residents.  Pls.' Resp. 35-37.  Rather, they attempt to prove the existence of a municipal custom based solely on one instance of Locke's alleged misconduct—his disparate treatment of the plaintiffs as compared to their neighbors.  *See* Pls.'

Resp. 35-37.  A single incident of misconduct is insufficient to prove the existence of a custom.
*See Praprotnik*, 485 U.S. at 127.  The Court thus concludes that plaintiffs failed to meet their
burden of proving the existence of a Borough custom of selectively enforcing the Zoning Code.

   *iii.*  *Conclusion*

  The Court concludes that plaintiffs' First Amendment retaliation claim against the
Borough based on an official policy fails.  Additionally, plaintiffs have failed to show that any
alleged First Amendment retaliation they suffered was the result of a Borough custom.
Accordingly, defendants' motion for summary judgment with respect to plaintiffs' First
Amendment retaliation claim against the Borough (Count I) is granted.

### C.  State Law Civil Conspiracy Claim Against Locke in his Official and Individual Capacity (Count III)

  In their motion for summary judgment, defendants argue that plaintiffs "have offered no
proof that Locke acted in conspiracy with the Borough Solicitor, Sean Kilkenny."  Defs.' Mot.
Summ. J. at 15.  The Court agrees with defendants on this issue.

  In Pennsylvania, "a civil conspiracy is a combination of two or more persons to do an
unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose."
*Brown v. Everett Cash Mut. Ins. Co.*, 157 A.3d 958, 967 (Pa. Super. Ct. 2017) (quoting *Baker v.
Rangos*, 324 A.2d 498, 506 (Pa. Super. Ct. 1974)).  "Proof of malice, *i.e.*, an intent to injure, is
essential in proof of a conspiracy."  *Klein v. Madison*, 374 F. Supp. 3d 389, 432 (E.D. Pa. 2019)
(quoting *Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 547 Pa. 224, 235 (Pa. 1997)).

  In their response to defendants' motion for summary judgment, plaintiffs did not address
defendant's civil conspiracy arguments.  They say nothing about an alleged conspiracy between
Locke and Kilkenny in the response.  Thus, plaintiffs have waived that claim.  *See Mason v.
Kruczaj*, No. CV 13-6512, 2016 WL 161594, at *8 (E.D. Pa. Jan. 13, 2016) ("[A] failure to

counter the defendant's challenges to the legal sufficiency of the plaintiff's claims 'constitutes an abandonment of these causes of actions and essentially acts as a waiver of these issues' by the plaintiff."); *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) ("[W]hen a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure 'constitutes an abandonment of those causes of action and essentially acts as a waiver of these issues.'").  Nevertheless, the Court addresses the conspiracy argument on the merits.

Upon review of the record in this case, the Court concludes there is no evidence that Kilkenny and Locke conspired to retaliate against plaintiffs for exercising their First Amendment rights.  The evidence shows that Locke sought legal advice from Borough Solicitor Kilkenny on the question whether the evidence against the plaintiffs was sufficient to issue a Notice of Violation to them for operating an impact business.  Locke Dep. 63:8-15, 66:14-17; Pls.' Resp. at 29, ¶ 116.  Plaintiffs have offered no evidence to the contrary.[7]  Instead, they argue, without evidence, that Kilkenny gave Locke poor legal advice because Kilkenny wanted to punish the plaintiffs.  Pls. Resp. at 34.  This is not evidence of a conspiracy between Kilkenny and Locke. *See Brown*, 157 A.3d at 967 (stating that a civil conspiracy under Pennsylvania law requires a combination of two or more people).  Accordingly, defendants' motion for summary judgment with respect to plaintiffs' state law civil conspiracy claim against Locke in his official and individual capacity (Count III) is granted.[8]

---

[7]      Ms. Downs testified that she "believe[s]" that Kilkenny conspired with Locke, and that she has a "suspicion" that Locke's actions were directed by Kilkenny.  M. Down. Dep. 97:16-98:12.  Ms. Downs, however, admitted that she does "not have any firsthand factual information" to support her beliefs.  That testimony is insufficient to create a genuine issue of material fact with respect to whether Kilkenny conspired with Locke to retaliate against plaintiffs. *See Halsey*, 750 F.3d at 287.

[8]      Because the Court concludes that plaintiffs waived their Pennsylvania state law civil conspiracy claim, and that there is no evidence of a conspiracy between Kilkenny and Locke, the Court does not address defendants' arguments that Locke is entitled to governmental immunity under 42 Pa. Cons. Stat. § 8541 and official immunity under 42 Pa. Cons. Stat. § 8546(2).

**V.     CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part.  The Court grants that part of defendants' motion for summary judgment seeking to dismiss plaintiffs' First Amendment retaliation claim against Pancoe and Bunker in their individual capacities (Count I); plaintiffs' First Amendment retaliation claim against the Borough (Count I); and plaintiffs' civil conspiracy claim against Locke in his official and individual capacity (Count III).  The Court denies defendants' motion with respect to plaintiffs' First Amendment retaliation claim against Locke in his individual capacity (Count I).  The only remaining claim in the case is plaintiffs' First Amendment retaliation claim against Locke in his individual capacity (Count I).

An appropriate Order follows.