**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID B. DOWNS and MARGARET A. DOWNS, H/W,** | : : | **Civil Action No. 18-4529** |
| **Plaintiffs,** | : : | |
| v. | : : | |
| **BOROUGH OF JENKINTOWN, ET AL,** | : | |
| **Defendants.** | : | |

# ORDER

AND NOW, this _____ day of _____, 2020, upon consideration of the Motion for Reconsideration of the Denial of Summary Judgment of Defendant, George Locke and any response hereto, it is hereby **ORDERED** and **DECREED** that Defendant's Motion for Reconsideration is **GRANTED** and Defendant George Locke's Motion for Summary Judgment is hereby **GRANTED.**

                                                        **BY THE COURT:**

    .                                                 **DuBOIS, JAN E., J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID B. DOWNS and MARGARET A. DOWNS, H/W, : | |
| Plaintiffs, : | Civil Action No. 18-4529 |
| : | |
| v. : | |
| : | |
| BOROUGH OF JENKINTOWN, ET AL, : | |
| Defendants. : | |

## DEFENDANT, GEORGE LOCKE'S MOTION FOR RECONSIDERATION OF DENIAL OF SUMMARY JUDGMENT

Defendant, George Locke, through his attorneys Holsten & Associates, by counsel, Suzanne McDonough, Esq., moves for Reconsideration of this Court's Order of May 22, 2020 denying summary judgment on Plaintiffs' remaining federal First Amendment Retaliation claim. The Defendant respectfully requests that this Court enter an Order in the form proposed, grant reconsideration, and grant summary judgment on the substantive issue and/or extend qualified immunity to Defendant Locke.

Defendant, George Locke, has set forth the basis for the Reconsideration Motion in the accompanying Memorandum of Law incorporated herein by reference.

**WHEREFORE**, Moving Defendant, George Locke, respectfully requests that this Honorable Court grant his Motion for Summary Judgment on the First Amendment Retaliation and dismiss the case with prejudice.

Respectfully submitted,
**HOLSTEN & ASSOCIATES**

**DATE:  6/4/2020**          **BY:**   */s/ Suzanne McDonough*
Suzanne McDonough, Esquire
**Attorney ID No.:  29394**
**One Olive Street**
**Media, PA 19063**
**(610) 627-8307**
**Attorney for Defendant, George Locke**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID B. DOWNS and MARGARET A. DOWNS, H/W, : Plaintiffs, : : v. : : BOROUGH OF JENKINTOWN, ET AL, : Defendants. : | Civil Action No. 18-4529 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, GEORGE LOCKE'S MOTION FOR RECONSIDERATION OF THE SUMMARY JUDGMENT MOTION OF GEORGE LOCKE ON THE BASIS OF QUALIFED IMMUNITY**

Moving Defendant, George Locke, respectfully requests that this Court grant reconsideration of the Court's decision on summary judgment and/or on qualified immunity and in support thereof submits the following:

**I.      BRIEF PROCEDURAL HISTORY AND BACKGROUND**

On May 22, 2020, this Court denied Summary Judgment to Jenkintown Borough Code Officer/Borough Manager George Locke on the claim that he allegedly issued a retaliatory notice of violation for the Downs for running an impact landscaping business from their home because of their protected First Amendment activity and denied Code Official/Borough Manager George Locke's defense of qualified immunity as well.

The genesis of the case is the issuance of a civil notice of a Zoning Code violation by Locke to the Plaintiffs for allegedly operating an impact business (landscaping) from their home following a number of complaints from their next door neighbors, whom the Downs had previously, and continually, accused of running an impact business (construction) from their home as well.  The notice to the Downs was issued after consultation by Locke with the Borough Solicitor and upon reliance on this legal advice.

The evidence and law in this and in Zoning cases illustrates that when a notice of violation is issued, if the recipient does not appeal to the Zoning Hearing Board for their review, an enforcement proceeding is commenced by a civil citation and heard in Magistrate District Court to ensure compliance with the Code, because the failure to appeal is conclusive as to the violation itself. That happened in this case as to both neighbors Glass, and their next door neighbor, the Downs, each of whom received a Notice of Violation, and when neither of them appealed, a civil citation for enforcement commenced in Magistrate District Court.[1] The only difference between the process, as it played out involving the neighbor Glass, in comparison to the Downs, is that Glass defended against the citation at the Magistrate Court enforcement level, while the Downs at the Magistrate level argued that they did not get proper notice of the time within which they had to appeal to the Zoning Hearing Board, and so the civil citation was dismissed by agreement of both sides, with the Notice being re-issued by agreement which led to the Zoning Hearing Board appeal by Plaintiffs.[2] If the Borough and Locke had not agreed to the dismissal of the citation, obviously an act of good faith, the failure to appeal would have been conclusive proof of the violation by the Downs. Lower Southampton Township v. Dixon, 756 A.2d 147, 150 (Pa. Cmwlth. 2000).

Although Plaintiffs did not produce any evidence, direct or circumstantial, of retaliation by Locke for any of the reasons claimed: (1) because of the political candidacy of Margaret Downs, (2) the Downs' substantial requests for right-to-

---

[1] Under the MPC, if a Borough wants to proceed with enforcement, it is through a civil citation. See 53 P.S. § 10617.2. The jurisdiction for such civil enforcement proceedings is exclusively with an MDJ, see 53 PS §10617.1, whereas the Zoning Hearing Board has no enforcement power.

[2] The evidence clearly established from the time the notice of violation was issued, the Downs were represented by counsel who was clearly advised of the deadline to appeal to the Zoning Hearing Board appeal on more than one occasion.

know materials, (3) their complaints to the Borough voicing their dissatisfaction with Locke's enforcement of the zoning code against their neighbor, the Court indicated that there was enough evidence that a jury trial was warranted on the retaliation claim. The Court also ultimately denied qualified immunity to George Locke, which defense involves causation evidence as well as whether Locke was entitled to rely upon legal advice for the issuance of the notice, and whether this reliance creates a presumption of immunity as is the standard in the Third Circuit as enunciated in <u>Kelly v. Borough of Carlisle</u>, 622 F.3d 248 (3d Cir. 2010). See also <u>Fiore v. City of Bethlehem</u>, 510 F. App'x 215, 220 (3d Cir. 2013).

## II. ARGUMENT

There is no competent evidence from any source that George Locke acted in any way to violate the First Amendment rights of the Plaintiffs, and any mistake he may have made in initiating or pursuing the notice of violation, a violation that Plaintiffs did not initially appeal, should be shielded by the doctrine of qualified immunity.

There was no direct or circumstantial evidence in this case that George Locke had any interest in, or motivation for, citing the Downs for the Zoning violation other than to equally enforce the zoning laws in this neighborhood dispute and leave it to the zoning board to decide the matter. The evidence revealed that these two neighbors were the only ones making complaints and pursuing each other for violating the code, and the decision to issue the notice of violation, which is a civil notice, to the Downs for operating an impact business was made by Locke after consultation and with the approval of the Solicitor, akin to the prosecutor in a criminal case.

When the Downs failed to appeal the notice to the Zoning Hearing Board ("ZHB") they waived all defenses in the subsequent civil enforcement action against them in Magistrate Court. See Lower Mount Bethel Twp. v. N. River Co., LLC, 41 A.3d 156, 161 (Pa. Cmwlth. 2012) (holding that "failure to appeal the Township's Enforcement Notice to the [ZHB] renders the Enforcement Notice unassailable"); Moon Twp. v. Cammel, 687 A.2d 1181, 1184 (Pa. Cmwlth. 1997) ("The property owner may appeal the notice of violation to the [ZHB]. Failure to do so makes it conclusively to be a violation.")  It cannot be emphasized enough that it is uncontested that it was through the agreement of the Borough and Locke that the opportunity to appeal to the Zoning Hearing Board was afforded to the Downs whose attorney requested and agreed to the reissuance of the Notice of Violation.  However, in the Court's analysis of the causation issue as well as of qualified immunity, the Court appears to hold it against Locke that the notice of violation was re-issued when, on the contrary, it evidences good faith in agreeing to dismiss the civil citation so as to permit the Downs to appeal to the Zoning Hearing Board when the appeal would have otherwise been barred.   There was never another citation issued against the Downs thereafter, and the proper zoning process played out where the matter went before the Board for their determination.  It should also be noted that the Zoning Hearing Board did not issue any opinion as to whether the Downs were operating an impact business, but rather focused on the lack of proof of payment for their services, notwithstanding the fact that the Zoning Code does not require payment.  The Borough could have, but did not, appeal from the decision of the Zoning Hearing Board and returned the filing fee paid for the appeal as contemplated under 10616.1(e).

Locke clearly, at a minimum, had reasonable grounds/belief upon which to issue the notice of violation, and when not appealed to issue the initial citation, ultimately dismissed by agreement of the parties because Downs wanted to challenge the violation notice at the ZHB level.  Here, viewed by any standard applicable to any Administrative Agency decision, there is no evidence that Locke unreasonably concluded that the Downs were operating an impact business, and it is not required that a business is commercial, or where payment for the services is involved, for the zoning law to be violated.  See Chester County case of <u>Martin v. Zoning Hearing Bd. of W. Vincent Twp</u>., 2020 Pa. Cmwlth, LEXIS 321 (Pa. Cmwlth. April 20,2020)(decided on jurisdictional issue, but where the violation at issue did not involve a commercial enterprise.)   And, if an Administrative Agency standard is applied, the standard of reasonable grounds which is utilized to support a license suspension, has been held to be akin to the reasonable suspicion standard of the Fourth Amendment and "does not rise to the level of probable cause required for a criminal prosecution." <u>Banner v. Dep't of Transp., Bureau of Driver Licensing,</u> 737 A.2d 1203, 1207 (Pa. 1999); ("[r]easonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor").  That standard was met in this case by Locke and there is absolutely no evidence to the contrary.

At all stages of this process, it is uncontested that Locke acted on advice of counsel in determining that there was sufficient evidence to issue the notice of violation. It is respectfully suggested that denying qualified immunity to him should be reconsidered, because the Court's decision was based upon what the Court determined to

5

be an issue of material fact as to whether Judge McHugh had expanded the definition of an impact business prior to the notice being issued to Downs.  The Court based that decision on Plaintiffs' counsel's response to summary judgment where they simply argued that the testimony of both Locke and Solicitor Kilkenny, that they were there when the Court made that decision, was not credible, but offered no testimony to the contrary from any source.   However, the Third Circuit Court of Appeals has stated that "in considering a motion for summary judgment the court should believe un-contradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." Lauren W. v. DeFlaminis, 480 F.3d 259, 271 (3d Cir. 2007).

Plaintiffs' counsel, without citation to authority for such, appears to have suggested to the Court that there would/should have to be transcripts of the proceedings before the Magistrate District Court or a written Order for the testimony of both Locke and Kilkenny to be believed, and that this absence creates the issue of material fact, knowing full well that at the Magistrate level there are no such transcripts or Orders available or produced by anyone in this case.  This Court appears to adopt this reasoning to an extent, noting that there was no deposition of the Magistrate Judge offered. However, defense counsel could not locate even one case that would support issuing a subpoena for, or an effort to take, the deposition of a Magistrate Judge, or any Judge, so as to have the Judge provide or recite their opinion from a prior case, and counsel in this case could not find justification in case precedent, and believes it would be impermissible to attempt to do so under both federal or state court in this jurisdiction. Ciarlone v. City of Reading, 263 F.R.D. 198 (E.D. Pa. 2009)(Opinion, Perkins, J.); see also Wallace v. Kmart, 2010 U.S. LEXIS 9249r (U.S. Virgin Islands 2010); Zabresky v. Schmeling, 2013

U.S. Dist. Lexis 49232 (M.D. Pa. 2013).   Similarly, defense counsel believes that such interrogations are deemed unacceptable under Pennsylvania law, because interrogating judges "regarding events which occurred in the course of their judicial duty not only will take time away from their role as district judges but also necessitates delving into the thought processes they utilized in those positions." Leber v. Stretton, 2007 PA Super 172, 270, 928 A.2d 262, n.12 (Pa. Super. Ct. 2007).   In Leber, the Court continued: "[a]s a matter of public policy, we find this type of questioning unacceptable and hold that judicial officers are immune from testifying as to information surrounding their conduct during an official proceeding." Id., cited with approval in Zabresky v. Schmeling, supra. Moreover, it is not what the Magistrate Judge herself expounded on for her legal analysis or decision, but rather the good faith belief on the part of the Solicitor and Code Official that the Judge did expand the definition of what should be considered an impact business, and that is the basis of the qualified immunity claim which is the issue in this case.

      Plaintiffs brought forth no evidence that the Solicitor or Code Official fabricated their testimony as to the standard utilized by the Judge or introduced any contrary evidence and simply rests on asking this Court to find them incredible.   There was no evidence introduced of bias of the attorney whose advice was relied upon or that of the Solicitor who presented the Borough case at the Zoning Hearing itself at which Locke was a witness.   There is no evidence or suggestion that any information or evidence was withheld from the Solicitor who advised Locke that there was sufficient evidence in the case to issue the notice of violation.   There was no evidence of a lack of good faith on the part of Locke or the Solicitor.   Most recently in Leary v. Cook, 2020 U.S. Dist. LEXIS 83133, the Honorable Barclay Surrick considered an issue of reliance of a police officer

7

on the advice of an attorney and cited to the recent precedent on the issue, all of which supports a decision favorable to Locke in this case, who relied upon Solicitor advice and where the Solicitor was fully informed.

The only evidence cited to by the Court that Locke could conceivably have had a retaliatory motive was not evidence but rather inferences that the Court cited from the testimony of Locke himself.  In that respect, the Court used a subjective rather than objective standard in the analysis of qualified immunity and found against Locke for reasons which do not support a denial of qualified immunity, or that could be used to infer causation of a First Amendment violation in this case.  The testimony cited to by the Court was that George Locke, at this deposition, and in response to questions by Plaintiffs' counsel about his subjective feelings and beliefs, testified that he was not surprised by the Zoning Board decision. (N.T. 128:24-129:2). (Opinion of the Court, page 8).  But his actual testimony provides a much broader context for the comment, in that it was based upon how the trial evidence went in and cannot possibly stand for an inference of bad faith or lack of good faith in initiating the notice of violation to begin with.  See N.T. 128:13-25; 129:1-2).

> Q.  Were you surprised by that decision?
>
> A.  No.
>
> Q.   Did you expect the Board to find in favor of the Borough prior to that decision?
>
> A.  I got to be perfectly honest.  I had never had any idea what they're going to do there cause I judicially don't talk about the case with them.  I don't know what

8

they're doing. They're a pretty reliable bunch. They're pretty solid. But I don't know what their decisions – I'm surprised by them sometimes. I'm like wow.

Q. But you weren't in this case?

A. No. I thought that after three nights of everything that they heard, the way the trial went or the hearing went, I wasn't surprised by it.

Notably, Locke did not present the evidence at the Zoning Board Hearing, but rather the case was prosecuted by an Assistant Borough Solicitor as is noted in the decision that is an exhibit in this case.

The second comment by Locke cited to by the Court in the Opinion on page 17 as creating an inference of retaliation involves testimony at his deposition at N.T. 84:24-85:17, that he "didn't enjoy" the way the plaintiffs acted toward him with respect to their complaints about the Glasses. Again, this citation indicates application of a subjective standard as evidence where the testimony when viewed in its full context (N.T. 84:24-25; 85:1-17) would not support any inference of lack of good faith

Q. Did you ever feel that the Downs acted inappropriately toward you with regard to their complaints about the Glasses?

A. Well, I didn't enjoy it. I don't know if you would call it inappropriate.

Q. What didn't you enjoy? Explain what you mean by that.

A. Telling me they don't know how I sleep at night. Telling me how awful I am at my job.

This inquiry to elicit his subjective feelings when subject to harsh criticism surely could not be read to create an inference of culpability or objective evidence of a lack of

9

good faith in his decision making with respect to the notice of violation particularly where, as here, the decision to issue the notice followed legal advice.

Consequently, this Court denied qualified immunity to George Locke on the basis that there were genuine disputes of material facts, but it is unclear from the Opinion what those facts are, given that there was never a pattern of antagonism by Locke against Plaintiffs or any reason to believe that he was not simply doing his duty.  Indeed, a review of the Downs' testimony and the lawsuit itself casts Locke in the role of a "cat's paw" and not as making any decisions at all of his own volition, but allegedly directed to issue the notice to the Downs for political reasons of the governing body itself.  The uncontested evidence is that Locke had no political agenda at any point throughout his tenure at the Borough and scrupulously did not involve himself in politics in any way.

It appears that the Court may also have concluded that the timing of the issuance of the notice could create an inference of retaliation on the part of Locke, but did go on to concede that it was the Solicitor, a former prosecutor, and not Locke who held back on issuing the notice approved by the Solicitor until after the election, so as for its issuance not to interfere with the election itself.  Further on the issue of timing, the un-contradicted testimony is that Locke was ready to issue the citation in October, after his investigation of the recent complaints of the Downs' neighbors, but followed the Solicitor's advice.  Surely this evidence cannot support any claim of temporal proximity leading to an inference of retaliation.  To establish a causal connection, the plaintiff must prove either "an unusually suggestive temporal proximity between the protected activity and allegedly retaliatory action" or "a pattern of antagonism coupled with timing to establish a causal link." Cooper v. Menges, 2013 WL 5458015 at *3 (October 2, 2013 3d

Cir.)(quoting Thomas v. Independence Twp., 463 F.3d 285,286 (3d Cir. 2006) and Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).  Plaintiffs' evidence does not establish either, and evidence of any less of a standard such as subjective inferences undermines the ability of the Code Official to make necessary zoning decisions and act evenhandedly out of fear of being accused of constitutionally retaliatory conduct when political figures such as Mrs. Downs are involved in the matter.

     Most importantly, even if mistakes were made and attributable to Locke, he should have been afforded qualified immunity.  In examining the importance of qualified immunity, the United States Supreme Court has repeatedly reversed circuit court denials of qualified immunity, where the Court did not articulate what precedent would have put the state actor on notice that the individual would be violating the Defendant's constitutional rights.  In District of Columbia et al v. Wesby, 138 S.Ct. 577 (2018), the Supreme Court reversed the D.C. Circuit Court because it denied qualified immunity to an Officer on an issue of probable cause for the arrest of partygoers, and rejected the Circuit Court's rationale that the Officer made the arrest illegally because there may have been an innocent explanation other than criminal activity involved in the arrestees' presence on property.  There the Supreme Court held that even if the Officers lacked actual probable cause for the arrest that, under the circumstances they faced, they reasonably but mistakenly concluded that probable cause was present.  The Court went on to say that the Court, nor the Plaintiff, were able to identify even a single case precedent of a finding of a Fourth Amendment violation under similar circumstances, citing to White v. Pauly, 580 U.S. ___,137 S.Ct. 548 (2017), cited with approval in City of Escondido v. Emmons, 139 S.Ct. 500 (U.S. Supreme Court 2019).  Similarly in City of

Escondido v. Emmons, ___ U.S.___ . 139 S.Ct. 500 (2019)(per curiam), the Supreme Court, in reversing a 9th Circuit denial of qualified immunity, reiterated their standard that "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.", citing Kisela v. Hughes, ___U.S., 138 S.Ct. 1148 (2018). In City of Escondido, supra, the Court citing its prior precedent reminded the lower courts that there is a need to identify a case in which an Officer acting under similar circumstances was held to have violated the constitution and that a body of relevant case law is usually necessary to clearly establish the answer, citing to Wesby, supra. It is submitted that a Code Official such as Locke, at a minimum, should be entitled to the same consideration as a police officer when involved in making preliminary code decisions, civil in nature, that are subject to review by the Zoning Hearing Board in much the same way as police decisions are reviewed by a Magistrate at a preliminary hearing.

The Court Opinion does not cite to any federal cases [3] from any jurisdiction that have similar facts, or could conceivably have placed Mr. Locke on notice that his issuance of a civil notice of violation on a zoning issue in this case following consultation with the Solicitor, the source of advice to the Borough on Code Enforcement, would violate the First Amendment rights of Plaintiffs.

Therefore, George Locke respectfully requests this Court's reconsideration of its Order denying summary judgment and his defense of qualified immunity, the entry of an Order granting summary judgment, or alternatively, a delineation of what relevant

---

[3] And violations of state law would not state a viable claim under § 1983. See McMullen v. Maple Shade Twp., 643 F.3d 96, 99 (3d Cir. 2011).

material facts exist that preclude qualified immunity for George Locke and would be at issue in a trial of this case.

                              **HOLSTEN & ASSOCIATES**

                              */s/ Suzanne McDonough*

**BY:** _____

                              **SUZANNE MCDONOUGH, ESQUIRE**
                              Holsten & Associates
                              One Olive Street
                              Media, PA 19063
                              (610) 627-8307

**CERTIFICATE OF SERVICE**

I, Suzanne McDonough, Esquire, counsel for Defendant, George Locke, states that a true and correct copy of the within Motion for Reconsideration with Memorandum of Law in support thereof of the below listed Defendant were served upon the following individual by first class mail this 4th day of June, 2020.

> William J. Fox, Esquire
> 1626 Pine Street
> Philadelphia, Pa. 19103
> Attorney for Plaintiffs

> Respectfully submitted,
> **HOLSTEN & ASSOCIATES**
>
> */s/ Suzanne McDonough*
> _____
> **Suzanne McDonough, ESQUIRE**
> **Attorney ID No. 29394**
> **One Olive Street**
> **Media, PA 19063**
> **(610) 627-8307**
> **Attorney for above-named Defendant George Locke**

14